# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

DYAMONE WHITE, et al.,

        *Plaintiffs,*

v.

STATE BOARD OF ELECTION
COMMISSIONERS, et al.,

        *Defendant.*

)
)
)
)
)
)
)
)
)

No. 4:22-cv-00062-SA-JMV

**PLAINTIFFS' SUPPLEMENTAL**
**RESPONSES AND OBJECTIONS TO**
**DEFENDANTS' FIRST SET OF**
**INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiffs, by and through their attorneys, hereby provide the following supplemental responses and objections to Defendants' First Set of Interrogatories.

These responses are based solely upon the information and documentation currently available and known to Plaintiffs. The responses and objections herein are those that Plaintiffs believe fairly represent their position at this stage in the litigation, and are based upon current discovery and investigation in the litigation. It is anticipated that further discovery, investigation, and legal analysis may supply additional facts, give new meaning to known facts, or entail new factual conclusions and legal contentions. Because discovery is continuing, and Plaintiffs have not completed preparation for trial, the responses and objections may be subject to omission or error. For the foregoing reasons, Plaintiffs reserve their right, without conceding any obligation beyond what may be imposed by law, to modify, supplement, clarify, or further explain such responses or objections at any time in the future, based upon further investigation or discovery.



## GENERAL OBJECTIONS

The following general objections apply to each of the Interrogatories and, unless otherwise stated, shall have the same force and effect as if set forth in full in response to each of the numbered interrogatories.

1.      Plaintiffs object to the Interrogatories because and to the extent they purport to impose obligations on Plaintiffs that exceed their obligations under the Federal Rules of Civil Procedure and/or the Local Rules.  Plaintiffs will respond to the Interrogatories as required by those Rules.

2.      Plaintiffs object to the Interrogatories because and to the extent that they are overbroad and unduly burdensome.

3.      Plaintiffs object to the Interrogatories because and to the extent that they seek information that is neither relevant to the allegations of the complaint nor reasonably calculated to lead to the discovery of admissible evidence.

4.      Plaintiffs object to Defendants' Interrogatories because and to the extent that they would require Plaintiffs to search for and provide information that is not in Plaintiffs' possession, custody or control, or to create documents that are not currently in the possession of Plaintiffs.

5.      Plaintiffs object to Defendants' Interrogatories because and to the extent that they are vague, ambiguous and unclear, including Defendants' use of terms that are not defined and/or not otherwise susceptible to any single meaning.

6.      Plaintiffs object to Defendants' Interrogatories because and to the extent that they seek to impose obligations to compile or analyze publicly available information, or to compile or analyze information that is equally or more easily available to Defendants than it is to Plaintiffs.

7.     Plaintiffs object to Defendants' Interrogatories to the extent that they seek information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, joint defense privilege, or by any other applicable privilege or immunity from production. Nothing contained in Plaintiffs' response to Defendants' Interrogatories is intended to be, or in any way should be deemed to be, a waiver of any such privilege or immunity.

8.     The absence of a specific objection to any particular aspect of Defendants' Interrogatories is not, and should not be construed as, an admission that responsive information exists.

9.     One or more of these General Objections may be restated in whole or in part or more of Plaintiffs' Specific Objections and Responses to particular Interrogatories. However, the absence of such restatement in Plaintiffs' Specific Objections and Responses to other Interrogatories does not mean that these General Objections are inapplicable.

10.     Plaintiffs are providing these Supplemental Responses and Objections in an effort to consensually resolve potential disputes, and in so doing, are not conceding that their prior responses and objections were in any way deficient or that supplementation is otherwise required. Plaintiffs reserve all rights.

### Specific Objections and Responses

**INTERROGATORY NO. 1:** For each Plaintiff, state your full name, nicknames and any aliases, present address, the date and place of your birth, your social security number, and, if you have a driver's license, the state of issuance and your driver's license number.

**RESPONSE TO INTERROGATORY NO. 1:** Plaintiffs object to Interrogatory No. 1 to the extent it requests Plaintiffs' social security numbers, as this information is sensitive personal information that is not relevant to Plaintiffs' claims or Defendants' defenses. Plaintiffs also object to this Interrogatory to the extent it requests Plaintiffs' driver's license numbers, as this information

is sensitive personal information. Plaintiffs will provide driver's license numbers upon entry of a Protective Order.

Subject to and without waiver of their specific and general objections and in accordance with Federal Rule of Civil Procedure 33, Plaintiffs respond as follows:

a) Dyamone White

    i. Full Name: Dyamone LaKandia White

    ii. Nicknames/Aliases: N/A

    iii. Present Address: ███████████████

    iv. Date and Place of Birth: ██████████, Jackson, Mississippi

    v. Driver's License, State of Issuance, and Driver's License Number: Mississippi

b) Derrick Simmons

    i. Full Name: Derrick Terrell Simmons

    ii. Nicknames/Aliases: N/A

    iii. Present Address: ██████████████████

    iv. Date and Place of Birth: ██████████, Greenville, Mississippi

    v. Driver's License, State of Issuance, and Driver's License Number: Mississippi

c) Ty Pinkins

    i. Full Name: Tyrone Cortez Pinkins

    ii. Nicknames/Aliases: Ty

    iii. Present Address: ██████████████████

    iv. Date and Place of Birth: ██████████, Rolling Fork, Mississippi

    v. Driver's License, State of Issuance, and Driver's License Number: Mississippi

d) Constance Olivia Slaughter Harvey-Burwell

i.  Full Name: Constance Olivia Slaughter Harvey-Burwell

ii.  Nicknames/Aliases: N/A

iii.  Present Address: ███████████████████████

iv.  Date and Place of Birth: ██████████, Jackson, Mississippi

v.  Driver's License, State of Issuance, and Driver's License Number: Mississippi

**INTERROGATORY NO. 2:** For each Plaintiff, please state each and every election you voted in since the year 2000.

**RESPONSE TO INTERROGATORY NO. 2:** Plaintiffs incorporate their general objections in response to Interrogatory No. 2. Plaintiffs further object to this Interrogatory to the extent that it seeks information that is not relevant to any claim asserted in this action, and/or is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs further object to the extent that this Interrogatory seeks voter history information that is within the State's knowledge or possession. Plaintiffs object that the request to individual voters to recollect their personal voting history, election-by-election, for the last two decades is burdensome, particularly insofar as such information is available to Defendants from more authoritative sources to which Defendants already have access. Plaintiffs respond to the best of their present recollection, and the omission of a particular election year below should not be interpreted as an affirmative assertion that each such Plaintiff did not vote in an election during such year. Further relevant information concerning additional elections may subsequently be recalled or discovered, and Plaintiffs reserve the right to supplement these interrogatories to reflect this, and to otherwise rely on additional evidence that may subsequently come to light.

Subject to and without waiver of their specific and general objections and in accordance with Federal Rule of Civil Procedure 33, Plaintiffs recall voting in elections in the following years between 2000 and 2021, inclusive.:

a) Dyamone White

    i.    2010

    ii.    2011

    iii.    2012

    iv.    2013

    v.    2014

    vi.    2015

    vii.    2016

    viii.    2017

    ix.    2018

    x.    2019

    xi.    2020

    i.    2021

b) Derrick Simmons

    i.    2000

    ii.    2004

    iii.    2007

    iv.    2008

    v.    2010

    vi.    2011

    vii.    2012

    viii.    2014

    ix.    2015

        x.    2016

        xi.    2018

        xii.    2019

        xiii.    2020

c) Ty Pinkins

        i.    2000

        ii.    2004

        iii.    2008

        iv.    2012

        v.    2016

        vi.    2018

        vii.    2019

        viii.    2020

d) Constance Olivia Slaughter Harvey-Burwell

        i.    2000

        ii.    2004

        iii.    2008

        iv.    2012

        v.    2016

        vi.    2020

**INTERROGATORY NO. 3:** Identify all individuals who have knowledge of facts or discoverable information pertaining to the subject violation or the facts upon which you are relying or may rely in this case.

**RESPONSE TO INTERROGATORY NO. 3:** Plaintiffs incorporate their general objections in response to Interrogatory No. 3.

Subject to and without waiver of their general objections and in accordance with Federal Rule of Civil Procedure 33, Plaintiffs refer Defendants to Plaintiffs' Initial Disclosures. Plaintiffs reserve the right to modify and supplement their response, as discovery is ongoing.

This case involves a matter of public concern. As a result, there are numerous individuals with knowledge of matters relevant to this case. Those individuals include the members of the legislature that enacted the legislation implementing the current district lines; members of their staff; members and staff of subsequent legislatures to have considered the district lines; present and past Justices of the Mississippi Supreme Court and their staff; persons involved in campaigns for elections of Supreme Court justices; Defendants, their predecessors, their staff, and their predecessors' staff; and voters who reside in District 1. The identities of such individuals are matters of public record and such individuals are too numerous to list.

Notwithstanding the foregoing, Plaintiffs will disclose the names of any particular witnesses they intend to call at trial consistent with the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 4:** Without limiting the foregoing interrogatory, identify all individuals whom you may call as witnesses at trial.

**RESPONSE TO INTERROGATORY NO. 4:** Plaintiffs incorporate their general objections in response to Interrogatory No. 4. Plaintiffs also object to this Interrogatory on the grounds that it is premature and purports to impose obligations greater than and different from those contemplated by applicable law.

Subject to and without waiver of their specific and general objections and in accordance with Federal Rule of Civil Procedure 33, Plaintiffs respond as follows: Plaintiffs will disclose their trial witness list as required by the Court's scheduling order and the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 5:** Identify each and every fact on which you rely in support of your allegation that there was a violation of Section 2 of the Voting Rights Act, as alleged in the Complaint.

**RESPONSE TO INTERROGATORY NO. 5:** Plaintiffs incorporate their general objections in response to Interrogatory No. 5. Plaintiffs further object to this Interrogatory on the grounds that it is overbroad and unduly burdensome and purports to impose obligations greater than and different from those contemplated by applicable law, insofar as it purports to require Plaintiffs to marshal "each any every fact" supporting their claims at the outset of discovery and before the submission of expert reports.

**INTERROGATORY NO. 6:** In Paragraph 1 of the Complaint, you allege that "the district boundaries used in Mississippi's State Supreme Court elections dilute the voting strength of Black Mississippians in violation of the Voting Rights Act and the United States Constitution" and that "th[e]se districts must be redrawn so that Black voters in Mississippi have a full and fair opportunity to elect candidates of their choice." Please identify all facts, witnesses, opinions, and documents that support these allegations and describe how you contend the districts must be redrawn so that black voters in Mississippi have a full and fair opportunity to elect candidates of their choice.

**RESPONSE TO INTERROGATORY NO. 6:** Plaintiffs incorporate their general objections in response to Interrogatory No. 6. Plaintiffs further object to this Interrogatory on the grounds that it is compound, overbroad and unduly burdensome and purports to impose obligations greater than and different from those contemplated by applicable law. Plaintiffs further object to this interrogatory because and to the extent it seeks information that is the subject of expert testimony, which will be disclosed consistent with the schedule set by the Court.

Subject to and without waiver of their specific and general objections and in accordance with Federal Rule of Civil Procedure 33, Plaintiffs respond as follows: Mississippi has used the same three at-large voting districts to elect its nine Supreme Court justices since 1987. Under the current district boundaries, Black voters, despite comprising a majority of the population in certain regions of the State, and despite comprising almost 40 percent of Mississippi's population, do not

constitute a majority in any one Supreme Court district. The Mississippi Supreme Court has only had four Black justices in its entire history. Mississippi has a well-documented and ongoing record of voting discrimination that has been recognized by federal courts. *See, e.g., League of United Latin Am. Citizens v. Clements*, 999 F.2d 831, 866 (5th Cir. 1993); *Clark v. Calhoun County, Miss.*, 88 F.3d 1393, 1399 (5th Cir. 1996). With respect to the Supreme Court districting scheme, the degree of racially polarized voting means that, despite being numerous and compact enough to comprise a majority in at least one of three Supreme Court districts, the preferred candidates of Black voters will typically be defeated by a white majority in each of the districts under the current districting scheme. *See* Compl. ¶¶ 60, 61, 62.

Plaintiffs contend that District 1 could be redrawn to have a Black voting age majority, such that Black voters have an opportunity to elect candidates of choice, without changes to the overall three-district framework for Mississippi Supreme Court elections. The change would keep the State's overall districting scheme for Supreme Court elections intact, while also ensuring those elections comply with federal law. In its current configuration, the Black voting age population of District 1 is approximately 49%. This figure could be brought to over 50% in any number of configurations and without splitting any county lines or altering the overall orientation of the districts, such that Black voters would have the opportunity to elect candidates of choice.

Plaintiffs refer Defendants to the documents produced by Plaintiffs as WHITE0000004 – WHITE0001765, which were considered by Plaintiffs in the course of drafting the Complaint. Plaintiffs further refer Defendants to publicly available Census data regarding the population and demographic characteristics of the various counties in the State of Mississippi.

The following topics, relevant to the subject matter of this Interrogatory, will be the subject of one or more expert reports submitted on behalf of Plaintiffs, which will be disclosed consistent with the schedule set by the Court:

- Whether the minority group is large and compact enough to constitute a majority in a single-member district;

- Whether the minority group is politically cohesive;

- Whether the majority group votes sufficiently as a group to defeat the minority group's preferred candidate;

- The history of official voting-related discrimination in the state or political subdivision;

- The extent to which voting in the elections of the state or political subdivision is racially polarized; and

- The extent to which the state of political subdivision has used voting practices or procedures that tend to enhance the opportunity for discrimination against the minority group.

Plaintiffs will produce such reports and make related disclosures consistent with the Federal Rules.

**INTERROGATORY NO. 7**: In Paragraph 5 of the Complaint, you allege that "the district representing the center of the State—District 1—could readily be redrawn, in a manner consistent with traditional districting principles, to have a Black voting age majority, such that Black voters have an opportunity to elect candidates of choice." Please identify all facts, witnesses, opinions, and documents that support these allegations and provide a description of how you contend the districts should be redrawn in a manner consistent with traditional districting principles to have a black voting age majority such that black voters have an opportunity to elect candidates of choice.

**RESPONSE TO INTERROGATORY NO. 7:** Plaintiffs incorporate their general objections in response to Interrogatory No. 7. Plaintiffs further object to this Interrogatory on the grounds that it is compound, overbroad and unduly burdensome and purports to impose obligations greater than and different from those contemplated by applicable law. Plaintiffs further object to

11

this interrogatory because and to the extent it seeks information that is the subject of expert testimony, which will be disclosed consistent with the schedule set by the Court.

Subject to and without waiver of their specific and general objections and in accordance with Federal Rule of Civil Procedure 33, Plaintiffs respond as follows: The Black voting age population of District 1, in its current configuration, is approximately 49%. District 1 could be redrawn so as to have a majority-Black voting age population in various ways that are consistent with traditional districting principles. In particular, and without conceding that all such criteria must be met under applicable law, Plaintiffs contend that District 1 may be redrawn so that its Black voting age population exceeds 50% without splitting any county lines and while maintaining the basic features of the State's districting scheme, *i.e.*, (i) three districts; (ii) from which three Justices are each elected; (iii) on an at-large basis within each district. The related allegations set forth in the Complaint were based on U.S. Census data and publicly-available information regarding the current configuration of the Supreme Court districts. Plaintiffs will propose specific alternative districts meeting the criteria identified above in one or more expert reports submitted on behalf of Plaintiffs, which will be disclosed consistent with the schedule set by the Court.

**INTERROGATORY NO. 8:** In Paragraph 6 of the Complaint, you allege that "Mississippi's failure to draw new district lines that fairly reflect the voting strength of Black voters also violates the United States Constitution, which prohibits States from maintaining or reaffirming electoral structures for a discriminatory purpose. Here, the State has continued to use its Supreme Court districts even though their discriminatory effects are by now obvious and have long been understood. The same modest changes to District 1 would remedy this constitutional violation as well." Please identify all facts, witnesses, opinions, and documents that support these allegations.

**RESPONSE TO INTERROGATORY NO. 8:** Plaintiffs incorporate their general objections in response to Interrogatory No. 8. Plaintiffs further object to this Interrogatory on the grounds that it is overbroad and unduly burdensome and purports to impose obligations greater than and different from those contemplated by applicable law, insofar as it purports to require

Plaintiffs to marshal "all facts, witnesses, opinions, and documents" supporting their claims at the outset of discovery.

Subject to and without waiving the foregoing objections, Plaintiffs respond as follows: Mississippi has maintained the same Supreme Court districts since 1987. Black lawmakers opposed the 1987 Supreme Court boundaries based on the vote-dilutive impact the proposed districts would have on Black voters. Black lawmakers offered an amendment to the plan to remedy those effects and allow Black voters to elect candidates of choice, but the proposal was defeated.

In the approximately 35 years that have passed since these current district lines were drawn, there have been multiple U.S. Censuses and multiple rounds of legislative and judicial redistricting in Mississippi. The Black voting age population in and around District 1 has increased, such that a majority-minority district can now be created without splitting any counties, as set forth above in the responses to Interrogatory Nos. 6 and 7. Yet the legislature has never updated the districts. Meanwhile, the vote-dilutive effects of the district lines, which were expressly pointed out in 1987, have become increasingly obvious. Despite the State having a Black voting age population of nearly 40%, the Supreme Court has never had more than a single Black Supreme Court justice at a time. And Black Supreme Court justices have only ever sat in the District 1, Place 2 seat, having consistently been initially appointed by successive gubernatorial administrations and only then prevailing in subsequent elections with the advantage of incumbency or (as has been the case since 2004) in an unopposed election. To this day, no Black candidate has ever prevailed in a judicial election without first having been appointed to this District 1, Place 2 seat. Over the course of decades, Black legislators have repeatedly offered amendments to the 1987 lines and continuously

described the vote-dilutive effects of those lines, but the State has continued to maintain them and indeed failed to engage in any redrawing of the relevant lines at all.

While direct evidence of intent, to the extent relevant, is the subject of future and further discovery, the practice of successive gubernatorial appointments of Black justices to the District 1, Place 2 seat reflects an implicit recognition that an all-white Court would be politically or legally untenable, but that absent such gubernatorial appointments, an all-white Court is the most likely result, given the current districting scheme and the prevalence of racially polarized voting. The State has thus consciously pursued and implemented formal and informal policies that have the effect of preserving a status quo in which only 1 of 9 Supreme Court justices is Black and in which additional Black candidates cannot be elected in open elections.

**INTERROGATORY NO. 9:** In Paragraph 12 of the Complaint, you allege that "[t]he effects of the unlawful challenged districts are acutely experienced in this District—including in portions of Supreme Court District 1 that currently lie within the Northern District, and in portions of the Mississippi Delta region that also lie in the Northern District that would be part of Supreme Court District 1, if it was redrawn in conformity with the Voting Rights Act and the Constitution." Please identify all facts, witnesses, opinions, and documents that support these allegations and provide a description of how you contend Supreme Court districts should be redrawn to conform with the Voting Rights Act and the Constitution.

**RESPONSE TO INTERROGATORY NO. 9:** Plaintiffs incorporate their general objections in response to Interrogatory No. 9. Plaintiffs further object to this Interrogatory on the grounds that it is compound, overbroad and unduly burdensome and purports to impose obligations greater than and different from those contemplated by applicable law. Plaintiffs further object to this interrogatory because and to the extent it seeks information that is the subject of expert testimony, which will be disclosed consistent with the schedule set by the Court.

Subject to and without waiver of their specific and general objections and in accordance with Federal Rule of Civil Procedure 33, Plaintiffs respond as follows: Please see Plaintiffs' Response to Interrogatory No. 7 concerning Plaintiffs' contentions as to how the Supreme Court

districts should be withdrawn. With respect to Plaintiffs' allegation that "the effects of the unlawful challenged districts are acutely experienced in this District—including in portions of Supreme Court District 1 that currently lie within the Northern District, and in portions of the Mississippi Delta region that also lie in the Northern District that would be part of Supreme Court District 1, if it was redrawn in conformity with the Voting Rights Act and the Constitution," the Mississippi Delta region, which is majority-Black, is a community of interest with a unique cultural and economic history and character. Under the current Supreme Court district lines, Delta counties are split between District 1 and District 3. Specific proposed alternative district maps will be disclosed in one or more expert reports submitted on behalf of Plaintiffs, which will be disclosed consistent with the schedule set by the Court; Plaintiffs anticipate that such maps will include configurations in which one or more Delta counties are reallocated from District 3 to District 1. Because the Mississippi Delta region is a historic community of interest which is split across two Supreme Court districts, Black residents of the region are acutely impacted by the unlawful effects of the districts as currently configured; therefore, this action is properly venued in this federal judicial district. Further, Defendants have not sought to transfer this action to the Southern District and have therefore conceded venue is proper in the Northern District.

**INTERROGATORY NO. 10:** In Paragraphs 14, 16, 18, and 20 of the Complaint, you allege that you live "in a region where Black Mississippians form a cohesive political community that is sufficiently large and geographically compact to constitute a majority of eligible voters in a district in which Black voters would have the opportunity to elect candidates of their choice for the Mississippi Supreme Court. However, under the challenged Supreme Court districting scheme, candidates of choice for Black voters will typically be outvoted by the white majority in the district." Please identify all facts, witnesses, opinions, and documents that support these allegations; provide a geographic description of the cohesive political community that you maintain is sufficiently large and geographically compact to constitute a majority of eligible voters in a district in which black voters would have the opportunity to elect candidates of their choice for the Mississippi Supreme Court; and provide a list of all elections in which the choice of black voters has been outvoted by the white majority in the district.

15

**RESPONSE TO INTERROGATORY NO. 10:** Plaintiffs incorporate their general objections in response to Interrogatory No. 10. Plaintiffs further object to this Interrogatory on the grounds that it is compound, overbroad and unduly burdensome and purports to impose obligations greater than and different from those contemplated by applicable law. Plaintiffs further object to this interrogatory because and to the extent it seeks information that is the subject of expert testimony, which will be disclosed consistent with the schedule set by the Court.

Subject to and without waiver of their specific and general objections and in accordance with Federal Rule of Civil Procedure 33, Plaintiffs respond as follows: Mississippi's population is nearly 40% Black according to the 2020 Census, and Black voters are particularly concentrated in certain areas of the State, including but not limited to the Mississippi Delta area and Hinds County, where Black voters form a substantial majority.

Consistent with that, there are numerous whole-county-only, three-district configurations that could yield a Black-voting-age-majority Supreme Court district in which Black voters would have an opportunity to elect candidates of choice. Notably, by way of example only, Mississippi's congressional map, a four-district system, has one district with a Black voting-age population of over 60% without even including all of majority-Black Hinds County.

Under the lines as drawn, Black-preferred candidates are typically outvoted by white bloc voting. With respect to District 1, this occurred in 2012 and in 2020, in the last two contested Supreme Court elections that involved a white candidate and a Black candidate. In 2020, Judge Latrice Westbrooks, a Black candidate lost a race for the open seat in District 1, Seat 1 with approximately 48.5% of the vote. The Black voting age percentage of the population in District 1 was around 49% at the time. In 2012, Earle Banks, a Black candidate, ran for this same seat and lost with 44.5% of the vote. The Black voting age percentage of the population in District 1 was

around 48% at the time. *See, e.g.*, Compl. ¶¶ 54, 55, 60. This also occurred in a number of recent

biracial contests for Public Service Commission and Transportation Commission, which employ

the same district lines as the Supreme Court. *See, e.g.*, Compl. ¶ 61.

The following topics, relevant to the subject matter of this Interrogatory, will be the subject

of one or more expert reports submitted on behalf of Plaintiffs, which will be disclosed consistent

with the schedule set by the Court:

- Whether the minority group is large and compact enough to constitute a majority in a
  single-member district;

- Whether the minority group is politically cohesive;

- Whether the majority group votes sufficiently as a group to defeat the minority group's
  preferred candidate; and

- The extent to which voting in the elections of the state or political subdivision is racially
  polarized.

Plaintiffs will produce such reports and make related disclosures consistent with the Federal Rules.

**INTERROGATORY NO. 11:** In Paragraph 58 of the Complaint, you allege that
"Mississippi's Black population is sufficiently numerous and geographically compact to constitute
a majority of the voting-age population in one of the three Supreme Court districts. In its current
configuration, the Black voting age population of District 1 in particular is approximately 49%.
This figure could be brought over 50% in any number of configurations and without splitting any
county lines or altering the overall orientation of the districts, such that Black voters would have
the opportunity to elect candidates of choice in District 1." Please identify all facts, witnesses,
opinions, and documents that support these allegations, and provide a description of how you
contend Supreme Court District 1 could be re-configured without splitting county lines or altering
the overall orientations of the districts such that black voters would have the opportunity to elect
candidates of choice in District 1.

**RESPONSE TO INTERROGATORY NO. 11:** Plaintiffs incorporate their general

objections in response to Interrogatory No. 11. Plaintiffs further object to this Interrogatory on the

grounds that it is compound, overbroad and unduly burdensome and purports to impose obligations

greater than and different from those contemplated by applicable law. Plaintiffs further object to this interrogatory because and to the extent it seeks information that is the subject of expert testimony, which will be disclosed consistent with the schedule set by the Court.

Subject to and without waiver of their specific and general objections and in accordance with Federal Rule of Civil Procedure 33, Plaintiffs respond as follows: The Black voting age population of District 1, in its current configuration, is approximately 49%. District 1 could be redrawn so as to have a majority-Black voting age population in various ways that are consistent with traditional districting principles. In particular, and without conceding that all such criteria must be met under applicable law, Plaintiffs contend that District 1 may be redrawn so that its Black voting age population exceeds 50% without splitting any county lines and while maintaining the basic features of the State's districting scheme, *i.e.*, (i) three districts; (ii) from which three Justices are each elected; (iii) on an at-large basis within each district. . The related allegations set forth in the Complaint were based on U.S. Census data and publicly-available information regarding the current configuration of the Supreme Court districts. Plaintiffs will propose specific alternative districts meeting the criteria identified above in one or more expert reports submitted on behalf of Plaintiffs, which will be disclosed consistent with the schedule set by the Court.

**INTERROGATORY NO. 12:** In Paragraph 59 of the Complaint, you allege that "voting is racially polarized across the state. Voting in Mississippi is highly polarized on the basis of race. In statewide elections, Supreme Court elections, and local contests, Black communities demonstrate substantial cohesion in voters' candidate preferences, and Black voters tend to vote similarly, comprising a politically cohesive minority voting bloc. Conversely, white voters typically vote cohesively against and, in the absence of a majority-Black population in the electoral district at issue typically defeat, Black-preferred candidates." Please identify all facts, witnesses, opinions, and documents that support these allegations.

**RESPONSE TO INTERROGATORY NO. 12:** Plaintiffs incorporate their general objections in response to Interrogatory No. 12. Plaintiffs object to this Interrogatory on the grounds that it is overbroad and unduly burdensome and purports to impose obligations greater

than and different from those contemplated by applicable law, insofar as it purports to require Plaintiffs to marshal "all facts, witnesses, opinions, and documents" supporting their claims at the outset of discovery. Plaintiffs further object to this interrogatory because and to the extent it seeks information that is the subject of expert testimony, which will be disclosed consistent with the schedule set by the Court.

Subject to and without waiver of their specific and general objections and in accordance with Federal Rule of Civil Procedure 33, Plaintiffs respond as follows: Plaintiffs' review of publicly-available information regarding Mississippi electoral history shows that no Black candidate has won statewide office in Mississippi in the 140 years since Reconstruction, despite Mississippi being almost 40 percent Black by population. That review further indicates that in state legislative elections and local elections, there is a substantial correlation between the racial demographics of the electoral district at issue and the race of the prevailing candidate. These overall tendencies, as well as the results of specific races such as those described in Plaintiffs' Response to Interrogatory No. 10, are indicative of substantial racial polarization. *See, e.g.*, *Thomas v. Bryant*, 366 F. Supp. 3d 786, 807 (S.D. Miss. 2019), *aff'd* 938 F.3d 134, 160-61 (5th Cir. 2019) (Mississippi Delta State Senate district); *Fairley v. City of Hattiesburg*, 122 F. Supp. 3d 553, 580 (S.D. Miss. 2015), *aff'd*, 662 F. App'x 291 (5th Cir. 2016); *United States v. Brown*, 494 F. Supp. 2d 440, 484 (S.D. Miss. 2007) (Noxubee County), *aff'd*, 561 F.3d 420 (5th Cir. 2009); *Jamison v. Tupelo, Mississippi*, 471 F. Supp. 2d 706, 713 (N.D. Miss. 2007); Teague v. Attala County, 92 F.3d 283 (5th Cir. 1996); *Clark v. Calhoun County*, 88 F.3d 1393 (5th Cir. 1996); *Houston v. Lafayette County*, 20 F. Supp. 2d 996 (N.D. Miss. 1998); *Ewing v. Monroe County*, 740 F. Supp. 417 (N.D. Miss. 1990); *Gunn v. Chickasaw County*, 705 F. Supp. 315 (N.D. Miss. 1989); *Jordan v. City of Greenwood*, 599 F. Supp. 397 (N.D. Miss. 1984).

The following topics, relevant to the subject matter of this Interrogatory, will be the subject of one or more expert reports submitted on behalf of Plaintiffs, which will be disclosed consistent with the schedule set by the Court:

- Whether the minority group is politically cohesive;

- Whether the majority group votes sufficiently as a group to defeat the minority group's preferred candidate; and

- The extent to which voting in the elections of the state or political subdivision is racially polarized.

Plaintiffs will produce such reports and make related disclosures consistent with the Federal Rules.

**INTERROGATORY NO. 13:** In Paragraphs 63, 75, and 79 of the Complaint, you allege that, for various alleged reasons, "Black voters in Mississippi have less opportunity than white voters to participate in the political process and elect representatives of their choice," or words to that effect. Please identify all facts, witnesses, opinions, and documents that support these allegations.

**RESPONSE TO INTERROGATORY NO. 13:** Plaintiffs incorporate their general objections in response to Interrogatory No. 13. Plaintiffs object to this Interrogatory on the grounds that it is overbroad and unduly burdensome and purports to impose obligations greater than and different from those contemplated by applicable law, insofar as it purports to require Plaintiffs to marshal "all facts, witnesses, opinions, and documents" supporting their claims at the outset of discovery. Plaintiffs further object to this interrogatory because and to the extent it seeks information that is the subject of expert testimony, which will be disclosed consistent with the schedule set by the Court.

Subject to and without waiver of their specific and general objections and in accordance with Federal Rule of Civil Procedure 33, Plaintiffs respond as follows: The language quoted by Defendants is derived from Section 2 of the Voting Rights Act, which provides that the Section 2

is violated "if, based on the totality of the circumstances it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." 52 U.S.C. § 10301(b). Thus, Defendants' request for "all facts, witnesses, opinions, and documents" supporting Plaintiffs' contention that they will be able to prove, at trial, a violation of Section 2 of the Voting Rights Act effectively requests that Plaintiffs marshal all evidence supporting their Section 2 claim at the outset of discovery.

The specific paragraphs of the Complaint cited by Defendants address certain of the "Senate Factors" that are employed by courts in analyzing the "totality of the circumstances" for purposes of a Section 2 claim, in addition to the three factors set forth in *Thornburg v. Gingles*, 478 U.S. 30, 47 (1986). *See* S. Rep. No. 97-417, at 28-29. The Senate Factors specifically addressed in connection with the referenced paragraphs of the Complaint are Senate Factor 1, the history of official voting-related discrimination in the state or political subdivision, and Senate Factor 2, the extent to which voting in the elections of the state or political subdivision is racially polarized. The allegations found in this section of the Complaint are derived from a review of legal authorities, public records, and historical records concerning Mississippi history, including Mississippi's past and present regulation of voting rights. These Senate Factors will be the subject of expert testimony, and relevant expert disclosures will be provided consistent with the schedule set by the Court.

**INTERROGATORY NO. 14:** In Paragraph 80 of the Complaint, you allege that "Mississippi's electoral system maintains and has historically upheld voting procedures and practices—such as at-large elections and unusually large electoral districts—that exacerbate the dilution of political power for Black citizens." Please identify all facts, witnesses, opinions, and documents that support these allegations.

**RESPONSE TO INTERROGATORY NO. 14:** Plaintiffs incorporate their general objections in response to Interrogatory No. 14. Plaintiffs object to this Interrogatory on the grounds that it is overbroad and unduly burdensome and purports to impose obligations greater than and different from those contemplated by applicable law, insofar as it purports to require Plaintiffs to marshal "all facts, witnesses, opinions, and documents" supporting their claims at the outset of discovery. Plaintiffs further object to this interrogatory because and to the extent it seeks information that is the subject of expert testimony, which will be disclosed consistent with the schedule set by the Court.

Subject to and without waiver of their specific and general objections and in accordance with Federal Rule of Civil Procedure 33, Plaintiffs respond as follows: The allegation quoted by Defendants addresses the third Senate Factor. Courts have repeatedly recognized Mississippi's "long history of official discrimination touching on the right of black citizens to vote and participate in the democratic process. This history has been judicially determined by federal courts at all levels." *Martin v. Allain*, 658 F. Supp. 1183, 1192 (S.D. Miss. 1987). The Fifth Circuit has found that it is "indisputable" that "Mississippi has a long and dubious history of discriminating against [B]lacks." *Teague v. Attala Cnty., Miss.*, 92 F.3d 283, 293–94 (5th Cir. 1996). As explained in the allegations in Paragraph 80 and the surrounding paragraphs of the Complaint, voting procedures and practices relevant to Senate Factor 3 include the use of at-large elections and majority-white election districts which had the effect of precluding Black citizens from election to public office, including judicial office at the trial court level, until litigation under the Voting Rights Act resulted in the creation of majority-Black judicial election subdistricts. *See Martin v. Mabus*, 734 F. Supp. 1216 (S.D. Miss. 1990); *Martin v. Mabus*, 700 F. Supp. 327 (S.D. Miss. 1988); *Martin*, 658 F. Supp. at 1183; *v. Allain*, 635 F. Supp. 347, 347-38 (S.D. Miss. 1986).

In addition, until 2020, candidates for statewide office were required to win both the popular vote and a majority of Mississippi's 122 House districts in order to win statewide election, which substantially hindered Black candidates' ability to be elected to statewide office.

The allegations found in this section of the Complaint are derived from a review of legal authorities, public records, and historical records concerning Mississippi history, including Mississippi's past and present regulation of voting rights. This Senate Factor will be the subject of expert testimony, and relevant expert disclosures will be provided consistent with the schedule set by the Court.

**INTERROGATORY NO. 15:** In Paragraph 95 of the Complaint, you allege that "race-based disparities burden the ability of Black voters to participate in politics, including elections for State Supreme Court justices. The existence of these pervasive disparities supports the conclusion that Black voters have less opportunity than white Mississippians to participate in the political process and elect representatives of their choice." Please identify all facts, witnesses, opinions, and documents that support these allegations; describe all race-based disparities that you contend burden the ability of black voters to participate in politics; and describe how you contend the alleged race-based disparities have resulted in black voters having less opportunity than white Mississippians to participate in the political process and elect representatives of their choice.

**RESPONSE TO INTERROGATORY NO. 15:** Plaintiffs incorporate their general objections in response to Interrogatory No. 15. Plaintiffs object to this Interrogatory on the grounds that it is overbroad and unduly burdensome and purports to impose obligations greater than and different from those contemplated by applicable law, insofar as it purports to require Plaintiffs to marshal "all facts, witnesses, opinions, and documents" supporting their claims at the outset of discovery. Plaintiffs further object to this interrogatory because and to the extent it seeks information that is the subject of expert testimony, which will be disclosed consistent with the schedule set by the Court.

Subject to and without waiver of their specific and general objections and in accordance with Federal Rule of Civil Procedure 33, Plaintiffs respond as follows: The allegation quoted by Defendants addresses the fifth Senate Factor, which contemplates consideration of the extent to

which minority group members bear the effects of discrimination in areas such as education,

employment, and health, which hinder their ability to participate effectively in the political

process. The Senate Report explains: "The courts have recognized that disproportionate

educational employment, income level and living conditions arising from past discrimination tend

to depress minority political participation, *e.g.*, *White* [*v. Register*], 412 U.S. [755,] 768 [(1973)];

*Kirksey v. Board of Supervisors*, 554 F.2d 139, 145 [(5th Cir. 1977)]. Where these conditions are

shown, and where the level of black participation in politics is depressed, plaintiffs need not prove

any further causal nexus between their disparate socio-economic status and the depressed level of

political participation." S. REP. 97-417, 239, 1982 U.S.C.C.A.N. 177, 410. Further, as the Fifth

Circuit explained in *Kirksey*, *supra*, specifically with reference to challenged electoral procedures

in Hinds County, Mississippi, "[t]he Supreme Court and this court have recognized that

disproportionate educational, employment, income level and living conditions tend to operate to

deny access to political life. . . . Inequality of access is an inference which flows from the existence

of economic and educational inequalities." Examples of relevant disparities are set forth in

Paragraphs 84 through 94 of the Complaint, based on Plaintiffs' counsel's analysis of public

records and publicly-available data. This Senate Factor will be the subject of expert testimony,

and relevant expert disclosures will be provided consistent with the schedule set by the Court.

**INTERROGATORY NO. 16**: In Paragraph 104 of the Complaint, you allege that "[t]he extensive and ongoing use of racial appeals in politics, including with respect to elected judicial offices, supports the conclusion that Black voters have less opportunity than white Mississippians to participate in the political process and elect representatives of their choice." Please identify all facts, witnesses, opinions, and documents that support these allegations; describe all judicial elections since the year 2000 in which you contend racial appeals have been used; and describe how you contend the use of alleged racial appeals have resulted in less opportunity for black voters than white Mississippians to participate in the political process and elect representatives of their choice.

**RESPONSE TO INTERROGATORY NO. 16:** Plaintiffs incorporate their general

objections in response to Interrogatory No. 16. Plaintiffs object to this Interrogatory on the

grounds that it is overbroad and unduly burdensome and purports to impose obligations greater than and different from those contemplated by applicable law, insofar as it purports to require Plaintiffs to marshal "all facts, witnesses, opinions, and documents" supporting their claims at the outset of discovery. Plaintiffs further object to this interrogatory because and to the extent it seeks information that is the subject of expert testimony, which will be disclosed consistent with the schedule set by the Court.

Subject to and without waiver of their specific and general objections and in accordance with Federal Rule of Civil Procedure 33, Plaintiffs respond as follows: the allegation quoted by Defendants concerns the sixth Senate Factor, which references the use of overt or subtle racial appeals in political campaigns. Plaintiffs refer Defendants to the examples cited in Paragraphs 42, 50, and 98-103 of the complaint (ECF No. 1), which support the allegation that the extensive and ongoing use of racial appeals in politics, including with respect to judicial offices, supports the conclusion that Black voters have less opportunity than white Mississippians to participate in the political process and elect representatives of their choice. These examples are based on Plaintiffs' counsel's analysis of public records and publicly-available data. This Senate Factor will be the subject of expert testimony, and relevant expert disclosures will be provided consistent with the schedule set by the Court.

**INTERROGATORY NO. 17**: In Paragraph 111 of the Complaint, you allege "[t]he pervasive barriers to Black candidates winning election outside of Black-majority districts support the conclusion that Black voters have less opportunity than white Mississippians to participate in the political process and elect representatives of their choice." Please identify all facts, witnesses, opinions, and documents that support these allegations and state all judicial elections since the year 2000 in which you contend a black-preferred candidate has unsuccessfully run for election.

**RESPONSE TO INTERROGATORY NO. 17**: Plaintiffs incorporate their general objections in response to Interrogatory No. 17. Plaintiffs object to this Interrogatory on the

grounds that it is overbroad and unduly burdensome and purports to impose obligations greater than and different from those contemplated by applicable law, insofar as it purports to require Plaintiffs to marshal "all facts, witnesses, opinions, and documents" supporting their claims at the outset of discovery. Plaintiffs further object to this interrogatory because and to the extent it seeks information that is the subject of expert testimony, which will be disclosed consistent with the schedule set by the Court.

Subject to and without waiver of their specific and general objections and in accordance with Federal Rule of Civil Procedure 33, Plaintiffs respond as follows: the allegation quoted by Defendants concerns the seventh Senate Factor, which references the extent to which members of the minority group have been elected to public office in the jurisdiction. As set forth in the Senate Report, this factor, like the other enumerated factors, is one which Plaintiffs may show to establish a violation of Section 2 of the Voting Rights Act. S. REP. 97-417, 28, 1982 U.S.C.C.A.N. 177, 206. Factual allegations concerning Black candidates' lack of success are set forth in Paragraphs 105 through 110, based on Plaintiffs' counsel's review of public data and records concerning Mississippi election results. The referenced pervasive barriers to Black candidates' electoral success are those described otherwise in the Complaint and addressed in Plaintiffs' responses to Interrogatories Nos. 6, 8, 10, 13, 14, 15, and 16 herein. This Senate Factor will also be the subject of expert testimony, and relevant expert disclosures will be provided consistent with the schedule set by the Court.

**INTERROGATORY NO. 18**: In Paragraph 116 of the Complaint, you allege "[t]hese few examples (among many others not detailed here) of non-responsiveness to the concerns of Black voters further supports the conclusion that Black voters are disadvantaged in the political process and in electing representative of their choice." Please identify all facts, witnesses, opinions, and documents that support these allegations; state all instances of non-responsiveness by Mississippi that you contend have disadvantaged black voters in the political process; and describe how you contend that such alleged instances of non-responsiveness resulted in black voters being disadvantaged in the political process and in electing representatives of their choice.

26

**RESPONSE TO INTERROGATORY NO. 18:** Plaintiffs incorporate their general objections in response to Interrogatory No. 18. Plaintiffs object to this Interrogatory on the grounds that it is overbroad and unduly burdensome and purports to impose obligations greater than and different from those contemplated by applicable law, insofar as it purports to require Plaintiffs to marshal "all facts, witnesses, opinions, and documents" supporting their claims at the outset of discovery. Plaintiffs further object to this interrogatory because and to the extent it seeks information that is the subject of expert testimony, which will be disclosed consistent with the schedule set by the Court.

Subject to and without waiver of their specific and general objections and in accordance with Federal Rule of Civil Procedure 33, Plaintiffs respond as follows: the allegation quoted by Defendants concerns an additional factor identified in S. Rep. 97-417, whether there is a significant lack of responsiveness on the part of elected officials to the particularized needs of the members of the minority group, which the Senate Report identifies as having potential probative value as part of plaintiffs' evidence in establishing a violation of Section 2 of the Voting Rights Act. The Senate Report further explains that "unresponsiveness is not an essential element of plaintiff's case," and therefore, "defendants' proof of some responsiveness would not negate plaintiff's showing by other, more objective factors enumerated [in the Senate Report] that minority voters nevertheless were shut out of equal access to the political process." S. REP. 97-417, 239, 1982 U.S.C.C.A.N. 177, 410. Factual allegations concerning Black candidates' lack of success are set forth in Paragraphs 105 through 110, based on Plaintiffs' counsel's review of public data and records concerning Mississippi election results. Certain examples of policies or practices that reflect elected officials' non-responsiveness to are set forth in Paragraphs 113, 114, and 115 of the

Complaint. This topic will be the subject of expert testimony, and relevant expert disclosures will be provided consistent with the schedule set by the Court.

**INTERROGATORY NO. 19:** In Paragraph 126 of the Complaint, you allege that "discrimination on the basis of race is, at least in part, a motivating factor in maintaining the State's Supreme Court districts." Please identify all facts, witnesses, opinions, and documents that support these allegations.

**RESPONSE TO INTERROGATORY NO. 19:** Plaintiffs incorporate their general objections in response to Interrogatory No. 19. Plaintiffs object to this Interrogatory on the grounds that it is overbroad and unduly burdensome and purports to impose obligations greater than and different from those contemplated by applicable law, insofar as it purports to require Plaintiffs to marshal "all facts, witnesses, opinions, and documents" supporting their claims at the outset of discovery.

Subject to and without waiver of their specific and general objections and in accordance with Federal Rule of Civil Procedure 33, Plaintiffs respond as follows: Please see Plaintiffs' response to Interrogatory No. 8.

**INTERROGATORY NO. 20:** In Paragraph 128 of the Complaint, you allege that the State of Mississippi "apparently never submitted the 1987 district lines for preclearance by the DOJ . . . ." Please identify all facts, witnesses, opinions, and documents that support these allegations.

**RESPONSE TO INTERROGATORY NO. 20:** Plaintiffs incorporate their general objections in response to Interrogatory No. 20. Plaintiffs further object to this Interrogatory on the grounds that it seeks to produce publicly available information, or to produce information that is equally or more easily available to Defendants than it is to Plaintiffs.

Subject to and without waiver of their specific and general objections and in accordance with Federal Rule of Civil Procedure 33, Plaintiffs respond as follows: Plaintiffs were unable to locate evidence that the 1987 district lines were evaluated for Section 5 pre-clearance or approved for Section 5 preclearance in any online source or in the case law. Furthermore, a query of a

comprehensive scholarly database of Section 5 actions from 1982 through 2005 that is based on data provided by the U.S. Department of Justice from its "Submission Tracking and Processing System" indicated that the 1987 district lines were never submitted. *See, e.g.*, Fraga & Ocampo, *More Information Requests and the Deterrent Effect of Section 5 of the Voting Rights Act* at 54-56, *available at* https://www.law.berkeley.edu/files/ch_3_fraga_ocampo_3-9-07.pdf (describing this database). Plaintiffs further acknowledge that documents produced by Defendants appear to show that the 1987 district lines were submitted.

**INTERROGATORY NO. 21:** In Paragraph 138 of the Complaint, you allege that there exists "a continued willingness and interest among state policymakers to leverage race for political purposes, including in particular with respect to the design of the State's Supreme Court districts." Please identify all facts, witnesses, opinions, and documents that support these allegations.

**RESPONSE TO INTERROGATORY NO. 21:** Plaintiffs incorporate their general objections in response to Interrogatory No. 21. Plaintiffs object to this Interrogatory on the grounds that it is overbroad and unduly burdensome and purports to impose obligations greater than and different from those contemplated by applicable law, insofar as it purports to require Plaintiffs to marshal "all facts, witnesses, opinions, and documents" supporting their claims at the outset of discovery. Plaintiffs further object to this interrogatory because and to the extent it seeks information that is the subject of expert testimony, which will be disclosed consistent with the schedule set by the Court.

Subject to and without waiver of their specific and general objections and in accordance with Federal Rule of Civil Procedure 33, Plaintiffs respond as follows: the allegation quoted in part by Defendants concerns H.B. 868, which would have modified Supreme Court election district 1 so as to add majority-white Simpson County to the district. The related allegations in Paragraphs 132 through 137 of the Complaint are derived from public records of the legislative debate concerning H.B. 868, as well as news reports concerning this debate.

**INTERROGATORY NO. 22:** In Paragraph 139 of the Complaint, you allege that "it is clear that the State continues to maintain the districts with the purpose of diluting Black voting strength." Please identify all facts, witnesses, opinions, and documents that support these allegations.

**RESPONSE TO INTERROGATORY NO. 22:** Plaintiffs incorporate their general objections in response to Interrogatory No. 22. Plaintiffs object to this Interrogatory on the grounds that it is overbroad and unduly burdensome and purports to impose obligations greater than and different from those contemplated by applicable law, insofar as it purports to require Plaintiffs to marshal "all facts, witnesses, opinions, and documents" supporting their claims at the outset of discovery.

Subject to and without waiver of their specific and general objections and in accordance with Federal Rule of Civil Procedure 33, Plaintiffs respond as follows: Please see Plaintiffs' response to Interrogatory No. 8.

**INTERROGATORY NO. 23:** Identify the date and substance of any and all communications between or among Plaintiffs, or their representatives, and the U.S. Department of Justice (including, but not limited to, the Voting Section of the Civil Rights Division of that department) relating or pertaining to the allegations contained in your Complaint.

**RESPONSE TO INTERROGATORY NO. 23:** Plaintiffs incorporate their general objections in response to Interrogatory No. 23.

Subject to and without waiver of their specific and general objections and in accordance with Federal Rule of Civil Procedure 33, Plaintiffs respond as follows: Plaintiffs state that, on or about April 20, 2022, one of Plaintiffs' attorneys asked an attorney with the Voting Rights Section of the Civil Rights Division who at U.S. Department of Justice was the proper person to direct an inquiry regarding preclearance records from the 1980s. Counsel was told that a formal request should be submitted through the Freedom of Information Act request (FOIA) process.

On or about April 25, 2022, one of Plaintiffs' attorneys emailed a copy of Plaintiffs' Complaint to attorneys in the Voting Rights Section of the Civil Rights Division of the U.S. Department of Justice.

On July 26, 2022, Plaintiffs' counsel submitted a FOIA request to April Freeman, FOIA Public Liaison for the Civil Rights Division of the U.S. Department of Justice, for records of submissions by the State of Mississippi from between 1985 to 1995 seeking Voting Rights Act Section 5 preclearance for the electoral districts used to elect the Mississippi Supreme Court.

**INTERROGATORY NO. 24:** Identify each person, not being offered as an expert, who will offer opinions within the scope of Rule 701, *Federal Rules of Evidence,* and provide the substance and basis of each such opinion.

**RESPONSE TO INTERROGATORY NO. 24:** Plaintiffs incorporate their general objections in response to Interrogatory No. 24. Plaintiffs object to this Interrogatory on the grounds that it purports to impose obligations greater than and different from those contemplated by applicable law.

Subject to and without waiver of their specific and general objections and in accordance with Federal Rule of Civil Procedure 33, Plaintiffs respond as follows: Plaintiffs will disclose their witness list during pretrial proceedings as required by applicable law, and will identify subjects of testimony of lay witnesses appearing on Plaintiffs' witness list as and to the extent required under applicable law, agreement of the parties, and/or order of the Court.

DATED: September 16, 2022

/s/ Joshua Tom
AMERICAN CIVIL LIBERTIES UNION
   OF MISSISSIPPI FOUNDATION
Joshua Tom (Miss. Bar No. 105392)
Lakyn Collier (Miss. Bar No. 106224)
Vara Lyons*
101 South Congress Street
Jackson, MS 39201
(601) 354-3408
JTom@aclu-ms.org
Lcollier@aclu-ms.org
Vlyons@aclu-ms.org

SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood*
Isaac Rethy*
425 Lexington Avenue
New York, NY 100017
(212) 455-2000
jyoungwood@stblaw.com
irethy@stblaw.com

* Admitted pro hac vice

ACLU FOUNDATION
Ari J. Savitzky*
Sophia Lin Lakin*
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2500
asavitzky@aclu.org
sosaki@aclu.org
slakin@aclu.org

SOUTHERN POVERTY LAW CENTER
Jade Olivia Morgan (Miss. Bar No. 105760)
Leslie Faith Jones (Miss. Bar No. 106092)
111 East Capitol Street, Suite 280
Jackson, MS 39201
(601) 948-8882
jade.morgan@splcenter.org
leslie.jones@splcenter.org

Bradley E. Heard*
Ahmed K. Soussi (pro hac vice forthcoming)
Sabrina Khan (pro hac vice forthcoming)
150 E Ponce de Leon Avenue, Suite 340
Decatur, GA 30030
(470) 521-6700
bradley.heard@splcenter.org
ahmed.soussi@splcenter.org
sabrina.khan@splcenter.org

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I, Joshua Tom, hereby certify that on September 16, 2022, I emailed the foregoing to all Counsel of Record for Defendants, and simultaneously filed a Notice of Service of Interrogatories with the Clerk of the Court using the ECF system which sent notification of such filing to all parties on file with the Court.

/s/: Joshua Tom
Joshua Tom, MSB # 105392

## **Verification**

I hereby declare under penalty of perjury that the responses contained in the foregoing Supplemental Responses and Objections to Interrogatories propounded by Defendants, which were prepared with the assistance of counsel, are true and correct to the best of my knowledge, information, and belief.

_[signature]_

[name]

## Verification

I hereby declare under penalty of perjury that the responses contained in the foregoing Supplemental Responses and Objections to Interrogatories propounded by Defendants, which were prepared with the assistance of counsel, are true and correct to the best of my knowledge, information, and belief.

_____

Derrick T. Simmons

## <u>Verification</u>

    I hereby declare under penalty of perjury that the responses contained in the foregoing Supplemental Responses and Objections to Interrogatories propounded by Defendants, which were prepared with the assistance of counsel, are true and correct to the best of my knowledge, information, and belief.


_____

Dyamone LaKandia White

## **Verification**

I hereby declare under penalty of perjury that the responses contained in the foregoing Supplemental Responses and Objections to Interrogatories propounded by Defendants, which were prepared with the assistance of counsel, are true and correct to the best of my knowledge, information, and belief.



_____

Tyrone Cortez Pinkins