# Exhibit 6

# Simpson Thacher & Bartlett LLP

425 LEXINGTON AVENUE
NEW YORK, NY 10017-3954

———

TELEPHONE: +1-212-455-2000
FACSIMILE: +1-212-455-2502

Direct Dial Number
+1-212-455-3869

E-mail Address
irethy@stblaw.com

BY E-MAIL                                                  October 7, 2022

                Re:     White v. SBEC, 4:22-cv-0062-SA-JPV

Rex M. Shannon, Esq.
Special Assistant Attorney General
Deputy Director, Civil Litigation Division
Mississippi Attorney General's Office
550 High Street, Suite 1100
Post Office Box 220
Jackson, Mississippi 39205-0220
Telephone: (601) 359-4184
rex.shannon@ago.ms.gov

Counsel:

      We are writing regarding apparent deficiencies in Defendants' discovery responses, and to ask certain clarifying questions regarding those responses. We believe it would be most productive for Defendants to provide a written response early this coming week, so that we can then schedule a telephonic meet and confer for later in the week if needed.

**Discovery of Prior Administrations**

      As a general matter, it appears that Defendants' responses to Plaintiffs' discovery requests are limited to the time in which the specific named defendant has served in his or her current official capacity. That limitation is not consistent with our requests, which seek information regarding Defendants, their agents and employees, and their predecessors. While Defendants may or may not have personal knowledge about events occurring in prior administrations, that does not mean Defendants do not have the obligation to make reasonable inquiries with respect to matters that predate their administrations. Please explain the basis for this position, or clarify your position if you believe we have misunderstood it.

BEIJING   BRUSSELS   HONG KONG   HOUSTON   LONDON   LOS ANGELES   PALO ALTO   SÃO PAULO   TOKYO   WASHINGTON, D.C.

10/7/22 12:05 PM

Simpson Thacher & Bartlett LLP

Rex M. Shannon, Esq. -2- October 7, 2022

**<u>Defendants' Interrogatory Responses</u>**

In your responses to **Interrogatories 2 and 3**, you state that Defendants have "not been involved" in any analysis of the Supreme Court districts after the current district lines were enacted in 1987. But the *McCray* and *Magnolia Bar* lawsuits, in which, as here, the Board, the Governor, the AG, and the SOS were defendants, were litigated in the years after 1987, and those cases almost necessarily involved analysis of the Supreme Court districts. And more recently (including in 2005 and 2016) there were legislative proposals to change the districts. Is your position that defendants' predecessors were not involved in any manner in any of those matters and/or that you can identify by name no persons (other than former Gov. Bill Allain) who were involved in those activities?

**Interrogatory 4** asked you to "describe" Defendants' roles in administering Supreme Court elections. Your response generally seeks to refer us to "applicable sections of the Mississippi Code and/or the Mississippi Administrative Code." This response is insufficient. Please supplement to include a narrative description of the role of each Defendant with respect to the administration of Supreme Court elections.

**Interrogatories 5 and 6** asked Defendants to identify state or public interests served by the use for the election of Supreme Court justices of (i) three at-large voting districts and (ii) the three at-large voting districts as currently drawn. As to any interest served by the districts as currently drawn, you state: "The use of the same three districts for the Mississippi Transportation Commission and the Mississippi Public Service Commission helps to minimize voter confusion." This appears to mean that voters would somehow be confused if these Commissions' election districts were not identical to the Supreme Court's election districts. We ask that you explain the basis for this assertion, given that, among other things, (i) the elections for positions on the referenced Commissions are held on odd-numbered years whereas Supreme Court elections are held on even-numbered years and (ii) there is no apparent connection between these offices or other factor that could reasonably cause "voter confusion." Please also let us know if any documents or other information exists that support this position.

**Interrogatories 8, 9, and 10** concern formal or informal policies, procedures, or practices regarding appointment of Supreme Court justices. All defendants state they have no information except for the Governor, who states:

> [The Governor's] office does not have any written or unwritten policies or procedures addressing Supreme Court appointments. To date, Defendant has not made any such appointments, as no Supreme Court vacancies have occurred during Defendant's term in office. With regard to judicial appointments generally, Defendant states that a public announcement posted by The Mississippi Bar is typically utilized to solicit resumes from candidates interested in being considered for judicial vacancies. Resumes received are reviewed, and ultimately a decision is made regarding a given

10/7/22 12:05 PM

Simpson Thacher & Bartlett LLP

Rex M. Shannon, Esq.        -3-        October 7, 2022

> appointment in a manner consistent with Miss. Code Ann. §§ 9-1-103, 23-15-849.

Please see the below questions regarding this response:

1. We understand that Mississippi used to have a Judicial Nominating Committee; that Gov. Fordice discontinued the Committee; and that Gov. Barbour reinstated it as the Judicial Appointments Advisory Committee (by Executive Order 914, which is [here](#) at pp. 196-97), which Gov. Bryant continued (by Executive Order 1384, [here](#)). Is Gov. Reeves continuing this Committee?

2. Does the Governor have any "practices" regarding Supreme Court appointments? In other words, was the omission of the term "practices" from your response intentional?

3. We are surprised by the Governor's assertion that he has no formal or informal policies or procedures regarding Supreme Court appointments because no appointment have yet been made. This suggests that in the event of a vacancy, the Governor has no contingency plan and would be starting from a blank slate in determining how a replacement Justice should be appointed, without any sense of how such a determination would be made or which criteria would be used. Is that in fact the Governor's position?

4. You cite the lack of appointments during the Governor's administration as the basis for your response that the Governor has no relevant formal or informal policies or procedures. This suggests a lack of continuity between the current administration and its predecessor, notwithstanding Gov. Reeves having served in that administration as Lt. Gov. between 2012-2020, and having taken public positions on Supreme Court candidacies during that time. Is it your position that (i) the Bryant administration's policies, procedures, and/or practices regarding Supreme Court appointments have no relevance in the current administration; (ii) the Bryant administration had no such policies, procedures, or practices; (iii) you are unable to locate any information regarding such matters; and/or (iv) we are not entitled to information regarding such matters?

5. Please explain whether the following statement applies to Supreme Court appointments, or is it specific to appointments other than to the Supreme Court: "With regard to judicial appointments generally, Defendant states that a public announcement posted by The Mississippi Bar is typically utilized to solicit resumes from candidates interested in being considered for judicial vacancies. Resumes received are reviewed, and ultimately a decision is made…" In addition, please supplement this response to address the following issues:

    a) Does the Mississippi Bar have discretion in whether to post such announcement, or is there a formal or informal requirement or arrangement pursuant to which the announcement is posted?

Simpson Thacher & Bartlett LLP

Rex M. Shannon, Esq. -4- October 7, 2022

  b) Who drafts and approves the public announcement?

  c) How are resumes solicited, and by whom?

  d) Who reviews the resumes?

  e) Who makes the decision, and based on which criteria?

  Also regarding **Interrogatory 10**, you have provided no names of any individuals, as we requested, but instead refer us to unspecified documents you have produced that "may" identify relevant individuals. Please supplement to identify such individuals by name, as this reference to unspecified documents does not provide a meaningful response. If you contend that providing the names of personnel involved in such matters in previous administrations is irrelevant or unduly burdensome, please substantiate those objections. In addition, please supplement your response to identify individuals who would be part of the process for gubernatorial appointments to the Supreme Court in the event of a vacancy during the current administration.

  Regarding **Interrogatory 11**, we understand Defendants' position to be that no evaluation, analysis, or study on the referenced topic has been conducted by or on behalf of any of the Defendants' offices since 2000. Please advise as to whether this understanding is correct. To the extent Defendants are objecting to investigating whether such analyses, etc., have been conducted by their predecessors and are limiting their response to analyses, etc., that have been conducted during their specific administrations, please explain the basis for this objection.

  Regarding **Interrogatory 12**, please confirm that (i) you have investigated whether relevant communications with legislators since 2015 exist and have not found any and (ii) notwithstanding your privilege objection, you are not withholding any responsive information based on any asserted privilege or other protection from disclosure. If you are withholding such information, please promptly provide a log substantiating those privilege assertions.

  Regarding **Interrogatory 14**, Defendants do not identify any individuals involved in preparing their interrogatory responses. Please explain the basis for your contention that the identities of individuals (other than counsel) who provided information used by Defendants in their interrogatory responses is "not relevant." Indeed, across discovery in this action, Defendants have only identified a single individual by name—Kyle Kirkpatrick, who Defendants contend in their initial disclosures "may have discoverable information pertaining to election returns and related records maintained by the Mississippi Secretary of State's Office." Is it in fact Defendants' position that they know of no individuals other than Mr. Kirkpatrick who have knowledge relevant to the various positions taken by Defendants this matter (e.g., there is no individual, other than counsel, with knowledge relevant to Defendants' position that the current Supreme Court districts foster judicial independence and prevent voter confusion)?

Simpson Thacher & Bartlett LLP

Rex M. Shannon, Esq. -5- October 7, 2022

**<u>Defendants' Referrals to MDAH</u>**

Many of Defendants' responses to Plaintiffs' discovery requests refer Plaintiffs to the MDAH. For instance, you stated in prior correspondence dated September 21:

> With the exception of documents already produced (Bates # DEF002881-DEF002903), the defendants do not have possession, custody, or control of documents or communications from prior gubernatorial administrations concerning Supreme Court appointments. Records from prior gubernatorial administrations, to the extent they were officially preserved, would be in the custody of the Mississippi Department of Archives and History ("MDAH").
>
> By way of example, when the Reeves Administration took office, records from the Bryant Administration had been transferred to the custody of MDAH. Consequently, the Reeves Administration does not have access to physical or electronic records from the Bryant Administration. You would need to contact MDAH to determine what materials exist and how they are stored.

First, can you clarify <u>which</u> records are transferred to MDAH at the conclusion of an administration? While we understand that certain records from personnel who leave office at the conclusion of an administration would be transferred to state archives, it seems unlikely that <u>all</u> materials created or received during a previous administration would be transferred to MDAH, such that the new administration would arrive at an empty office with no files. For instance, it would seem that emails and other materials created or received by career civil servants within Defendants' respective offices would remain in their files. Can you explain whether this is the case, and whether Defendants conducted a reasonable search of such files before concluding that no responsive information existed?

Second, in various interrogatory responses, Defendants state they "would refer Plaintiffs to the Mississippi Department of Archives and History for additional information that may be responsive to this interrogatory." *See* Responses to Interrogatories 8-10. In so stating, are Defendants asserting that they believe responsive documents exist at MDAH? If so, please describe such documents.

Third, while we do not concede that referral to MDAH appropriately discharges Defendants' discovery obligations, we understand that records from the Barbour and Bryant administrations are "restricted" due to possible confidentiality and/or privilege issues and require review, including potentially by attorneys from the Attorney General's office, before any disclosures may be made. Given the need to proceed expeditiously with discovery and the Attorney General's role in whatever process may need to occur prior to disclosure, we request your assistance in facilitating disclosure of nonprivileged information held as "restricted" by MDAH. Please advise as to whether Defendants will participate in joint

Simpson Thacher & Bartlett LLP

Rex M. Shannon, Esq. -6- October 7, 2022

outreach to the MDAH Director in order to expedite whatever review is required in order to make these materials available to us.

*   *   *

Thank you for your attention to these matters. Our review is ongoing; the issues raised in this letter are not necessarily the only issues we may raise with respect to Defendants' discovery responses, and that a particular response or matter is not addressed in this letter does not reflect a concession that Defendants' responses are sufficient. Plaintiffs reserve all rights.

Very truly yours,

Isaac Rethy

10/7/22 12:05 PM