**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

| | |
|---|---|
| **DYAMONE WHITE, et al.,** | **PLAINTIFFS** |
| **VS**. | **Civil Action No. 4:22-cv-00062-SA-JMV** |
| **STATE BOARD OF ELECTION COMMISSIONERS, et al.,** | **DEFENDANTS** |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO OVERRULE DEFENDANTS' OBJECTIONS AND COMPEL DISCOVERY**

**INTRODUCTION**

This Court's intervention is required to overrule Defendants' categorical objections to any discovery involving (1) gubernatorial appointments of Mississippi Supreme Court justices and (2) anything that occurred prior to January 2020, when the official defendants assumed their present offices. Both of these blanket objections are legally baseless.

This case concerns State Supreme Court districts that have been maintained since 1987. Plaintiffs allege that those districts dilute the voting strength of Black Mississippians and deny Black Mississippians an equal opportunity to elect candidates of their choice to that body. The fact that the Supreme Court has only had four Black justices in its history—each of whom was appointed by successive governors to the same seat, and then won reelection as either an incumbent or unopposed—and that Black candidates typically lose in these districts in open elections are two obvious manifestations of the districts' vote dilutive nature.

Defendants object to producing any information or documents regarding gubernatorial appointments to the Supreme Court on relevance grounds. But the standard for assessing relevance under Rule 26 of the Federal Rules is capacious, and even if it were not, information regarding

such appointments is obviously relevant, as demonstrated by the multiple federal court decisions in this Circuit considering evidence regarding gubernatorial appointments in the specific context of a Section 2 redistricting claim. *See, e.g.*, *Lopez v. Abbott*, 339 F. Supp. 3d 589, 615 (S.D. Tex. 2018); *Martin v. Allain*, 658 F. Supp. 1183, 1203 (S.D. Miss. 1987). Moreover, the apparent use of such gubernatorial appointments to maintain the vote-dilutive districts while masking their full effects is also relevant to Plaintiffs' constitutional claim as well. Defendants' sweeping relevance objection to discovery regarding gubernatorial appointments must be overruled.

Defendants also object to discovery of any information or documents from prior administrations. That categorical objection, which seeks to limit Defendants' discovery obligations to the last three years in a case involving districts that have been in place for 35 years, is similarly baseless. Defendants do not appear to claim that the activities of prior administrations are irrelevant. Nor could they given the nature of the claims, which involve Supreme Court districts drawn in 1987 and the elections run and appointments made using those districts up to the present day. Rather, their argument appears to be that they are simply not obligated to furnish any documents or information from before the current administrations took office in January 2020, regardless of (1) whether such information or documents are relevant, (2) the burden imposed on them, and (3) whether such information or documents may be within their custody or control. That position cannot be squared with the Federal Rules, which is why courts have repeatedly rejected it. *See e.g.*, *Arab Am. Civil Rights League v. Trump*, 2017 WL 2501060 (E.D. Mich. June 9, 2017); *Hobson v. Buncich*, 2013 WL 208934 (N.D. Ind. Jan. 16, 2013).

Defendants' baseless, categorical discovery objections should be overruled.

**BACKGROUND**

    A.    **Plaintiffs' Claims**

Plaintiffs brought this action because the district boundaries that have been in place since 1987 for Mississippi Supreme Court elections (1) dilute the voting strength of Black Mississippians, in violation of Section 2 of the Voting Rights Act, and (2) have been maintained with such vote dilution as a motivating factor, in violation of the United States Constitution. *See generally* Compl., Dkt. #1. Mississippi uses three at-large districts to elect three candidates per district. Compl. ¶ 36. This overall districting scheme dates back at least to Mississippi's 1890 Constitution, and the district lines have been modified only four times in over 100 years—most recently in 1987, 35 years ago. *Id.* ¶ 37. The State Supreme Court has had a total of four Black justices in its history, all of whom have initially acceded to the bench via gubernatorial appointments, and all successively to the same seat (District 1, Place 2). *E.g.*, *id.* ¶¶ 52, 106. Thus, the nine-member Court has never had more than a single Black justice at the same time, and throughout its history, the Court's membership has either been 0% or 11% Black, despite the population of Mississippi being nearly 40% Black at present.[1]

"The essence of a § 2 claim is that a certain electoral law, practice, or structure interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by black and white voters to elect their preferred representatives." *Thornburg v. Gingles*, 478 U.S. 30, 47 (1986). Under *Gingles*, Plaintiffs must prove that (i) "the racial group is sufficiently large and geographically compact to constitute a majority"; (ii) "the racial group is politically cohesive";

---

[1] As a remedy, District 1—the central district, which includes the city of Jackson and parts of the Delta region, and which has a Black voting age population of approximately 49%—could "be brought to over 50% in any number of configurations and without splitting any county lines or altering the overall orientation of the districts, such that Black voters would have the opportunity to elect candidates of choice in District 1." Compl. ¶ 58; *see also id.* ¶ 49.

3

and (iii) "the majority votes sufficiently as a bloc to enable it usually to defeat the minority's preferred candidate." *Thomas v. Bryant*, 366 F. Supp. 3d 786, 800 (S.D. Miss. 2019) (internal quotations omitted). Once that threshold is met, a plaintiff may prove vote dilution based on the "Senate factors," a non-exhaustive list of factors going to the "totality of the circumstances," including the history of discrimination in voting, racial polarization in voting, effects of discrimination on the ability to participate in the political process, the use of racial appeals in elections, lack of responsiveness of state officials to the minority's needs, and the tenuous basis for the challenged practice. *Id.* at 800-01; *see* S. Rep. No. 97-417, 97th Cong., 2d Sess. (1982), pages 28-29. This totality of the circumstances analysis is a necessarily broad inquiry, involving an "intensely local appraisal of the design and impact of the contested electoral mechanisms" in light of a jurisdiction's "past and present reality." *Gingles*, 478 U.S. at 78-79.

B.    **Procedural History**

Plaintiffs served their first set of requests for production of documents ("RFPs") on July 8, 2022, and their first set of interrogatories on September 2, 2022. Defendants responded to Plaintiffs' RFPs on August 8, 2022 and to Plaintiffs' interrogatories on October 3, 2022.

Plaintiffs' RFPs sought documents and information related, *inter alia*, to (1) gubernatorial appointments of Mississippi Supreme Court Justices, and (2) previous administrations' activities with respect to the challenged Supreme Court districts. For example, Request for Production No. 7 sought "documents and communications concerning gubernatorial appointments to fill vacancies on the Mississippi Supreme Court, from 1985 to present." In response, Defendants produced the final appointment letters signed by past governors, but did not produce any other documents related to any Supreme Court vacancies or appointments. Plaintiffs' interrogatories also sought information concerning matters that occurred in prior administrations, including but not limited to prior gubernatorial appointments of justices to the Supreme Court. *See* Mot. at 3-10 (setting forth

4

specific interrogatories and objections at issue).[2] Among other things, Plaintiffs asked Defendants to "identify and describe any policies, procedures, and practices, whether formal or informal, followed in connection with gubernatorial appointments of justices to the Mississippi Supreme Court," and to "[i]dentify each person who worked on, advised on, or otherwise been part of the process for gubernatorial appointments of justices to the Mississippi Supreme Court." *Id.* at 5, 7.

Defendants responded with lengthy, boilerplate objections and did not provide substantive responses. Among other things, Defendants asserted they would not respond with respect to matters occurring in prior administrations, and that since Governor Reeves had not yet made any Supreme Court appointments, they had no responsive information. *See id.* at 5, 7-8.[3]

On October 7, 2022, in an attempt to better understand the basis of Defendants' positions, Plaintiffs sent Defendants a detailed letter seeking clarification. *See* Ex. 6. As relevant here, Plaintiffs asked for additional information regarding the lack of substantive responses to Plaintiffs' interrogatories regarding prior administrations' gubernatorial appointments, including whether it was Defendants' position that they lacked any information regarding such appointments or whether Defendants believed Plaintiffs "are not entitled to information regarding such matters." Further, as to discovery of prior administrations, Plaintiffs stated:

> As a general matter, it appears that Defendants' responses to Plaintiffs' discovery requests are limited to the time in which the specific named defendant has served in his or her current official capacity. That limitation is not consistent with our requests, which seek information regarding Defendants, their agents and

---

[2] Defendants each served separate, but substantially similar, sets of responses and objections to Plaintiffs' First Set of Interrogatories. Each of those is separately attached to this Motion as Exhibits 2 through 5. For purposes of concision, Plaintiffs' Motion quotes only from the Governor's responses and objections. Because Defendants have adopted the objections at issue on this Motion on a collective basis, the outcome of this Motion does not implicate any distinction between the responses and objections served by any of the four Defendants.

[3] Defendants' responses to Plaintiffs' interrogatories (as well as to Plaintiffs' RFPs) also generally referred Plaintiffs to the Mississippi Department of Archives and History.

5

employees, and their predecessors. While Defendants may or may not have personal knowledge about events occurring in prior administrations, that does not mean Defendants do not have the obligation to make reasonable inquiries with respect to matters that predate their administrations. Please explain the basis for this position, or clarify your position if you believe we have misunderstood it.

In response, Defendants confirmed that their objections with respect to gubernatorial appointments and the activities of prior administrations were categorical objections not dependent on the specific framing of a particular discovery request or a specific determination as to the availability of or burden involved in collecting particular documents.

As to gubernatorial appointments specifically, Defendants stated:

Much of the additional information you have requested concerns the matter of gubernatorial appointments, generally, of Mississippi Supreme Court justices. Such information has no relevance to the adoption or maintenance of Mississippi's current Supreme Court districts and is beyond the scope of permissible discovery pursuant to Rule 26, Federal Rules of Civil Procedure.

Oct. 11, 2022 Letter from R. Shannon, Ex. 7 at 1.[4] And, as to prior administrations, Defendants stated:

Defendants have no obligation to assume the unreasonable burden of investigating the actions of prior administrations of state-wide elected officials on Plaintiffs' behalf. If you are aware of any controlling authority that you contend imposes such an obligation, please provide it.

*Id.* Plaintiffs requested a telephonic meet and confer; on that call, held October 17, 2022, Defendants both confirmed these positions and clarified that they believed they had *no obligation* to provide information responsive to these topics—irrespective of whether such information was available to them and irrespective of any specific burden concerns.

---

[4] Defendants in their Oct. 11 letter also acknowledged that MDAH has "one or more binders" containing "information regarding judicial appointments." Notwithstanding Defendants' obligation under the Federal Rules to produce all documents accessible to them, Plaintiffs have thus far engaged in good faith efforts to obtain any relevant documents from MDAH.

6

Thereafter, Plaintiffs requested a telephonic conference with the Court, as contemplated by the parties' Case Management Order. That conference was held on October 20, 2022. During the conference, the Court advised that the matters in dispute should be submitted to the Court by motion for resolution.

## **ARGUMENT**

The Federal Rules of Civil Procedure authorize discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The Federal Rules are construed broadly and liberally in favor of discovery. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Moreover, "[f]ederal policy favors broad discovery in civil rights actions" and "the 'normally predominant principle of utilizing all rational means for ascertaining truth' ... is at its strongest in civil-rights cases." *Dunn v. Dunn*, 2016 WL 4127769, at *5 (M.D. Ala. Aug. 2, 2016).

Relevant information for purposes of Rule 26 encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005). As the party resisting discovery, Defendants carry the "burden to establish the lack of relevance by demonstrating that the requested discovery either does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1) or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Merrill.*, 227 F.R.D. at 470 (citations omitted); *see also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482 (5th Cir. 1990). "Similarly, the burden of showing that a discovery request fails the proportionality calculation mandated by Rule 26(b) falls on the party resisting discovery." *LULAC v. Abbott*, 2022 WL

7

3593055, at *4 (W.D. Tex. Aug. 22, 2022) (cleaned up). Defendants have not met, and cannot meet, this standard.

I. **INFORMATION CONCERNING JUDICIAL NOMINATIONS IS RELEVANT AND DISCOVERABLE**

Plaintiffs' Section 2 claim requires Plaintiffs to establish that "the totality of the circumstances reveal that the political processes leading to nomination or election . . . are not equally open to participation by members of a protected class." *See, e.g.*, *LULAC*, 2022 WL 3593055, at *7 (quoting *Gingles*, 478 U.S. at 43); *accord Thomas*, 366 F. Supp. 3d at 800-01. That inquiry is necessarily broad; accordingly, courts have rejected state defendants' arguments that the only discoverable information in a Section 2 case is information bearing directly on the specific decision-making process leading to adoption of challenged district lines. *See, e.g.*, *LULAC*, 2022 WL 3593055, at *5 ("Secretary Scott says that the Secretary of State played no role in redistricting, . . . but that does not necessarily mean the Office does not possess documents relevant to the size and compactness of minority electorates across Texas or voting patterns of the minority and majority electorates—all of which would be relevant to Plaintiffs' *Gingles* claims.").

Consistent with that, courts in Section 2 cases regularly consider gubernatorial appointments as part of the totality of the circumstances analysis in judicial districting cases under Section 2. For example, in *Martin v. Allain*, 658 F. Supp. 1183 (S.D. Miss. 1987), another Section 2 challenge to Mississippi's state judicial districts, the court made specific findings of fact regarding the history of gubernatorial appointments and, in finding that Plaintiffs had proven certain of their Section 2 claims, relied on the fact that the only Black judges to have been elected in Mississippi had "done so through appointment and election as incumbents." *Id.* at 1203. Similarly, *in Magnolia Bar Association v. Lee*, the court, while ultimately finding for the defendants, considered evidence of judicial appointments, noting "that the power of incumbency

8

can be a mitigating factor of which courts should be cognizant in examining the existence of racially polarized voting." 793 F. Supp. 1386, 1407 (S.D. Miss. 1992); *see also Gingles*, 478 U.S. at 57 ("the success of a minority candidate in a particular election does not necessarily prove that the district did not experience racially polarized voting in that election; special circumstances, such as . . . *incumbency* . . . may explain minority success in a polarized contest.") (emphasis added). And more recently, in *Lopez v. Abbott*, a Texas district court considered the inclusion or exclusion of minority candidates in the gubernatorial appointments process as part of the totality of the circumstances analysis in a Section 2 judicial redistricting case, in part because of the incumbency advantages that an appointment brings. 339 F. Supp. 3d 589, 615 (S.D. Tex. 2018); *see also Westwego Citizens for Better Gov't v. City of Westwego*, 946 F.2d 1109, 1116 n.5 (5th Cir. 1991) (efforts of outside groups to influence gubernatorial appointments process, which tended to lead to the exclusion of minority candidates, could be relevant under Section 2).

Here too, the facts and circumstances surrounding the accession of minority candidates to the bench, including the extent to which Black candidates are included in or excluded from the appointments process, and the extent to which Black candidates must obtain the advantage of incumbency via a gubernatorial appointment to overcome high levels of racially polarized voting, bears directly on Plaintiffs' Section 2 claim. There is no dispute that the only Black persons to have held office as justices of the Mississippi Supreme Court have first been appointed by the Governor and then won elections thereafter while running as incumbents or unopposed. Where Black candidates lacking an incumbency advantage have run against white candidates, they have lost. There is also no dispute that Black judges have each been successively appointed to the same seat (District 1, Place 2) but to no others, such that at no time in the State's history has there been more than a single Black justice on the Court. Gubernatorial nominations of Black justices are

9

therefore highly relevant to the "totality of the circumstances" the Court must consider in this case, including the history of discrimination in judicial elections, the effects of racially polarized voting on the ability of Black candidates to win in Supreme Court elections, the operation of the appointments process as an informal slating process, and the extent to which Black candidates have been elected to public office. *See Thomas*, 366 F. Supp. at 800-01 (listing Senate factors). Discovery into the facts and circumstances of such appointments is necessary for Plaintiffs to prosecute their Section 2 claim, and Defendants' conclusory assertions to the contrary lack merit.

Indeed, such discovery is all the more relevant because Defendants will likely rely on the fact that Black justices have won elections in the past. Defendants cannot rely on those past elections to defend their claims while foreclosing discovery into the circumstances of those elections, including the appointment of the incumbent candidate.

That would be enough. But information regarding gubernatorial appointments to the Supreme Court is also relevant for Plaintiffs' constitutional claim alleging intentional discrimination under *Arlington Heights*. The Fourteenth and Fifteenth Amendments to the U.S. Constitution prohibit any state policy that is instituted or maintained at least in part for a discriminatory purpose. In assessing such a claim, courts review the historical background; the context of the decision to institute or reaffirm the practice; any departures from the regular decision-making process that went into the practice; and the viewpoints expressed by the decisionmakers who instituted or maintained the practice. *See, e.g.*, *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 266-68 (1977).

Here, the appointments process bears on whether the State has consciously pursued and implemented formal or informal policies that preserve a status quo in which only one of nine Supreme Court justices is Black, and in which additional Black candidates are unlikely to be

10

elected in open elections. As noted, the only Black justices to have sat on the Supreme Court have been appointed by successive gubernatorial administrations before prevailing in an election; to this day, no Black candidate has ever prevailed in a Supreme Court election without first having been appointed to this District 1, Place 2 seat. Plaintiffs contend that the practice of successive gubernatorial appointments of Black justices to that seat—and to no other seats—reflects an implicit recognition that an all-white Court would be politically or legally untenable, and that an all-white Court is the most likely result absent such gubernatorial appointments given the current districting scheme and the prevalence of racially polarized voting. *Cf. Veasey v. Abbott*, 830 F.3d 216, 236 (5th Cir. 2016) (en banc) (evidence that policymakers were "aware of the likely disproportionate effect of the law on minorities" would support finding of discriminatory intent). Plaintiffs raised this theory repeatedly in their complaint. Compl. ¶¶ 106, 124. Discovery into the facts and circumstances of prior judicial appointments is necessary for this reason as well.

Defendants' categorical relevance objections to the disclosure of information about a topic of obvious relevance to both of Plaintiffs' claims should be overruled.

## II. DEFENDANTS' OBJECTION TO DISCOVERY OF MATTERS OCCURRING IN PRIOR ADMINISTRATIONS IS MERITLESS

Defendants' position that they have no obligation to participate in discovery with respect to matters occurring in prior administrations is equally untenable. Governor Reeves, Attorney General Fitch, and Secretary of State Watson each took office in January 2020—less than three years ago. The facts relevant to Plaintiffs' Section 2 claim cannot be cabined within that short timeframe; the basic inquiry is whether the challenged districting scheme "interacts with *social and historical conditions* to cause an inequality in the opportunities enjoyed by black and white voters to elect their preferred representatives." *Gingles*, 478 U.S. at 47 (emphasis added). The districting scheme at issue here was enacted in 1987, and various opportunities to make

11

appointments under it, or to support or oppose the adoption of new districts, have occurred since then. The activities of prior administrations are precisely the type of social and historical conditions that bear upon the Section 2 totality-of-the-circumstances analysis. *See also Veasey*, 830 F.3d at 244. And similarly, in the context of constitutional claims challenging discriminatory districting schemes, the Fifth Circuit has declined to "articulate a particular time limit" for relevant evidence, stating that while "the closer in time, the greater the relevance," courts must "always recogniz[e] that history (even 'long-ago history') provides context to modern-day events." *Id.* at 232 n.14 (describing historical evidence from the period from the 1970s through the 2010s as "more contemporary"). Defendants cannot credibly contend that nothing that occurred outside the last three years is relevant to the Section 2 and *Arlington Heights* claims here.

As an example, assume Defendants' predecessors in office had commissioned analyses of voting by race and found high levels of polarization and block voting. There is no possible basis for Defendants to withhold that information from discovery merely because it was created before 2020. Yet that is the position Defendants contend this Court should adopt.

To the extent Defendants contend instead that, as State officials sued in their official capacities, their discovery obligations are somehow intrinsically limited to matters occurring during their administrations, that position lacks any support in the Federal Rules or relevant case law. Redistricting cases are brought against the responsible executive branch officials, sued in their official capacities. *See Texas Alliance for Retired Americans v. Scott*, 28 F. 4th 669, 671 (5th Cir. 2022); *Ex parte Young*, 209 U.S. 123, 155-56 (1908). In Mississippi, the responsible executive branch officials in the redistricting context are those named as Defendants here—the Governor, Secretary of State, and Attorney General, who comprise the membership of the State Board of

Elections.[5] An official capacity suit is not a personal suit against the named individuals and is not limited in scope to actions taken by those individuals personally. Instead, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). In keeping with this, "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party." Fed. R. Civ. P. 25(d); *accord ACLU v. Mabus*, 719 F. Supp. 1345, 1347 n.1 (S.D. Miss. 1989).

Notwithstanding this clear law, Defendants have taken the position they are not obligated to provide discovery to the extent that such discovery implicates prior administrations, stating they "have no obligation to assume the unreasonable burden of investigating the actions of state-wide elected officials on Plaintiffs' behalf." Ex. 7. On the parties' subsequent telephonic meet and confer, Defendants confirmed that this objection applies to information regarding prior administrations that is within Defendants' possession, custody, or control; the objection does not turn on a request-specific determination of relevancy or burden; and the objection is not based on construction of the language of a specific document request or interrogatory. Thus, for example, to the extent officials within the Reeves administration also served in the preceding Bryant administration (as did Governor Reeves himself) and have knowledge of matters responsive to Plaintiffs' interrogatories by virtue of such service (for example, regarding the multiple Supreme

---

[5] *See, e.g.*, *Thomas v. Bryant*, 366 F. Supp. 3d 786, 801 (S.D. Miss. 2019) ("Since 1965 . . . state redistricting cases in Mississippi have 'always been directed primarily against the state executive officers charged with administering Mississippi's election laws . . . the then members of the State Board of Election Commissioners and their subordinates.'") (quoting *Connor v. Winter*, 519 F. Supp. 1337, 1340 n.1 (S.D. Miss. 1981)); *accord Smith v. Clark*, 189 F. Supp. 2d 503 (S.D. Miss. 2002); *Kirksey v. Allain*, 635 F. Supp. 347 (S.D. Miss. 1986).

Court appointments that were made during the Bryant administration), Defendants confirmed they believe they have no obligation to provide discovery reflecting such officials' knowledge.

Defendants' position has no basis. The Federal Rules are clear that a party must produce information within its "possession, custody, or control." Fed. R. Civ. P. 26, 34. And Rule 33, governing interrogatories, expressly states that if a party is a governmental agency, its response must "furnish the information available to the party." *See Johns v. United States,* 1997 WL 732423, at *2 (E.D. La. Nov. 21, 1997) (construing Rule 33 to require the government entity to "base[] the response on all the information available to the government."); *accord St. Pierre v. Dearborn Natl. Life Ins. Co.*, 2020 WL 6122555 at *4 (W.D. Tex. 2020). Consistent with this, official capacity defendants' discovery obligations under the Federal Rules are not limited to matters within the personal possession or knowledge of the individuals named in their official capacities. *See, e.g.*, *Tyler v. Suffolk County*, 256 F.R.D. 34, 38 (D. Mass. 2009) ("Because the defendants have been sued in their official capacities, they will be required to respond to those questions using all reasonably obtainable information within their possession, custody or control, including records maintained by [the entity]."); *Murphy v. Piper*, 2018 WL 2538281, at *2 (D. Minn. June 4, 2018) ("An individual defendant named in her official capacity must answer interrogatories directed at the government entity using all reasonably obtainable information within her possession, custody or control, including records maintained by the relevant government entity.") (cleaned up); *Andrews v. Rauner*, No. 2019 WL 2514703, at *9 (C.D. Ill. June 18, 2019) (overruling objection because defendant "*in his official capacity* has access to the responsive documents.") (emphasis added).[6]

---

[6] Documents are considered to be within a party's possession, custody, or control not only when there is actual possession or ownership, but also in light of "a party's legal right or practical

Courts have specifically rejected arguments like those Defendants make here, and confirmed that official capacity defendants must respond to discovery irrespective of whether the information sought was created or received while defendants held that official capacity. The court's discussion in *Hobson v. Buncich* is instructive in this regard.

> In his response brief filed in his official capacity, Sheriff John Buncich asserts that he did not have knowledge that the consultants' reports existed and argues that the prior administration had destroyed the consultants' reports in accordance with the agreement with the DOJ after they had completed their review of the documents. However, John Buncich is not named individually; he is being sued in his official capacity as the Lake County Sheriff and, thus, is responsible for responding to discovery requests directed to the Sheriff's Department, ***including requests related to events that preceded his election***.

2013 WL 208934, at *7 n.4 (emphasis added). Similarly, in *Arab Am. Civil Rights League v. Trump*, the court concluded that "Defendants' duty extends to evidence that predates January 20, 2017"—the date on which the relevant official capacity defendants assumed office—"and, although the individual Defendants were sued in their official capacity, their duty extends to information created, received or maintained in their personal capacities." 2017 WL 2501060, at *3. Courts have also not hesitated to require government defendants to produce information from prior administrations, even from decades earlier, so long as that information is within their possession, custody or control. *See, e.g.*, *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1032 (E.D. Cal. 2010) (compelling governor to produce parole records dating back "nearly thirty years"); *Biggs v. Finn*, 2008 WL 2119916, at *1 (E.D. Cal. May 20, 2008) (compelling production of nearly 20 years of gubernatorial records).

---

ability to obtain the materials from a nonparty to the action." *LULAC v. Abbott*, 2022 WL 3233406 at *3, *7 (W.D. Tex. Aug. 10, 2022) (internal quotation marks omitted). Discovery against state defendants in redistricting cases thus encompasses discovery of materials in the possession of state agencies and instrumentalities over which the state defendants have the requisite control. *See id.*

Defendants' arbitrary and legally-unsupported objection to disclosure of information predating the year 2020 should be overruled, and Defendants should be compelled to supplement those responses to discovery that relied on that objection.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion to overrule the foregoing objections and to compel discovery should be granted.

THIS the 28th day of October, 2022.

Respectfully submitted,

/s/ *Joshua Tom*
AMERICAN CIVIL LIBERTIES UNION
 OF MISSISSIPPI FOUNDATION
Joshua Tom (Miss. Bar No. 105392)
Lakyn Collier (Miss. Bar No. 106224)
Vara Lyons*
101 South Congress Street
Jackson, MS 39201
(601) 354-3408
*JTom@aclu-ms.org*
*Lcollier@aclu-ms.org*
*Vlyons@aclu-ms.org*

SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood (Miss. Bar No. 106441)
Isaac Rethy*
425 Lexington Avenue
New York, NY 100017
(212) 455-2000
*jyoungwood@stblaw.com*
*irethy@stblaw.com*

* Admitted *pro hac vice*

*Attorneys for Plaintiffs*

ACLU FOUNDATION
Ari J. Savitzky*
Sophia Lin Lakin*
Ming Cheung (*pro hac vice forthcoming*)
Kelsey A. Miller (*pro hac vice forthcoming*)
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2500
*asavitzky@aclu.org*
*slakin@aclu.org*

SOUTHERN POVERTY LAW CENTER
Jade Olivia Morgan (Miss. Bar No. 105760)
Leslie Faith Jones (Miss. Bar No. 106092)
111 East Capitol Street, Suite 280
Jackson, MS 39201
(601) 948-8882
*jade.morgan@splcenter.org*
*leslie.jones@splcenter.org*

Bradley E. Heard*
Ahmed Soussi
Sabrina Khan (*pro hac vice forthcoming*)
150 E Ponce de Leon Avenue, Suite 340
Decatur, GA 30030
(470) 521-6700
*bradley.heard@splcenter.org*
*ahmed.soussi@splcenter.org*
*sabrina.khan@splcenter.org*

**CERTIFICATE OF SERVICE**

      I, Joshua Tom, hereby certify that on October 28, 2022, I filed the forgoing Notice with the Clerk of the Court using the ECF system which sent notification of such filing to all parties on file with the Court.

/s/: Joshua Tom_____  
Joshua Tom, MSB # 105392
