**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

| | |
|---|---|
| DYAMONE WHITE; MATTHEW CAMPBELL; TY PINKINS; CONSTANCE OLIVIA SLAUGHTER HARVEY-BURWELL; DERRICK SIMMONS, <br><br> *Plaintiffs*, <br><br> vs. <br><br> STATE BOARD OF ELECTION COMMISSIONERS; TATE REEVES *in his official capacity as Governor of Mississippi*; LYNN FITCH *in her official capacity as Attorney General of Mississippi*; MICHAEL WATSON *in his official capacity as Secretary of State of Mississippi*. <br><br> *Defendants*. | No. 4:22-cv-00062-SA-JMV |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO OVERRULE
DEFENDANTS' OBJECTIONS AND COMPEL DISCOVERY**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................... 3

    I.   THE STATE ARCHIVES' POSSESSION OF RELEVANT INFORMATION DOES NOT RELIEVE DEFENDANTS OF THEIR OWN DISCOVERY OBLIGATIONS. ................................................................................................ 3

    II.  DEFENDANTS' RELEVANCE OBJECTION FAILS. ............................................. 4

    III. DEFENDANTS MUST DISCLOSE WHAT INFORMATION THEY HAVE REGARDING PRIOR ADMINISTRATIONS. ....................................................... 9

CONCLUSION ...................................................................................................................... 13

i

## TABLE OF AUTHORITIES

**Cases**

*Andrews v. Rauner*,
  No. 18-CV-1101, 2019 WL 2514703 (C.D. Ill. June 18, 2019) ............................................. 11

*Arab American Civil Rights League v. Trump*,
  No. 17-10310, 2017 WL 2501060 (E.D. Mich. June 9, 2017) ............................................. 10

*Biggs v. Finn*,
  No. S-07-0470, 2008 WL 2119916 (E.D. Cal. May 20, 2008) ............................................. 12

*Chisom v. Roemer*,
  501 U.S. 380 (1991) ............................................................................................................. 7

*Dunn v. Dunn*,
  No. 2:14-CV-601, 2016 WL 4127769 (M.D. Ala. Aug. 2, 2016) ........................................... 4

*Dye v. State ex rel. Hale*,
  507 So.2d 332 (Miss. 1987) ................................................................................................. 7

*Heller v. City of Dallas*,
  303 F.R.D. 466 (N.D. Tex. 2014) ..................................................................................... 9, 12

*Hickman v. Taylor*,
  329 U.S. 495 (1947) ............................................................................................................. 4

*Hobson v. Buncich*¸
  No. 2:10-CV-429, 2013 WL 208934 (N.D. Ind. Jan. 16, 2013) ........................................... 12

*Kentucky v. Graham*,
  473 U.S. 159 (1985) ........................................................................................................... 11

*Kirksey v. Dye*,
  564 So.2d 1333 (Miss. 1990) ............................................................................................... 7

*League of United Latin American Citizens v. Abbott*,
  No. 21-CV-259, 2022 WL 3593055 (W.D. Tex. Aug. 22, 2022) ........................................... 5

*Lopez v. Abbott,*
  339 F. Supp. 3d 589 (S.D. Tex. 2018) ................................................................................. 9

*Magnolia Bar Ass'n v. Lee*,
  793 F. Supp. 1386 (S.D. Miss. 1992) ............................................................................... 5, 8

*Martin v. Allain*,
  658 F. Supp. 1183 (S.D. Miss. 1987) ............................................................................... 5, 8

*Murphy v. Piper*,
   No. 16-2623, 2018 WL 2538281 (D. Minn. June 4, 2018) .................................................. 11

*Prewitt v. Moore*,
   840 F. Supp. 436 (N.D. Miss. 1993) ..................................................................................... 7

*Seastrunk v. Burns*,
   772 F.2d 143 (5th Cir. 1985) ................................................................................................ 6

*Thomas v. Cate*,
   715 F. Supp. 2d 1012 (E.D. Cal. 2010) ............................................................................... 12

*Thornburg v. Gingles*,
   478 U.S. 30 (1986) ................................................................................................................ 5

*Tyler v. Suffolk County*,
   256 F.R.D. 34 (D. Mass. 2009) ........................................................................................... 11

*Veasey v. Abbott*,
   830 F.3d 216 (5th Cir. 2016) ................................................................................................ 6

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*,
   429 U.S. 252 (1977) .............................................................................................................. 6

*Westwego Citizens for Better Government v. City of Westwego*,
   946 F.2d 1109 (5th Cir. 1991) ......................................................................................... 7, 9

**Other Authorities**

8B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure (3d ed.) ..................... 4

Jimmie Gates,
   *State High Court Race Takes Political Tone,* The Clarion-Ledger (June 16, 2016) .............. 10

**Rules**

Fed. R. Civ. P. 26(b) ....................................................................................................................... 5

Fed. R. Civ. P. 26(b)(1) ................................................................................................................... 4

Fed. R. Civ. P. 33(a)(2) ................................................................................................................... 4

Fed. R. Civ. P. 33(d) ....................................................................................................................... 3

## INTRODUCTION

Plaintiffs' motion should be granted, and Defendants' categorical objections to production should be overruled, because the information Plaintiffs seek here is relevant. Nothing more is sought by Plaintiffs in their motion than an order requiring Defendants to disclose whatever relevant, responsive information is available to them. And nothing more is required to defeat their categorical objections under the Rules than this Court's affirmation of Defendants' basic obligation to disclose relevant information within their possession, custody and control following a reasonable inquiry. All of Defendants' arguments miss that basic point.

*First*, Defendants assert that another government agency's supposed possession of relevant information obviates Defendants' own disclosure obligations. *See* ECF No. 85 ("Opp.") at 4. They cite no caselaw to support their position, which is contrary to the Rules. *See* Opp. at 4–6. The simple issue is whether, *to the extent Defendants have relevant information that is responsive to Plaintiffs' interrogatories*, they must disclose it. Whatever the Mississippi Department of Archives and History (MDAH) may or may not have, that is not a basis for Defendants to refuse to disclose whatever relevant information is in *their* possession, custody, or control, including information possessed by staffers and officials who also served in prior administrations.

*Second*, Defendants argue that information regarding judicial appointments is not relevant but the cases they cite stand for no such thing. *See* Opp. at 7. Plaintiffs are challenging Supreme Court districts that dilute Black voting strength and make it harder for Black candidates to win judicial office, and they seek information concerning state actions that place (or fail to place) Black Mississippians in judicial office, that directly shape the racial composition of the State Supreme Court, and that bestow the advantage of incumbency on certain candidates. The burden of showing sufficient relevance for discovery purposes is minimal and Plaintiffs plainly

1

meet it here. Indeed, Defendants effectively concede that the appointments are relevant but assert without support that the "process" associated with the appointments is not. That sort of hair-splitting distinction, in addition to being incorrect, is not a proper limitation on the scope of Defendants' discovery obligations.

*Third*, Defendants suggest that producing responsive information regarding the actions of previous administrations will be burdensome, but do nothing to substantiate that assertion or to defend their categorical objection. Opp. at 12. Again, the simple issue is whether Defendants must reasonably investigate and share responsive information about prior administrations *to the extent that they have such information*. Defendants never say that they have searched for or provided all such information already and instead disclaim the duty to inquire, at all, into the State's prior practices. Plaintiffs seek only what they are entitled to under the Federal Rules—a reasonable inquiry by Defendants into available information and, to the extent that no responsive information is found, an explanation as to the investigative steps taken.

Finally, Defendants spent pages rehashing decades-old cases in ways that have no bearing on the discovery dispute at issue. The cases do not say what Defendants want them to say. *See* Opp. at 1–4. *McCray v. Mississippi State Board of Election Commissioners*, a challenge to the pre-1987 districting scheme, was voluntarily dismissed only after the State lost a summary judgment motion and then altered the challenged districts in order to avoid trial. And as for *Magnolia Bar Association* and *NAACP v. Fordice* (which concerned elections for the Transportation and Public Works Commissions), those cases were decided on fundamentally different facts, over three census cycles ago. *Today*, a Black-voting-age majority Supreme Court district can be drawn easily, using whole counties. *Today*, racial polarization in Mississippi is undeniable, including in non-partisan Supreme Court races, such that Black candidates will

typically lose in open Supreme Court elections under the challenged scheme. *Today*, the totality of the circumstances surrounding these districts makes clear that they operate to deny Black voters an equal opportunity to elect candidates of choice, entitling Plaintiffs to relief. Defendants' implicit contention that districts that narrowly withstood challenge back in the 1990s are therefore immune from further challenge for all time is meritless.

Of course, those are all questions for a trial on the merits. For now, Plaintiffs' motion should be granted and Defendants' baseless categorical objection to producing whatever relevant evidence is in their possession custody and control should be overruled.

## ARGUMENT

I. **THE STATE ARCHIVES' POSSESSION OF RELEVANT INFORMATION DOES NOT RELIEVE DEFENDANTS OF THEIR OWN DISCOVERY OBLIGATIONS.**

Defendants argue that the MDAH "presumably" possesses relevant documents and that they should not have to "undertake the burden of securing those documents from MDAH and summarizing them in interrogatory answers."[1] Opp. at 1, 4–6. But this motion does not concern the scope of Defendants' obligations vis-a-vis documents stored in MDAH.[2] Plaintiffs have subpoenaed MDAH and are awaiting a substantive response. But MDAH's possession or custody of relevant documents—whether presumed or actual—does not release Defendants from

---

[1] To the extent that Defendants object to "summarizing," Rule 33(d) addresses a party's option to produce the underlying records in response to an interrogatory. Fed. R. Civ. P. 33(d).

[2] Defendants' reference to Miss. Code. Ann. § 25-59-13(d), which grants title "to any record placed in the records center" to the MDAH, is accordingly irrelevant. Defendants' categorical objection includes information in *their possession* outside that of the MDAH, and that is the present issue. And Miss. Code Ann. § 25-59-7, the MDAH's records control schedules, are doubly irrelevant because whatever "force of law" they might have, such schedules cannot and do not purport to shield any records from appropriate discovery in a federal lawsuit.

3

their own discovery obligations. And it is the information in *Defendants*' possession that Plaintiffs seek here.

To the extent that Defendants have any relevant information that is responsive to Plaintiffs' interrogatories, they are required to disclose whatever they have. *See* Fed. R. Civ. P. 26(b)(1) (authorizing discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case"); Fed. R. Civ. P. 33(a)(2) (Rule 26(b) governs the proper scope of interrogatory discovery); *see also* 8B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2172 & n.7 (3d ed.) (official defendants must "furnish such information as is available to [them]" in response to interrogatories, "using all reasonably obtainable information within their possession, custody or control"). Instead of disclosing any such information or else straightforwardly confirming that, upon a reasonable inquiry, they do not possess responsive information, Defendants have lodged categorical objections and indicated that they have not even inquired as to whether any officials or staffers in their administrations possess responsive information. That is why we are here.

## II. DEFENDANTS' RELEVANCE OBJECTION FAILS.

Defendants do not dispute that the standard for assessing whether information sought in discovery is capacious. The Federal Rules of Civil Procedure authorize discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The Federal Rules are construed broadly and liberally in favor of discovery, particularly in civil rights cases. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 507 (1947); *Dunn v. Dunn*, No. 2:14-CV-601, 2016 WL 4127769, at *5 (M.D. Ala. Aug. 2, 2016). Under that standard, Defendants' categorical relevance objection to the disclosure of information regarding Supreme Court appointments must be overruled.

The information sought here is plainly relevant. The Section 2 "totality of the circumstances" inquiry looks at whether "the political processes leading to nomination or election . . . are not equally open to participation by members of a protected class." *See, e.g.*, *League of United Latin Am. Citizens v. Abbott*, No. 21-CV-259, 2022 WL 3593055, at *7 (W.D. Tex. Aug. 22, 2022) (quoting *Thornburg v. Gingles*, 478 U.S. 30, 43 (1986)). It examines, via the so-called Senate Factors, the history of discrimination in politics, the existence *vel non* of racially polarized voting that prevents Black candidates from winning open elections, the existence *vel non* of candidate slating and other such systems that disadvantage Black candidates, the political success *vel non* of Black candidates in obtaining office in the challenged districts, and any other factor bearing upon the openness and equality of the challenged electoral practice. *See Gingles*, 478 U.S. at 44–45. Defendants largely fail to contest Plaintiffs' analysis of the myriad ways in which the appointments process, which installs judges in office and confers the advantage of incumbency on judicial candidates, is relevant to the various Senate Factors.[3] *See* ECF No. 75 ("Pls.' Mem.") at 9–11. Nor can they. Courts' repeated examination of the details of appointments processes as part of their Section 2 analyses conclusively establish relevance. *See, e.g.*, *Magnolia Bar Ass'n v. Lee*, 793 F. Supp. 1386, 1407 (S.D. Miss. 1992); *Martin v. Allain*, 658 F. Supp. 1183, 1203 (S.D. Miss. 1987).

---

[3] In a footnote, Defendants contend that because the Complaint does not analyze Senate Factor 4 (candidate slating processes) in depth, information pertaining to that factor is not relevant in this case. *See* Opp. at 9 n.5. Defendants cite no authority for such a crabbed construction of relevance. Senate Factor 4 is a potential component of the statutory claim raised in the Complaint, and nothing more need be alleged. *See* Fed. R. Civ. P. 26(b) (defining relevance in terms of "any party's claim or defense"). Moreover, the Complaint *does* reference Senate Factor 4. It alleges that the Senate Factors are a set of "non-exhaustive factors," including "whether the members of the minority group have been denied access to a candidate slating process." ECF No. 1 at 12 n.1. Any evidence of such a denial here is obviously relevant.

That alone would be enough to defeat Defendants' categorical objection. And Defendants similarly fail to refute that evidence of discrimination or improper race-based motives in the appointments process is relevant to a constitutional *Arlington Heights* claim. Pls.' Mem. at 10–11. *Arlington Heights* instructs courts to review the historical background of a challenged practice, the context of the decision to institute or maintain the practice, any departures from the regular decision-making process that went into instituting or maintaining the practice, and the viewpoints expressed by the decisionmakers who instituted or maintained the practice. *See, e.g.*, *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266–68 (1977). Both the decision to install a discriminatory practice and "the mere adherence to existing practices with the intent to maintain a discriminatory system" are challengeable under *Arlington Heights* framework. *Seastrunk v. Burns*, 772 F.2d 143, 150 (5th Cir. 1985).

Here, evidence of the conscious use of the appointments to cement a racial status quo, in which one Black justice can serve after being appointed but vote-dilutive districts that remain unchanged for 35 years prevent the election of additional Black justices, is relevant to Plaintiffs' *Arlington Heights* claim. *See Veasey v. Abbott*, 830 F.3d 216, 236 (5th Cir. 2016) (en banc) (evidence that policymakers were "aware of the likely disproportionate effect of the law on minorities" would support finding of discriminatory intent). Defendants are wrong on multiple levels to suggest (Opp. at 10–11) that *Arlington Heights* only applies to legislators as opposed to any relevant "decisionmaker[s]," as *Arlington Heights* itself states, 429 U.S. at 267. But even if their mis-reading of the law was right, Governors' appointments practices—and their evident impacts on the ability of Black justices to be elected to the Mississippi Supreme Court—would still be relevant to legislators' motives in both enacting or maintaining the challenged districts. That is especially true here, where (for example) Defendant Attorney General Fitch's office has

6

historically advised the legislature with respect to the need to redraw lines (as her office did in 1987), and where Defendant Governor Reeves himself wielded legislative authority for eight years as Lieutenant Governor, including during the most recent legislative effort to alter the decades-old Supreme Court districts at issue, *see generally, e.g.*, *Kirksey v. Dye*, 564 So.2d 1333 (Miss. 1990) (upholding Senate's delegation of legislative power to Lieutenant Governor); *Dye v. State ex rel. Hale*, 507 So.2d 332, 334 (Miss. 1987).

Defendants' other arguments (Opp. at 6–12) lack merit. For one, Defendants rely on inapplicable cases involving whether a Section 2 claim may be asserted to directly challenge the appointments process itself. *See* Opp. at 7 (citing e.g., *Prewitt v. Moore*, 840 F. Supp. 436, 440 (N.D. Miss. 1993)). In this case, Plaintiffs do not challenge the legality of the judicial appointments process.[4] Plaintiffs seek to discover information about the appointments process because it is relevant to their claims challenging the districting scheme. *Prewitt* and Defendants' other cases do not involve analogous claims, or discovery issues at all.

Defendants also mischaracterize precedent in arguing that, even if the fact of gubernatorial appointments might be relevant (as they concede it was in *Magnolia Bar, Martin*, and *Lopez v. Abbott*), "the *process* underlying [gubernatorial] appointments" somehow is not. *See* Opp. at 8–9. That distinction doesn't hold water. If the "process" were irrelevant, then it would be irrelevant whether Black candidates were accepted or rejected for appointments (and the concomitant incumbency benefits an appointment brings) on the basis of race, or whether

---

[4] Defendants' contention that *Arlington Heights*, *Veasey*, and *Westwego Citizens for Better Gov't v. City of Westwego*, 946 F.2d 1109 (5th Cir. 1991) do not address "judicial appointments," Opp. at 9–10, also misses the point. Those cases address the framework for proving intentional discrimination and Section 2 claims, and there is no question that Section 2 applies to judicial elections, which are the subject of Plaintiffs' challenge. *Chisom v. Roemer*, 501 U.S. 380, 401 (1991).

candidates were considered or selected in order to achieve a desired racial composition, quota, or cap for the Supreme Court. It would also be irrelevant whether decisionmakers acknowledged and considered the racially dilutive effects of the challenged districts in making appointments, or the likely political outcomes for appointed incumbents in light of racial polarization in voting. Of course, such circumstances would all plainly be relevant. In all events, such fine-grained relevance arguments are inappropriate at the discovery stage. Judicial appointments are relevant, therefore Plaintiffs are entitled to discovery of matters bearing on judicial appointments irrespective of whether Defendants would characterize a particular document request or interrogatory as going to "process" or "substance."

The cases are in accord. In *Martin*, the court considered not only the fact of an appointment but also broader circumstances touching on the opportunity of minorities to be appointed, such as availability of legal education, the integration of the state bar, and the number of possible judgeships in the state of Mississippi relative to the number of minority appointments. 658 F. Supp. at 1193. And in *Magnolia Bar*, the court similarly considered the details surrounding the appointments of Justice Reuben Anderson and Justice Fred Banks, including the fact that they were appointed to the same seat, by a white governor, which in turn may have affected the electoral advantage that was conferred. *See* 793 F. Supp. at 1393, 1406. Finally, in *Lopez v. Abbott*, the court considered and relied on "evidence that Republican governors have prioritized appointing Latinos to high judicial office and have looked beyond members of their own party when considering candidates for appointment." 339 F. Supp. 3d

589, 615 (S.D. Tex. 2018). In other words, the search for candidates and the decision-making process were relevant to the Section 2 analysis, not just the ultimate decisions.[5] *Id.*

### III. DEFENDANTS MUST DISCLOSE WHAT INFORMATION THEY HAVE REGARDING PRIOR ADMINISTRATIONS.

With respect to the information Plaintiffs seek regarding prior administrations, the nub of Plaintiffs' argument is that "Plaintiffs alone should bear the burden of investigating the actions of prior elected officers." Opp. at 15; *see also* ECF No. 74-7 (Oct. 11, 2022 Letter from R. Shannon) at 1 ("Defendants have no obligation to assume the unreasonable burden of investigating the actions of prior administrations."). That categorical assertion is wrong. To the extent that relevant, responsive information regarding the actions of prior elected officers or their administrations *is available to Defendants or in their possession, custody or control*, it must be disclosed. The Rules require nothing less. *See supra* p. 3–4.

In response to a discovery request, a party must make a "reasonable inquiry" into what information exists in their possession, custody, or control. *E.g.*, *Heller v. City of Dallas*, 303 F.R.D. 466, 485 (N.D. Tex. 2014) ("[A] reasonable inquiry must be made, and if no responsive documents or tangible things exist, the responding party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence."). Defendants do not appear to have complied with that obligation.

To be sure, Defendants contend that the offices were physically empty upon arrival (Opp. at 14), but they appear to have refused to make any inquiry as to information possessed by

---

[5] Defendants also claim, incorrectly, that *Westwego* "has no bearing" here. Opp. at 9. While the court in *Westwego* concluded that a candidate slating process did not in fact exist, it indicated that slating may exist if "some influential non-governmental organization selects and endorses a group or 'slate' of candidates, rendering the election little more than a stamp of approval for the candidates selected." 946 F.2d at 1116 n.5. Accordingly, because of the electoral advantage conferred by gubernatorial appointments, *Westwego* indicates the governors' processes for selecting appointees are relevant, particularly if influenced by outside groups. *See id.*

9

themselves or the current staffs of their administrations. For instance, as Plaintiffs argued in the opening brief, Governor Reeves was a key member of the prior administration and may have relevant knowledge. In response, Defendants engage in wordplay to note that former Governor Bryant "was not obliged to consult Lt. Governor Reeves about any of his appointments"—but do not clarify in any way whether such consultation in fact occurred or whether Governor Reeves nonetheless became aware of any relevant, responsive information concerning the previous administration's appointments practices.[6] *See* Opp. at 4 n.3. It would certainly be plausible if Governor Reeves did at least at times become aware of such information, given that he was an active political supporter of the candidate who was ultimately appointed to a Supreme Court seat in District 1 in 2018.[7] More broadly, while there is no doubt considerable turnover between gubernatorial administrations, Defendants have never represented that there was *100 percent* turnover there (to say nothing of the Secretary of State or Attorney General's administrations, whose senior staffers may have relevant information not only about judicial appointments but about judicial redistricting and racially polarized voting, among other topics).

The cases Plaintiffs cited in their opening brief are on point, and Defendants (Opp. at 16–18) do not refute them. To start, Plaintiffs cited five cases concerning the discovery obligations of defendants sued in their official capacity, including three cases for the principle that such

---

[6] To the extent that Defendants argue that Governor Reeves' knowledge from a prior administration is not discoverable because he is sued in his official capacity, a similar argument was rightly rejected in *Arab Am. C.R. League v. Trump*, No. 17-10310, 2017 WL 2501060, at *3 (E.D. Mich. June 9, 2017). There, the court defined "possession, custody, or control" to encompass "information created, received or maintained in [Defendants'] personal capacities," even if it "predates" their taking office. *Id.* While Defendants attempt to distinguish the case as a preservation order in the context of a motion to stay, Opp. at 17, the procedural posture is irrelevant to the court's on-point interpretation of "possession, custody, or control."

[7] *See* Jimmie Gates, *State High Court Race Takes Political Tone,* The Clarion-Ledger (June 16, 2016), https://www.clarionledger.com/story/news/2016/06/16/state-high-court-race-takes-political-tone/85925878/.

10

obligations extend beyond "matters within the personal possession or knowledge of the individuals named in their official capacities." Pls.' Mem. at 14 (citing, among others, *Tyler v. Suffolk Cnty.*, 256 F.R.D. 34, 38 (D. Mass. 2009); *Murphy v. Piper*, No. 16-2623, 2018 WL 2538281, at *2 (D. Minn. June 4, 2018); *Andrews v. Rauner*, No. 18-CV-1101, 2019 WL 2514703, at *9 (C.D. Ill. June 18, 2019)). Rather, parties sued in the official capacity must provide all relevant information belonging to the entity, which undoubtedly includes any relevant knowledge possessed by the administration's current staff. Defendants do not address any of those cases and instead rely solely on the fact that no physical documents were left behind by the outgoing administration. *See* Opp. at 14–18. The fact that these authorities are not "controlling" is of no moment; if parties could refuse to provide discovery merely because there were no Circuit- or Supreme Court-level precedents directly addressing the specific discovery dispute, the civil discovery process would grind to a halt.

Defendants fail to distinguish the few cases they do discuss. *See* Opp. at 15–18. First, *Kentucky v. Graham* reiterates a basic principle that in an official-capacity suit, the "real party in interest is the entity" such that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." 473 U.S. 159, 166 (1985). While Defendants argue that *Graham* did not involve a discovery dispute, the Court's discussion of the first principles that apply in official-capacity actions were not limited merely to matters of damages or fee allocation. *See id.* at 166–68. As *Graham* makes clear, official defendants do not get to wipe clean their obligations and liabilities each time a different official takes office.

The remaining cases cited in Plaintiffs' opening brief confirm that there is no discovery firewall between current and prior administrations in official-capacity actions. *Hobson v. Buncich* is squarely on point, as the court held that the defendant "is being sued in his official

11

capacity as the Lake County Sheriff and, thus, is responsible for responding to discovery requests directed to the Sheriff's Department, including requests related to events that preceded his election." No. 2:10-CV-429, 2013 WL 208934, at *7 (N.D. Ind. Jan. 16, 2013) (declining to sanction Defendants' failure to comply with discovery obligations only because of Plaintiff's lack of diligence).[8] Similarly, *Thomas v. Cate* and *Biggs v. Finn* demonstrate that information "available" to the current administration encompasses material from prior administrations, contradicting Defendants' categorical objection that information from prior administrations is off-limits. *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1032 (E.D. Cal. 2010) ("Rule 33 imposes a duty on the responding party to secure all information *available* to it," including gubernatorial records dating back "nearly thirty years"); *Biggs v. Finn*, No. S-07-0470, 2008 WL 2119916, at *1, *3 (E.D. Cal. May 20, 2008) (finding "good cause" for petitioner to seek gubernatorial records dating back twenty years). Defendants' attempts to distinguish *Thomas* and *Biggs* rest on speculation as to how California maintains its records, Opp. at 17–18 (hypothesizing that California maintains readily accessible data), and semantics, *id.* at 17 (contending that *Biggs* did not "compel[] production" when the court found "good cause" for the petitioner to propound the interrogatories and ordered the state to respond).

Defendants do not even address their own refusal to make the required inquiry, or attempt to explain how a reasonable inquiry into the information possessed by the personnel of

---

[8] Defendants attempt to distinguish *Hobson* because "Plaintiffs do not contend that Defendants have withheld or refused to identify responsive documents of which they are aware." Opp. at 16. Defendants' argument is circular—Defendants cannot rest on a supposed lack of knowledge when they have refused to reasonably investigate as required. As explained above, Defendants, at minimum, must explain the steps they have taken to identify relevant information, if they seek to claim that no information available after a reasonable inquiry—an obligation they have failed to meet. *See Heller*, 303 F.R.D. at 485. Moreover, Defendants *have* located "one or more binders" containing responsive information that have not been produced or identified. ECF No. 74-7 at 2.

their own administrations might be burdensome.  Their objections should be overruled and Plaintiffs motion to compel granted, so that Defendants will be required to undertake the reasonable inquiry that the rules mandate.

## CONCLUSION

Plaintiffs' motion should be granted and Defendants' objections overruled.

Dated: November 21, 2022

/s/ *Joshua Tom*
AMERICAN CIVIL LIBERTIES UNION
 OF MISSISSIPPI FOUNDATION
Joshua Tom (Miss. Bar No. 105392)
Lakyn Collier (Miss. Bar No. 106224)
Vara Lyons*
101 South Congress Street
Jackson, MS 39201
(601) 354-3408
*JTom@aclu-ms.org*
*Lcollier@aclu-ms.org*
*Vlyons@aclu-ms.org*

SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood (Miss. Bar No. 106441)
Isaac Rethy*
425 Lexington Avenue
New York, NY 100017
(212) 455-2000
*jyoungwood@stblaw.com*
*irethy@stblaw.com*

* Admitted *pro hac vice*

*Attorneys for Plaintiffs*

ACLU FOUNDATION
Ari J. Savitzky*
Sophia Lin Lakin*
Ming Cheung*
Kelsey A. Miller*
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2500
*asavitzky@aclu.org*
*slakin@aclu.org*
*mcheung@aclu.org*
*kmiller1@aclu.org*

SOUTHERN POVERTY LAW CENTER
Jade Olivia Morgan (Miss. Bar No. 105760)
Leslie Faith Jones (Miss. Bar No. 106092)
111 East Capitol Street, Suite 280
Jackson, MS 39201
(601) 948-8882
*jade.morgan@splcenter.org*
*leslie.jones@splcenter.org*

Bradley E. Heard*
Ahmed Soussi
Sabrina Khan (*pro hac vice forthcoming*)
150 E Ponce de Leon Avenue, Suite 340
Decatur, GA 30030
(470) 521-6700
*bradley.heard@splcenter.org*
*ahmed.soussi@splcenter.org*
*sabrina.khan@splcenter.org*

13

**CERTIFICATE OF SERVICE**

  I, Joshua Tom, hereby certify that on November 21, 2022, I filed the forgoing Reply with the Clerk of the Court using the MEC system which sent notification of such filing to all counsel of record.

  This the 21st day of November, 2022.

/s:/ Joshua Tom<br>
Joshua Tom, MSB # 105392