# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

DYAMONE WHITE, ET AL.,
       Plaintiffs,
                          Civil Case No. 4:22-CV-62-SA-JMV

v.

STATE BOARD OF ELECTION COMMISSIONERS,
ET AL.,
       Defendants.

### EXPERT REPORT OF DR. CHRISTOPHER W. BONNEAU

### REBUTTAL TO RESPONSIVE REPORT OF DR. OREY

1. In this rebuttal report, I respond to claims made by Dr. Byron D'Andra Orey
   in his Responsive Report dated February 6, 2023 (corrected February 24,
   2023).

2. Dr. Orey takes issue with my conclusion that observed polarization is based
   on party and not race. Specifically, "Dr. Bonneau does not provide any
   empirical evidence that this claim applies specifically to Mississippi" (Orey
   Responsive Report, paragraph 4). This is not accurate. In paragraph 21 of my
   original report, I cite Plaintiffs' expert Justice Diaz who writes, "despite the
   fact that elections for the Supreme Court are non-partisan, such elections
   include many of the same features as partisan elections for political office."



Justice Diaz goes on to say (p. 28 of his report), "White candidates are generally understood to be associated with the Republican Party, and Black candidates with the Democratic Party."

3. Additional evidence of this can be seen from the Twitter account of 2020 Supreme Court candidate Latrice Westbrooks. In a post on August 18, 2020, Judge Westbrooks touts her endorsement from Representative Bennie Thompson (a Mississippi Democrat) by posting a photo of the two of them together as well as her letter of endorsement (Appendices 1-2). On August 20, she posted a photo of herself with then-candidate for President Joe Biden (Appendix 3). On October 27, Judge Westbrooks posted a flyer for a political rally involving herself, Bennie Thompson, and former-Congressman and Cabinet official (and then Senate candidate) Mike Espy (Appendix 4). Despite the lack of political party affiliation on the ballot, it was clear to those following the race that Judge Westbrooks was a member of the Democratic Party and her campaign was assisted by high-profile Mississippi Democrats.

4. This can have serious implications for any analysis using ecological inference, as Dr. Orey does. "For example, if white voters tend to be conservative and most potential minority candidates are very liberal, strong minority candidates may elect not to run because they are ideologically out of step. A court that inferred disparate treatment from white voters' lack of support for minority Democrats relative to white Democrats could be doubly in error: white voting patterns may reflect ideological as well as valence differences

between minority candidates and the white candidates whom the court treats as counterfactuals" (Elmendorf, Quinn, and Abrajano 2016, 655).

5. An example of this is in Table 2 of Professor Orey's original report. In the 2011 election for the Public Service Commission, Republican Lynn Posey defeated Democrat Addie Green. Dr. Orey states that Green was the preferred candidate of Black voters. However, in the 2007 election for the same office, Posey ran as the *Democratic* candidate and defeated the Republican nominee Charles Barbour, nephew of the governor at the time. Posey served for 20 years in the State Senate before winning his seat on the Public Service Commission, winning elections as a Democrat each time. While Orey did not analyze the 2007 election, if he had it is very likely he would have discovered that Posey was the Black-preferred candidate in that race. So, how did Posey go from being a Black-preferred candidate to a candidate not preferred by Blacks? The only difference between those two elections was his political party.

6. Thus, the 2007 and 2011 elections for the Public Service Commission seat demonstrate that *political party* is driving the choices of voters and not race. Of course, supreme court elections are nonpartisan in Mississippi, but as the Plaintiffs' expert Justice Diaz shows, as well as other contemporary accounts of these elections, including Judge Westbrooks' own Twitter account, political parties and party leaders endorse supreme court candidates and this is known to voters.

3

7. In Table 1 of his Responsive Report, Dr. Orey analyzes a Democratic gubernatorial primary election and concludes that even when one controls for party, Black voters and white voters prefer different candidates. It is important to note that in this case the Black preferred candidate *won* the nomination. Thus, the racially polarized voting Dr. Orey alleges was not determinative of the election. This is also true for the 2015 Public Service Commission primary, which Professor Orey did not analyze (though he did analyze the general election). In the primary, Cecil Brown (a white Democrat) defeated Bruce Burton (a Black Democrat). If Brown was the preferred candidate of Black voters in the primary (which is likely given the margin of his victory and the demographics of the district), this demonstrates that even holding the political party of the candidates' constant, Black voters do not necessarily favor Black candidates.

8. Moreover, "Racial polarization in the primary is only a signal of minority voters' preference for one candidate *relative to the other available choices*, not a signal of how much minority voters like the preferred candidate in any absolute sense" (Elmendorf, Quinn, and Abrajano 2016, 669).

9. The 2016 Supreme Court election included by Dr. Orey is also illustrative of the importance of political party. Despite the race being "nonpartisan," Justice Kitchens was endorsed by Democratic Representative Bennie Thompson, and even appeared on his "Sample Official Democratic Election Ballot" (Appendix 5). And this is not an aberration; Representative Thompson regularly includes his preferred candidates for Supreme Court

4

and Court of Appeals on his sample ballots that he distributes widely in his district. Indeed, "Making 'Bennie's sample ballot' is the key signal of validation Mississippi Democrat voters look for before heading to the polls" (Corder 2020).

10. In paragraph 9 of his Responsive Report, Dr. Orey argues that a previous expert witness report he authored is not relevant because "the conclusions drawn in that report are based on analyses where blacks voted against a black candidate who ran as a Republican." This is my point: political party, and not race, is the reason for the election results observed in Mississippi.

11. In paragraph 10 and 11 of his Responsive Report, Dr. Orey argues that the elections involving Justice King should be excluded because he was not challenged in his reelection bids. However, this is throwing out meaningful information. If Dr. Orey is correct that Black voters are not able to elect the candidates of their choice in District 1 (even though his Table 1 shows this is false since Justice Kitchens was the Black-preferred candidate and he won his reelection), then one would expect Justice King would be a target for defeat. Yet, not only does Justice King win his reelection bids, but also no one even challenges him. This is meaningful because the one African-American justice on the Supreme Court does not even garner any opposition. Why would a Supreme Court election go uncontested? Because no one thinks they have a good chance at defeating Justice King. If racially polarized voting was prohibiting Black voters from electing their preferred candidates, Justice

King would certainly face opposition from a candidate supported by white voters.

12. In paragraphs 14 and 16, Dr. Orey properly notes that in Paragraph 34 and 35 of my original report, I did not take into account ballot roll-off. However, the data I provide in Paragraph 50 does do this (using percentages rather than actual votes). The conclusion is the same: the Black-preferred candidate won in some races on the ballot, and not in others. That is, looking at how candidates fared in the same election on the same ballot, the Black-preferred candidates won some elections, and lost others.

13. There is also a more serious concern with the use of ecological inference techniques. In these analyses, "the analyst uses variation across precincts in candidates' vote shares and racial groups' population shares to estimate the proportion of each racial group that voted for each candidate. These estimates depend on a critical assumption: *the proportion of white and minority voters who support each candidate is about the same in each precinct, subject to random noise*" (Elmendorf, Quinn, and Abrajano 2016, 671). What this means is that "minorities in relatively affluent and racially integrated precincts are treated as politically indistinguishable from minorities in poor, racially homogenous precincts" (Elmendorf, Quinn, and Abrajano 2016, 671). This is an untenable assumption.

14. Orey claims that King's solution overcomes this limitation, but in doing so, it introduces an equally problematic issue. A hypothetical example by Cho (1998, 150-151) makes this clear. In trying to determine rates of voting for

President Clinton among minority and majority voters, Cho generates hypothetical data that show the true minority vote for Clinton is 62% and the true majority vote for Clinton is 43%. If this model were to be estimated using Ordinary Least Squares (OLS) regression, "OLS assumes that the parameters are constant regardless of precinct of residence; i.e., in precinct 1, minority support for Clinton is $m$ percent, and minority support in precincts 2-6 is the same $m$ percent." However, in this artificially generated data, Cho set minority support in precinct 1 to be 70% and in precinct 2 to be 50%. Thus, the assumption of constancy is clearly violated. This leads to biased parameters. King's ecological inference "solution" addresses this limitation of OLS, but in so doing assumes that "the distribution is unimodal [instead of constant] but the data it purports to describe are bimodal, one mode for the Republican districts and one mode for the Democratic districts."

15. Cho (1998, 162) conducts additional simulations and analyses and comes to a clear conclusion: "EI is appropriate if and only if the specification is correct.... The problem is that one has no idea whether the specification is correct or not, and the diagnostics have limited utility in that regard.... Without a formal method for determining how to extend the model, a researcher is left with a wide variety of 'reasonable models' and no way of assessing whether *any* of these models is appropriate."

16. All of the above supports the conclusion I make in Paragraph 51 of my original report remains: "the evidence strongly suggests that African-

American candidates are able to win elections in District 1 (for statewide offices as well as state supreme court) under its current boundaries."

I reserve the right to update this report based on additional facts, testimony, and/or materials.

Chris W. Bonneau

September 12, 2023

DATE

# References

Tam Cho, Wendy K. 1998. "Iff the Assumption Fits…: A Comment on the King Ecological Inference Solution." *Political Analysis* 7: 143-163.

Corder, Frank. 2020. "MS Supreme Court Candidate Lynchard Makes 'Bennie's Ballot' in Lead Up to Election." *Magnolia Tribune*. October 15, 2020. https://magnoliatribune.com/2020/10/15/ms-supreme-court-candidate-lynchard-makes-bennies-ballot-in-lead-up-to-election/

Elmendorf, Christopher S., Kevin M. Quinn, and Marisa A. Abrajano. 2016. "Racially Polarized Voting." *University of Chicago Law Review* 83: 587-692.

**Appendix 1**



**Appendix 2**



**Appendix 3**



**Appendix 4**



**Appendix 5**

SAMPLE OFFICIAL DEMOCRATIC ELECTION BALLOT
State of Mississippi
Warren County
2016 General Election
Tuesday, November 8, 2016





For United States President and Vice President
DEMOCRAT

Hillary Clinton for President
And Tim Kaine for
Vice President



For US House of Rep 02
2nd Congressional District
DEMOCRAT

Bennie G. Thompson



NONPARTISAN JUDICIAL ELECTION
For Supreme Court Justice
Supreme Court District 1 (Central)

Jim Kitchens



NONPARTISAN JUDICIAL ELECTION
For Court of Appeals 02

Latrice Westbrooks

FOR A RIDE TO THE POLL:
1-866-4BENNIE (423-6643)

PAID FOR BY FRIENDS OF BENNIE THOMPSON

Case: 75CI1:17-cv-00086     Document #: 1     Filed: 08/15/2017     Page 8 of 9