**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

|  |  |
|---|---|
| DYAMONE WHITE; DERRICK SIMMONS; TY PINKINS; CONSTANCE OLIVIA SLAUGHTER HARVEY-BURWELL, *Plaintiffs*, vs. STATE BOARD OF ELECTION COMMISSIONERS; TATE REEVES *in his official capacity as Governor of Mississippi*; LYNN FITCH *in her official capacity as Attorney General of Mississippi*; MICHAEL WATSON *in his official capacity as Secretary of State of Mississippi*. *Defendants*. | **4:22-cv-00062-SA-JMV** |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION
FOR PAYMENT OF FEES AND COSTS**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ............................................................................................................ 3

ARGUMENT .................................................................................................................. 7

I.      THE PROPOSED ATTORNEY'S FEES IN CONNECTION WITH DEPOSITION
        PREPARATION ARE NON-COMPENSABLE AND EXCESSIVE. ........................... 9

        A.      Defendants cannot recover attorney's fees and expenses from Plaintiffs............... 9
        B.      Even if some attorney's fees are recoverable (and they are not), the vast
                majority of Defendants' requested attorney's fees and costs are not caused
                by Plaintiffs' rebuttal reports and should not be reimbursed. ............................... 12
        C.      Alternatively, Defendants' requested attorney's fees and costs are
                excessive and warrant significant reductions under the lodestar method. ........... 14

II.     THE PROPOSED EXPERT FEES IN CONNECTION WITH DEFENDANTS'
        SURREBUTTALS ARE EXCESSIVE. ......................................................................... 18

        A.      Dr. Swanson's (and to a lesser extent, Dr. Bonneau's) hours are
                unreasonable. ........................................................................................................ 19

                1.      The time Dr. Swanson spent learning statistics, due to his admitted
                        lack of expertise, is unreasonable and should not be compensated. ......... 20
                2.      Defendants are not entitled to reimbursement for unnecessary and
                        duplicative work between Dr. Swanson and Mr. Bryan. ......................... 21
                3.      Dr. Swanson's entries related to CES data are impermissibly
                        vague. ..................................................................................................... 24
                4.      Dr. Swanson's and Dr. Bonneau's deposition-related hours are not
                        reimbursable under this Court's order pursuant to Rule 37 or
                        Plaintiffs' unopposed stipulation and must be reduced under Rule
                        26(b)(4)(E)(i). ....................................................................................... 26

        B.      Mr. Bryan is not entitled to compensation for "reasonable expert fees"
                because he is not an expert in this case. ................................................................ 29
        C.      Dr. Swanson's and Mr. Bryan's hourly rates are unreasonable given their
                lack of expertise. .................................................................................................. 31

                1.      Mr. Bryan, as a non-expert whose contribution is not explained in
                        Dr. Swanson's sur-rebuttal report, should not receive
                        compensation at the rate of an expert witness. ....................................... 31

i

2.    Dr. Swanson, as an admitted non-expert on ecological inference, should not receive compensation as an expert witness for the work he performed on ecological inference. ....................................................... 33

**CONCLUSION** ............................................................................................................... **35**

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Auto. Rentals, Inc. v. Keith Huber, Inc.*,
   2012 WL 12854841 (S.D. Miss. Jan. 10, 2012) ........................................................ 30

*Blanchard v. Bergeron*,
   489 U.S. 87 (1989) ..................................................................................................... 32

*Case v. Unified Sch. Dist. No. 233*,
   157 F.3d 1243 (10th Cir. 1998) ................................................................................. 19

*Caster v. Merrill*,
   2022 WL 264819 (N.S. Ala. Jan. 24, 2020) .............................................................. 30

*CEATS, Inc. v. TicketNetwork, Inc.*,
   71 F.4th 314 (5th Cir. 2023) ...................................................................................... 15

*CEATS, Inc. v. TicketNetwork, Inc.*,
   No. 2:15-CV-01470, 2019 WL 13077321 (E.D. Tex. Mar. 7, 2019) ...................... 13, 26, 27

*Curtis v. Bill Hanna Ford*,
   822 F.2d 549 (5th Cir. 1987) ..................................................................................... 21

*Duke v. Performance Food Grp., Inc.*,
   No. 1:11-CV-220-MPM-DAS, 2014 WL 370442 (N.D. Miss. Feb. 3, 2014) ...................... 7, 18

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ............................................................................................... 18, 24

*Johnson v. Georgia Highway Exp., Inc.*,
   488 F.2d 714 (5th Cir. 1974) ............................................................................. 15, 17, 32

*Jolie Design & Décor, Inc. v. Gogh*,
   No. 15-CV-0740, 2016 WL 4708210 (E.D. La. Aug. 11, 2016) ............................. 24

*Jolie Design & Décor, Inc. v. Gogh*,
   No. 15-CV-0740, 2016 WL 4718186 (E.D. La. Sept. 8, 2016) ............................... 24

*Kahlig Enterprises, Inc. v. Affiliated FM Ins. Co.*,
   No. 20-CV-01091, 2023 WL 2638281 (W.D. Tex. Mar. 24, 2023) ...................... 9, 28

*Lavell v. Camden Cnty. Coll.*,
   No. 21-CV-6832, 2023 WL 4074077 (D.N.J. June 20, 2023) ................................. 11

*League of United Latin Am. Citizens v. Roscoe Indep. Sch. Dist.*,
    119 F.3d 1228 (5th Cir. 1997) ...................................................................... 24, 26

*Louisiana Power & Light Co. v. Kellstrom*,
    50 F.3d 319 (5th Cir. 1995) ................................................................................. 26

*Magee v. The Paul Revere Life Ins. Co.*,
    172 F.R.D. 627 (E.D.N.Y. 1997) ........................................................................ 18

*Ovella v. B & C Const. & Equip., LLC*,
    No. 1:10-CV-285, 2012 WL 3267530 (S.D. Miss. Aug. 9, 2012) ........................... 7

*Parkcrest Builders, LLC v. Hous. Auth. of New Orleans*,
    336 F.R.D. 527 (E.D. La. 2020) ........................................................... 18, 30, 35

*Plentyhawk v. Sheikh*,
    No. 14-CV-44, 2016 WL 3086404 (D. Mont. May 31, 2016) ............................... 11

*Reyes v. Receivables Performance Mgmt, LLC*,
    No. 3:19-CV-01207, 2021 WL 930000 (D. Conn. Mar. 11, 2021) ........................ 11

*Riley v. City of Jackson, Miss.*,
    99 F.3d 757 (5th Cir. 1996) ................................................................................... 7

*Robinson v. Ardoin*,
    605 F. Supp. 3d 759 (M.D. La. 2022) .............................................................. 30, 32

*Rogers v. Penland*,
    232 F.R.D. 581 (E.D. Tex, 2005) ....................................................................... 18

*Rouse v. Target Corp.*,
    181 F. Supp. 3d 379 (S.D. Tex. 2016) ............................................................. 18, 21

*Saldivar v. Austin Indep. Sch. Dist.*,
    2016 WL 1064654 (W.D. Tex. Mar. 15, 2016) ..................................................... 32

*Sanders v. Nunley*,
    No. 1:95-CV-237, 1999 WL 33537095 (N.D. Miss. Jan. 17, 1999) ...................... 25

*Script Sec. Sols., LLC v. Amazon.com, Inc.*,
    No. 2:15-CV-1030-WCB, 2016 WL 6649721 (E.D. Tex. Nov. 10, 2016) .............. 26

*Singleton v. Merrill*,
    582 F. Supp. 3d 924 (N.D. Ala. 2022) ................................................................. 30

*Starlight Int'l Inc. v. Herlihy*,
    190 F.R.D. 587 (D. Kan. 1999) ........................................................................... 18

iv

*Thomas v. Reeves*,
No. 21-60171, 2021 WL 3869713 (5th Cir. Apr. 23, 2021) .................................................... 19

*Thomas v. Reeves*,
No. 3:18-CV-441 (CWR) (FKB), 2021 WL 517038 (S.D. Miss. Feb. 11, 2021).................... 19

*Vogler v. Blackmore*,
352 F.3d 150 (5th Cir. 2003).................................................................................................. 33

*Walker v. City of Pocatello*,
Case No. 4:15-cv-00498, 2020 WL 3898642 (D. Idaho July 11, 2020) .................................. 11

*White v. State Bd. of Election Commissioners*,
No. 4:22-CV-62-SA-JMV, 2023 WL 2957819 (N.D. Miss. Apr. 14, 2023) ............................ 8

*Wiemer v. Rubino*,
No. 1:16-CV-99-LG-RHW, 2019 WL 2461817 (S.D. Miss. June 12, 2019) ......................... 15

**Rules**

Fed. R. Civ. P. 1 ....................................................................................................................... 14

Fed. R. Civ. P. 26 ............................................................................................................... 8, 9, 30

Fed. R. Civ. P. 37 ............................................................................................................... 8, 9, 14

**Other Authorities**

S.B. No. 2962, 2023 Reg. Sess. § 2 (2023)................................................................................. 1

## PRELIMINARY STATEMENT

Consistent with this Court's April 14, 2023 order, Plaintiffs stipulated to pay Defendants "reasonable expert fees and costs actually incurred in preparing sur-rebuttal reports." ECF No. 140 at 12–13; ECF No. 143 at 2. Separately, the Federal Rule of Civil Procedure 26(b)(4)(E) requires Plaintiffs to pay Defendants' experts "a reasonable fee for time spent" responding to discovery. But Defendants now seek over $120,000 in fees and costs that far exceed the bounds of reasonableness, the scope of this Court's order, and the terms of Plaintiffs' stipulation.

While Plaintiffs do not object to paying reasonable expert fees incurred in connection with the surrebuttal reports, Defendants' fee demand is manifestly unjust. The demand includes significant amounts of non-compensable expenses, such as over $29,621.40 in attorneys' fees, which are not required by this Court's Rule 37 order, Rule 26, or the stipulation, as well as excessive and unreasonable expert fees. Defendants' expert, Dr. David Swanson, accumulated over 200 hours to prepare a 17-page sur-rebuttal report and attend a local deposition, billing thousands of dollars to teach himself statistics, generating duplicative work between himself and an associate whose role was not disclosed in the sur-rebuttal report, and even charging for working on his report *after* the final version had been served on Plaintiffs on September 15, 2023. This Court should reduce Defendants' astronomical fee request—which comes close to half of the State's appropriated budget for this litigation through the trial date—as unreasonable compensation only two sur-rebuttal reports. S.B. No. 2962, 2023 Reg. Sess. § 2 (2023) (appropriating $300,000 for *White v. SBEC*).[1]

The untenable nature of Defendants' fee request has become even more apparent since their initial motion. In response to Plaintiffs' motion to disqualify Dr. Swanson, Defendants have

---

[1] Available at https://billstatus.ls.state.ms.us/documents/2023/pdf/SB/2900-2999/SB2962SG.pdf.

acknowledged Dr. Swanson's lack of qualifications to opine on ecological inference (or "EI"), a key methodology utilized by Plaintiffs' expert, Dr. Traci Burch. In fact, Defendants have represented to the Court that Dr. Swanson is no longer being offered as an expert on that topic. *See* ECF No. 168; ECF No. 169. As detailed in Plaintiffs' *Daubert* motion, Dr. Swanson, along with the firm he purports to have relied on for much of his analysis, Bryan GeoDynamics ("BGD"), is admittedly unqualified to opine on Dr. Burch's EI analysis. *See* ECF No. 164. Defendants do not dispute that Dr. Swanson lacks such expertise, yet Dr. Swanson and BGD now seek compensation (that is often duplicative) for 182.70 hours of work, for a total of $73,080 at the rate of $400 an hour, to evaluate Dr. Burch's analysis. It is not reasonable for Plaintiffs to pay for Dr. Swanson to educate himself on topics in which he was not a proper expert, nor is the rate of $400 per hour or the total amount quoted by Dr. Swanson and his associate, Mr. Bryan, close to reasonable—particularly given Dr. Swanson's conceded lack of EI expertise, and Mr. Bryan's record of being discredited by multiple courts. Nor is it reasonable for Plaintiffs to pay for Mr. Bryan's work—and at the rate of an experienced expert—when Mr. Bryan has not been designated as an expert in this case and his work is not even mentioned in Dr. Swanson's sur-rebuttal report. This Court should accordingly reduce the fee amount to one that is both reasonable and comports with the scope of this Court's prior order and Plaintiffs' unopposed stipulation. As detailed below, Plaintiffs submit that Defendants should receive no more than $34,435.87, once non-compensable, duplicative, and other excessive costs have been deducted.

And while it is irrelevant to this motion, Defendants are wrong to contend that Plaintiffs exceeded the permissible scope of Dr. Swanson's and Dr. Bonneau's depositions by asking questions about their initial reports in addition to their sur-rebuttals. In a telephonic conference with the parties on April 20, 2023, the Court questioned both parties about their intention to take

depositions. Plaintiffs unequivocally stated that they intended to depose Defendants' experts, and the Court extended the discovery deadline to accommodate those depositions after the sur-rebuttal reports were served. Defendants' suggestion that Plaintiffs were required to seek to depose their experts piecemeal rather than waiting until their surrebuttal reports were served is contrary to the Federal Rules and the parties' understanding. The Court need not and should not entertain it.

## **BACKGROUND**

On February 6, 2023, Plaintiffs served rebuttal reports from Dr. Traci Burch and Dr. Byron D'Andra Orey, responding to the reports of Dr. David Swanson and Dr. Christopher Bonneau, respectively. ECF No. 140 at 2. At the time, the discovery deadline was April 19, 2023, and Plaintiffs had yet to depose either Dr. Swanson or Dr. Bonneau. *See id.* at 1.

On March 10, 2023, Defendants moved to strike Plaintiffs' rebuttal reports as improper and, in the alternative, for an extension of the discovery deadline to allow Defendants' experts to submit sur-rebuttal reports. ECF No. 119 at 3. Defendants did not seek attorney's fees and costs as a remedy. *See* ECF No. 135 at 12 ("Defendants submit that Plaintiffs should likewise be compelled to pay Defendants' reasonable expert witness expenses in responding to the challenged rebuttal disclosures."). Plaintiffs opposed the motion but indicated that, should the Court find the rebuttal reports to be improper, then the remedy should be to allow Defendants to submit sur-rebuttal reports rather than strike Plaintiffs' experts' rebuttal reports. ECF No. 130 at 4. Given the possibility that sur-rebuttal reports would be served, Plaintiffs did not notice depositions of Dr. Swanson or Dr. Bonneau during the pendency of the motion to strike.

On April 14, 2023, before the April 19 discovery deadline, the Court ruled that Plaintiffs' rebuttal reports were improper but denied Defendants' motion to strike, holding that the prejudice to Defendants would be cured by a "trial continuance," an "accompanying extension of the discovery and dispositive/Daubert motions' deadlines," and Plaintiffs' payment of "the reasonable

3

expert fees and costs actually incurred by Defendants in having their experts respond to the untimely rebuttal opinions." ECF No. 140 at 12–13. The Court concluded that, if Plaintiffs agreed to those conditions, then the rebuttal reports would not be stricken. *Id.* at 13.

On April 18, 2023, Plaintiffs' counsel informed the Court that "Plaintiffs wish to satisfy the conditions set forth in the Court's order." ECF No. 166-1. In light of the ruling that the expert discovery deadlines would be extended and that Dr. Swanson and Dr. Bonneau would serve additional reports, Plaintiffs did not notice a deposition of either defense expert prior to the initial, April 19 discovery deadline. However, Plaintiffs informed the Court during an April 20, 2023 telephonic conference regarding the timeline for the submission of surrebuttal reports and the extension of discovery, ECF No. 142, that they did intend to depose both defense experts.

Following the conference, at the direction of the Court, Plaintiffs filed an unopposed motion for a continuance on the terms set forth in the Court's order, seeking the extension of "deadlines in this case, including the close of discovery." ECF No. 143 at ¶ 1. Defendants did not oppose the extension of "discovery relevant to expert witness rebuttal/sur-rebuttal issues," but conditioned that "discovery will not be reopened generally." *Id.* Plaintiffs' motion also stipulated to the payment of "reasonable expert fees and costs actually incurred in preparing such sur-rebuttal reports." *Id.* at 2. It did not provide for the payment of attorney's fees incurred in connection with the sur-rebuttal reports or discovery related thereto; nor was the inclusion of attorney's fees raised by Defendants at any point or discussed with the Court during the telephonic conference with the parties on April 20, 2023.

After considering the parties' submissions, this Court ordered a new discovery schedule, with Defendants' sur-rebuttals due by September 15, 2023, with "discovery related to those experts' sur-rebuttals" due by September 29, 2023, to account for Plaintiffs' intended depositions.

ECF No. 146 at 1. The Court's ruling did not state that Plaintiffs' depositions of Dr. Swanson and Dr. Bonneau would be limited in scope or that the experts' prior reports would be deemed unrelated to their sur-rebuttals. In anticipation of Defendants' production of the sur-rebuttal reports, Plaintiffs' counsel contacted defense counsel on September 15, 2023, seeking deposition dates for Dr. Swanson and Dr. Bonneau and proposing virtual depositions, which would have obviated the need for travel costs. *See* Ex. B (Email dated September 15, 2023). Defendants opposed a virtual deposition, unless Plaintiffs agreed to pay for defense counsel's travel to each witness's location. *See* Ex. C. Plaintiffs then deposed both witnesses in person, noting Plaintiffs' understanding that "the requirement under the rules to pay the expert being deposed a reasonable fee for their time in connection with the deposition . . . does not extend to travel costs that may be associated with the deposition of an out-of-state expert." Ex. B (Email dated September 19, 2023). At no point in the exchange of emails regarding these depositions did Defendants' counsel challenge that understanding, take the position that depositions must be limited only to topics covered in the sur-rebuttal reports, or that Plaintiffs should refrain from deposing Defendants' experts on their initial reports, or that Plaintiffs would incur every expense incurred by Defendants (and their experts and assistants) in connection with the depositions on the initial and sur-rebuttal reports, including attorneys' fees and travel costs.

Plaintiffs deposed Dr. Bonneau on September 29, 2023, and Dr. Swanson on October 5, 2023. ECF No. 160; ECF No. 161. At both depositions, defense counsel, at various points, objected to Plaintiffs' questions about Dr. Swanson's and Dr. Bonneau's initial reports, which were served January 6, 2023, on the theory that this Court's scheduling order barred questions relating to work done prior to their sur-rebuttal reports. ECF No. 167 at 4. Defense counsel did not direct the witnesses not to answer, and the witnesses answered the questions asked.

On November 21, 2023, Defendants filed a motion seeking both attorney's and experts' fees and costs, in the total amount of $120,449.27. ECF No. 167 at 1. First, the sum includes $29,621.40 in attorney's fees and expenses, which Defendants never requested and the Court never ordered. *Id.* at 11. Defense counsel's billing includes over $10,000 in travel-related fees and costs that would have been avoided by Plaintiffs' offer to take a remote deposition. *Id.* Additionally, the vast majority of the attorney's fees and costs are not caused by Plaintiffs' rebuttal disclosures or Defendants' sur-rebuttals, because Plaintiffs planned to depose Dr. Swanson and Dr. Bonneau about their initial reports regardless.

On the expert side of the ledger, Dr. Swanson billed 182.70 hours to produce a 17-page sur-rebuttal report, and an additional 20 hours related to his local deposition, all at a rate of $400 an hour. ECF No. 167 at 11. The 182-plus hours include 16 hours of installing basic statistics software and teaching himself logistic regression and ecological inference—two methods utilized by Dr. Burch. *See* Ex. A at 1. Dr. Swanson, along with another individual retained by Defendants, Mr. Thomas Bryan from BGD, collectively billed over 73 hours on unspecified "research" and "analysis" of the Cooperative Election Study ("CES"), which is a well-known and well-documented, academic survey relied on by Dr. Burch. ECF No. Ex. A at 1–2; ECF No. 164-6 at 4–5 & n.14 & n.15. Dr. Swanson and Mr. Bryan then accumulated 52 hours on the drafting and finalizing of Dr. Swanson's 17-page sur-rebuttal report—even though Mr. Bryan is not cited or mentioned in any way in that report, let alone disclosed as an expert or author of the sur-rebuttal. Ex. A at 2–3, 7. Dr. Swanson also invoiced $1,000.00 to "finalize" his report several days after it had already been served on Plaintiffs. *Id.* at 3 (entries dated September 18 and 19, 2023). Dr. Swanson then allocated 6 hours towards unspecified "review for deposition," without distinguishing the time he spent preparing on his own from the time spent conferring with defense

6

counsel, which is not reimbursable. *Id.* at 3. Following his deposition, Dr. Swanson billed 8.23 hours, or $3,292.00, to review his transcript for typographical errors, which took longer than the deposition itself. *Id.* Overall, 126.98 of Dr. Swanson's 203.93 hours appear to be duplicative, excessive, or otherwise non-compensable.

Dr. Bonneau billed a total of 33.08 hours to prepare his sur-rebuttal report and complete his deposition, which required travel to Jackson, Mississippi, including 1.5 hours to review his 168-page deposition transcript. ECF No. 167 at 11. Plaintiffs do not contest Dr. Bonneau's billing, except for 3 hours of his deposition preparation time, which, like Dr. Swanson's, lacks sufficient detail and fails to distinguish between compensable and non-compensable preparation time.

## ARGUMENT

Defendants, as the party seeking fees, "bears the burden of proving that the number of hours and the hourly rate for which compensation is requested is reasonable." *Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996). This Court plays a critical role in ensuring that the fee request is reasonable: "Unless the courts patrol the battlefield to ensure fairness, the circumstances invite extortionate fee setting." *Duke v. Performance Food Grp., Inc.*, No. 1:11-CV-220-MPM-DAS, 2014 WL 370442, at *6 (N.D. Miss. Feb. 3, 2014).

The reasonableness requirement comes from the Federal Rules. Under Rule 26(b)(4)(E)(i), the "party seeking discovery from an opposing side's expert must pay the expert a reasonable fee for time spent in responding to discovery unless manifest injustice would result." *Ovella v. B & C Const. & Equip., LLC*, No. 1:10-CV-285, 2012 WL 3267530, at *1 (S.D. Miss. Aug. 9, 2012). "The purpose of the rule is to avoid the unfairness of requiring one party to provide expensive discovery for another party's benefit without reimbursement"—the party seeking discovery does not have to pay for activities that do not provide a material benefit. *Id.*

7

Similarly, under Rule 37(c)(1)(A), the Court, in response to a party's failure to disclose information required by Rule 26(a), "may order payment of the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(c)(1)(A). Applying Rule 37, this Court has already held that the prejudice caused to Defendants by Plaintiffs' improper rebuttal reports will be cured by Plaintiffs' agreement to pay "the reasonable expert fees and costs actually incurred by Defendants in having their experts respond to the untimely rebuttal opinions." *White v. State Bd. of Election Commissioners*, No. 4:22-CV-62-SA-JMV, 2023 WL 2957819, at *6 & n.3 (N.D. Miss. Apr. 14, 2023). This Court did not order the payment of attorney's fees.

Here, Plaintiffs acknowledge that certain of the costs and fees set forth in Defendants' motion are consistent with the Rule 26 requirement that a party must pay an opposing expert "a reasonable fee for time spent in responding to discovery," such as the time that the experts spent attending their depositions. Fed. R. Civ. P. 26(b)(4)(E)(i). Plaintiffs also stipulated to pay "reasonable expert fees and costs actually incurred in preparing sur-rebuttal reports," in accordance with the Court's Rule 37 order. ECF No. 143 at 2.

But Plaintiffs did not agree to, and the Federal Rules do not provide for, the payment of several types of expenses that Defendants seek to recover here, including: attorney's fees and costs, unnecessary expenses related to an unqualified expert's self-education, duplicative work performed by multiple timekeepers, expert fees for administrative or computational assistance, and other unreasonable expenses—including additional work on Dr. Swanson's report *after* it had already been served on Plaintiffs. Plaintiffs ask the Court to fix fees to a reasonable amount and reject the six-figure total proposed by Defendants.

I.  **THE PROPOSED ATTORNEY'S FEES IN CONNECTION WITH DEPOSITION PREPARATION ARE NON-COMPENSABLE AND EXCESSIVE.**

Defendants seek $29,621.40 in attorney's fees and costs, primarily for their counsel's work in scheduling, preparing for, and attending Dr. Swanson's and Dr. Bonneau's depositions. There is no basis for Defendants to request reimbursement of attorney's fees and expenses, whether under Rule 26(b)(4)(E), this Court's Rule 37 order, or Plaintiffs' stipulation.

The Court should reject the imposition of $29,621.40 in its entirety, but even if somehow Plaintiffs could be responsible for attorney's fees related to Defendants' sur-rebuttal reports, such fees would be a fraction of the demanded fee. The vast majority of the requested attorney's fees and costs would have occurred as a result of Dr. Swanson's and Dr. Bonneau's depositions—and are not caused by Plaintiffs' rebuttal reports or Defendants' sur-rebuttal reports. *See* Fed. R. Civ. P. 37 (requiring that fees be "caused by the failure" of a party to comply with Rule 26(a)). Should the Court find it necessary to reach this question, Defendants have also failed to show that their lodestar is reasonable.

A.  **Defendants cannot recover attorney's fees and expenses from Plaintiffs.**

Defendants seek $29,621.40 from Plaintiffs in attorney's fees and expenses, but attorney's fees are not authorized under Rule 26(b)(4)(E)(i) and never contemplated by this Court's Rule 37 order or Plaintiffs' stipulation.

By its plain text, Rule 26(b)(4)(E)(i) requires the party seeking discovery to "*pay the expert a reasonable fee for time spent in responding to discovery.*" Fed. R. Civ. P. 26(b)(4)(E)(i) (emphasis added). Nowhere does it reference payments to the attorney. Moreover, as courts in this jurisdiction have recognized, Rule 26(b)(4)(E)(i) is aimed at the payment for expert services that *benefit* the party seeking discovery—the time that an opposing expert spends conferring with their own counsel is not compensable. *Kahlig Enterprises, Inc. v. Affiliated FM Ins. Co.*, No. 20-

9

CV-01091, 2023 WL 2638281, at *2–3 (W.D. Tex. Mar. 24, 2023) ("Time spent by Defendants' experts with Defendants' counsel is more akin to trial preparation than to discovery within the meaning of Rule 26(b)(4)(E)(i) . . . . It would therefore be unjust and unreasonable to require Plaintiff to reimburse Defendants for the time Defendants' experts spent with Defendants' counsel in preparing for their depositions."). The time that defense counsel spent reviewing Defendants' experts' work, preparing their witnesses for deposition, and attending said depositions is not for Plaintiffs' benefit and is therefore non-compensable under Rule 26(b)(4)(E)(i).

It is also unreasonable to order Plaintiffs to pay for travel costs that were wholly unnecessary. Plaintiffs offered to conduct the depositions remotely, but defense counsel instead insisted on attending in-person. *See* Ex. B; Ex. C. Defendants also appeared to recognize that they are not entitled to reimbursement of all deposition preparation and travel costs—defense counsel attempted to negotiate reimbursement of expenses in exchange for agreeing to Plaintiffs' request to conduct the deposition remotely. *See* Ex. C.

Defendants now belatedly contend that attorney's fees (along with deposition preparation and travel costs) *could have been ordered* pursuant to Rule 37 in connection with the surrebuttal reports, ECF No. 167 at 9–10, but even if that is so, it is beside the point. Defendants never sought attorneys' fees in their motion to strike and their reply brief. *See* ECF No. 119 at 3 ("In the event the motion is denied in whole or in part, Defendants request a reasonable extension of time for their experts to prepare written surrebuttals…."); ECF No. 135 at 12 (requesting "reasonable expert witness expenses in responding to the challenged rebuttal disclosures"). And this Court ruled, pursuant to Rule 37, that Plaintiffs would sufficiently remedy any prejudice to Defendants from the rebuttal reports by adjourning case deadlines and paying for "*reasonable expert fees and costs*

*actually incurred by Defendants in having their experts respond to the untimely rebuttal opinions*." ECF No. 140 at 12–13 & n.3 (emphasis added).

As Defendants' own cases show, attorney's fees are not awarded as a matter of course and are frequently omitted from Rule 37 orders. *See Lavell v. Camden Cnty. Coll.*, No. 21-CV-6832, 2023 WL 4074077, at *8 (D.N.J. June 20, 2023) ("[T]he Court orders Plaintiff to pay Defendant's expert fee expenses associated with taking another deposition of Dr. Thompson."); *Plentyhawk v. Sheikh*, No. 14-CV-44, 2016 WL 3086404, at *5 (D. Mont. May 31, 2016) ("[T]he Court elects to impose the lesser sanction of requiring Plentyhawk to pay the fees incurred by the Doctors' experts if they are required to update their own reports."). Defendants' cases also show that, when courts find that an award of attorney's fees to be necessary, they say so explicitly, in circumstances far more extreme than the facts of this case. *See Reyes v. Receivables Performance Mgmt, LLC*, No. 3:19-CV-01207, 2021 WL 930000, at *3–4 (D. Conn. Mar. 11, 2021) (granting attorney's fees where plaintiff, contrary to "well-founded understanding that the case would not involve expert witnesses," disclosed expert witness three weeks before close of discovery); *Walker v. City of Pocatello*, Case No. 4:15-cv-00498, 2020 WL 3898642, at *3, 4 (D. Idaho July 11, 2020) (granting attorney's fees where plaintiff provided supplemental report "two weeks before trial").[2] Here, attorneys' fees were neither sought by Defendants nor ordered by the Court pursuant to Rule 37.

Defendants' request for $29,621.40 should be stricken in its entirety as beyond the scope of this Court's Rule 37 order, Plaintiffs' stipulation, and Rule 26.

---

[2] Plaintiffs disclosed their rebuttal reports more than two months before the close of discovery and approximately 10 months before trial.

**B.** **Even if some attorney's fees are recoverable (and they are not), the vast majority of Defendants' requested attorney's fees and costs are not caused by Plaintiffs' rebuttal reports and should not be reimbursed.**

Even assuming that this Court did not already issue its Rule 37 order and Defendants' request for attorney's fees is proper (which it is not), the vast majority of the $29,621.40 that Defendants seek cannot be awarded under Rule 37(c)(1)A) and was not agreed to in Plaintiffs' stipulation. Under Rule 37(c)(1)(A), fees are only compensable if they are "caused by the failure" of a party to disclose information as required by Rule 26(a). Defendants' fee request primarily stems from counsel's travel time, transportation costs, deposition preparation, and other expenses related to the depositions of Dr. Swanson and Dr. Bonneau. *See* ECF No. 166-7 at 3–5. Those expenses would have been incurred regardless of Defendants' sur-rebuttals, because Plaintiffs would have deposed Defendants' experts regarding their initial reports regardless. Accordingly, shifting those unrelated costs to Plaintiffs is unfair and unreasonable, particularly since Plaintiffs' stipulation provided for the payment of only expert fees and was not objected to by Defendants.

Defense counsel's invoice reveals only five entries, totaling 3.2 hours (or $1,120 at $350 per hour), that are exclusively related to Defendants' sur-rebuttal reports. ECF No. 166-7 at 3–4. Those are "Receipt and review of Swanson's report," "Receipt and Review of Bonneau report," "Email to Dr. Swanson regarding T-test," "Telephone conference with Professor Swanson regarding T-test," and "Receipt and review of email from Dr. Swanson regarding T-test." *Id.*

The rest of Defendants' entries are not compensable under either Rule 37 or Plaintiffs' stipulation. The first category consists of fixed costs, which would have been the same regardless of Defendants' sur-rebuttal reports. These include defense counsel's (unnecessary) travel time to Washington state after insisting on an in-person deposition for Dr. Swanson, associated hotel and transportation costs, and correspondence about deposition logistics.

The remaining costs consist of entries for which defense counsel failed to provide sufficient information to distinguish between time spent on the experts' sur-rebuttals as opposed to other aspects of the case. Entries such as "Phone meeting with Professor Bonneau" and "Meeting with D. Swanson" do not establish that those costs were necessitated by Plaintiffs' rebuttal disclosures. ECF No. 166-7 at 3. Some expenses, such as the cost of deposition transcripts and the time that counsel spent reviewing them, could have implicated both the experts' initial reports and their sur-rebuttal reports, but the sur-rebuttals' contribution to the duration of those activities is likely marginal,[3] and in any event, Defendants' billing practices failed to distinguish between compensable and non-compensable time, which precludes recovery. *See CEATS, Inc. v. TicketNetwork, Inc.*, No. 2:15-CV-01470, 2019 WL 13077321, at *2 (E.D. Tex. Mar. 7, 2019) (declining fee award based on failure to "segregate" compensable and non-compensable entries).

Perhaps recognizing that their attorney's fees are largely unrelated to the sur-rebuttals, Defendants argue that Plaintiffs were somehow precluded from asking questions about Dr. Swanson's and Dr. Bonneau's initial reports at their depositions. *See* ECF No. 167 at 4 ("Plaintiffs' counsel insisted on asking numerous questions—over defense counsel's objections—during the depositions of Dr. Bonneau and Dr. Swanson that exceeded the scope of their respective surrebuttal reports."). Their position has no basis in the record or under law.

For one, questioning Dr. Swanson and Dr. Bonneau about their work in this case was a proper use of the depositions consistent with the Court's scheduling order and does not constitute a reopening of discovery generally. *See* ECF No. 143 at ¶ 1 ("any extension of the discovery deadline will only permit discovery *relevant to expert witness rebuttal/surrebuttal issues* made the

---

[3] For instance, Dr. Swanson's initial report, not including his CV and various appended tables and charts, totaled 86 pages—his sur-rebuttal is merely 17 pages. Dr. Bonneau's initial report was 16 pages, and his sur-rebuttal was 8 pages.

subject of the Court's April 14 Order") (emphasis added).  There is no question that the witnesses' prior work is "related" to their sur-rebuttals—their initial reports were the basis of Plaintiffs' rebuttals and also served as the foundation of the witnesses' sur-rebuttals.  *See, e.g.*, ECF No. 166-2 at ¶¶ 8–9 (Dr. Swanson's sur-rebuttal referencing and restating findings from initial report); ECF No. 166-3 at ¶ 2 (Dr. Bonneau referencing initial plaintiff and defense reports).  Plaintiffs would have deposed Defendants' experts regardless of the events leading to the submission of their sur-rebuttal reports.  However, it would have been inefficient and needlessly costly to depose both of Defendants' experts twice, and Plaintiffs should not be penalized for conducting discovery in a manner that complies with the Federal Rules.  *See* Fed. R. Civ. P. 1 (instructing that the Federal Rules "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action").

   In short, even if Defendants were somehow entitled to attorney's fees (which they are not), only 3.2 hours of defense counsel's billing entries are related to the production of Defendants' sur-rebuttal reports.  Defendants have failed to show that the remaining fees and costs were "caused" by the rebuttal disclosures that this Court determined to be improper.  Fed. R. Civ. P. 37(c)(1)(A).  Therefore, Defendants' requested attorney's fees and costs should be eliminated entirely for the reasons discussed in Section I.A, or, at most, be limited to $1,120.00.

### C.     Alternatively, Defendants' requested attorney's fees and costs are excessive and warrant significant reductions under the lodestar method.

   If this Court should determine—notwithstanding the plain language of its Rule 37 order, Rule 26(b)(4)(E)(i), and Plaintiffs' unopposed stipulation—that Plaintiffs are responsible for some broader portion of the attorney's fees billed by defense counsel, the Court should nonetheless drastically reduce the fee award.  Courts in this circuit must engage in a two-step process to calculate the lodestar and then determine whether the lodestar should be further adjusted, based on

an assessment of 12 relevant factors.  The Court need not reach this step, because Defendants are not entitled to any attorney's fees, but Plaintiffs nonetheless include this analysis for completeness.

"Under the first step, a court must calculate the 'lodestar,' which is equal to the number of hours reasonably expended multiplied by an appropriate hourly rate (excluding hours that are excessive, duplicative, or inadequately documented)." *CEATS, Inc. v. TicketNetwork, Inc.*, 71 F.4th 314, 326 (5th Cir. 2023).  "Under the second step, a court must consider whether the lodestar amount should be adjusted up or down according to [a set of] 12 factors." *Id.* at 327 (citing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

As to the first step, defense counsel's attorney's fees and costs for deposition-related travel is unreasonable and non-compensable.  As explained *supra*, Plaintiffs offered to depose Dr. Swanson virtually.  Defense counsel insisted on traveling to Washington state from Jackson, accruing an 11-hour trip on October 4, 2023, a 3-hour trip to Seattle (blocked billed as 10 hours along with the 7-hour deposition) on October 5, and a 10.8-hour trip back from Seattle, totaling 24.8 hours and $8,860.00 of unnecessary bills.  ECF No. 166-7 at 3–4.  Defense counsel's hotel and other travel expenses added up to a separate tab of $1,634.70.  *Id.* at 4.  Subtracting those avoidable fees and expenses brings the total down to $19,126.70.

Furthermore, twenty of defense counsel's billing entries involve sending non-substantive emails and communications about deposition logistics and transcripts, totaling 5.9 hours and $2,065.00.  Administrative work, such as that of paralegals, is reasonably billed between $110.00 and $130.00 an hour in Mississippi.  *Wiemer v. Rubino*, No. 1:16-CV-99-LG-RHW, 2019 WL 2461817, at *3 (S.D. Miss. June 12, 2019).  Billing these 5.9 hours at $120 yields $708.00, a further reduction of the total by $1,357.00.  The lodestar therefore stands at $17,769.70.

At the second step, an assessment of the requisite 12 factors warrants a significant fee reduction of the lodestar. Notably, Defendants have failed to articulate and apply those factors in their motion, and they have failed to submit sufficient evidence on these factors to carry their burden. Those 12 factors are:

1.  *The time and labor required*: This factor weighs in favor of a reduction, because both Dr. Swanson and Dr. Bonneau are experienced experts with prior deposition and report-drafting experience. Accordingly, preparing them should not have been a labor-intensive exercise.

2.  *The novelty and difficulty of the questions*: This factor also weighs in favor of a reduction, because this case (and in particular Plaintiffs' rebuttal reports) does not raise novel issues. The *Gingles* preconditions and the Senate Factors relevant to a Section 2 claim under the Voting Rights Act are well-established; while they may be factually complex, there is no novelty as to the legal issues involved. Furthermore, as explained in Plaintiffs' *Daubert* reply, the methods utilized by Plaintiffs' experts here, ecological inference, is commonly used in voting rights cases and should be familiar to defense counsel and their experts.

3.  *The skill requisite to perform the legal service properly*: This factor also weighs in favor of a reduction, for the same reasons articulated for factor 1.

4.  *The preclusion of other employment by the attorney due to acceptance of the case*: This factor weighs in favor of a reduction, because Defendants have not identified any lost business opportunities as a result of this case. Furthermore, the timeline for the completion of two sur-rebuttal reports and two depositions was over seven-months long. It is inconceivable that this schedule would have strained defense counsel's ability to take on other cases.

5.  *The customary fee:* This factor weighs in favor of a reduction, because Defendants have not provided any comparable fees.

6.  *Whether the fee is fixed or contingent*: This factor weighs in favor of a reduction, because Defendants have not provided any relevant information as to their fee arrangement with counsel.

7.  *Time limitations imposed by the client or the circumstances*: This factor weighs in favor of a reduction for the reasons stated in factor 4. Defendants received Plaintiffs' rebuttal reports on February 6, 2023, more than seven months before the eventual due date of their sur-rebuttal reports.

8.  *The amount involved and the results obtained*: This factor weighs strongly in favor of a reduction, because a significant part of Dr. Swanson's report and testimony, as explained in Plaintiffs' *Daubert* motion and reply, is unreliable. *See generally* ECF

No. 165; ECF No. 172. Despite submitting massive invoices, Defendants have now conceded that Dr. Swanson is not an expert on core elements of his testimony. ECF No. 168 at 2; ECF No. 169 at 3, 11.

9. *The experience, reputation, and ability of the attorneys*: This factor weighs in favor of a reduction, because Defendants have not provided sufficient information to substantiate their counsel's hourly rate.

10. *The "undesirability" of the case*: This factor weighs in favor of a reduction, because Defendants have not explained that this case is undesirable—in fact, defense counsel represented that he "agreed to represent the defendants . . . for a discounted rate," indicating that this was a desirable engagement for counsel. ECF No. 166-7 at 1.

11. *The nature and length of the professional relationship with the client*: This factor weighs in favor of a reduction, because Defendants have not provided sufficient information as to their relationship with counsel.

12. *Awards in similar cases*: This factor weighs in favor of a reduction, because Defendants have not provided any example of a comparable fee award, in excess of a $120,000 overall, against non-profit, civil rights organizations for improper supplementation of expert reports.

*Johnson*, 488 F.2d at 717–19.

As stated in Section II.A, because neither Rule 26, this Court's Rule 37 order, or Plaintiffs' unopposed stipulation provides for the payment of attorney's fees, Defendants' request for $29,621.40 in attorney's fees and expenses should be rejected in its entirety. Alternatively, if the Court concludes, despite Plaintiffs' arguments, that some attorney's fees related to the preparation of the sur-rebuttals are warranted, that recovery should be limited to $1,120.00. *See* Section I.B. However, if the Court nonetheless concludes that a broader fee award is appropriate, a large reduction of Defendants' fee request is warranted under the lodestar method. Given Defendants' failure to submit requisite support and because all available evidence strongly favors a reduction, Plaintiffs ask that the Court reduce the $17,769.70 lodestar by at least 75%, to $4,442.43.

## II. THE PROPOSED EXPERT FEES IN CONNECTION WITH DEFENDANTS' SURREBUTTALS ARE EXCESSIVE.

As with attorney's fees, "the burden of proving the reasonableness of an expert's fees lies with the party seeking reimbursement." *Parkcrest Builders, LLC v. Hous. Auth. of New Orleans*, 336 F.R.D. 527, 530 (E.D. La. 2020). Courts consider a number of factors, including:

(1) the witness's area of expertise;

(2) the education and training required to provide the insight that is sought;

(3) prevailing rates for other comparable experts;

(4) the nature, quality and complexity of the responses provided;

(5) the cost of living in a particular geographic area; and

(6) the fees traditionally charged by the expert on related matters.

*Duke v. Performance Food Grp., Inc.*, 2014 WL 370442, at *6 (N.D. Miss. Feb. 3, 2014) (quoting *Magee v. The Paul Revere Life Ins. Co.*, 172 F.R.D. 627, 645 (E.D.N.Y. 1997)). Awarding expert fees for a witness who fails to qualify under the *Daubert* standard is "manifestly unjust." *Parkcrest Builders*, 336 F.R.D. at 532 (quoting *Rogers v. Penland*, 232 F.R.D. 581, 583 (E.D. Tex, 2005)).

Separately, courts routinely strike line-item charges for fees and expenses that are unnecessary, duplicative, or too vague for the court and the opposing party to assess reasonableness. *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (striking entries for which "the documentation of hours is inadequate"); *Rouse v. Target Corp.*, 181 F. Supp. 3d 379, 389 (S.D. Tex. 2016) (declining to award fees for duplicative hours multiple people researched, prepared, and reviewed the same materials). Specifically, courts "generally do[] not award fees for time to conduct research" in the analogous context of motions for attorney's fees where the attorney in question is otherwise under-prepared to address the issues at hand. *See, e.g., Starlight*

18

*Int'l Inc. v. Herlihy*, 190 F.R.D. 587, 590 (D. Kan. 1999) (citing *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1253 (10th Cir. 1998)).

Here, both the rate and number of hours submitted by Dr. Swanson and Mr. Bryan are unreasonable. For one, Mr. Bryan was never noticed as an expert in this case, is not qualified as an expert, and should not be compensated at all under the terms of Plaintiffs' stipulation and Rule 26. Even if Plaintiffs were somehow responsible for compensating Mr. Bryan, his quoted rate of $400 per hour is wholly unreasonable and must be substantially reduced in light of his lack of expertise and his record of being discredited by multiple courts. Further, as detailed in Plaintiffs' *Daubert* motion, Dr. Swanson is not qualified to opine on EI analysis as an expert—a fact that Defendants have acknowledged—and should not be compensated as an expert for time spent on the portion of his sur-rebuttal purporting to address Dr. Burch's EI analysis. Nor would it be reasonable for Plaintiffs to subsidize Dr. Swanson's education on a topic for which he was not qualified. Beyond these threshold issues precluding an award of the full amount requested, the itemized invoices submitted by Dr. Swanson and Mr. Bryan are rife with vague, duplicative, and unnecessary entries that should be stricken or, at minimum, reduced.

A.    **Dr. Swanson's (and to a lesser extent, Dr. Bonneau's) hours are unreasonable.**

Defendants seek fees for an astounding 182.70 hours that Dr. Swanson reportedly spent preparing writing a surrebuttal report; he separately billed another 21.23 hours for preparing for and attending a local deposition.[4] Dr. Swanson's 203.93 total hours are inflated by a range of non-

---

[4] As a point of comparison, the 200+ hours Dr. Swanson spent preparing a *surrebuttal* report and sitting for a single deposition pre-trial far exceed the *total* hours experts in redistricting cases have spent on a case, including for attending trial. *See Thomas v. Reeves*, No. 3:18-CV-441 (CWR) (FKB), 2021 WL 517038, at *12 (S.D. Miss. Feb. 11, 2021), *appeal dismissed*, No. 21-60171, 2021 WL 3869713 (5th Cir. Apr. 23, 2021) (finding the 107.5 hours redistricting expert Bill Cooper spent drafting two reports, being deposed, attending Defendants' expert's deposition, and attending a two-day bench trial to be reasonable).

compensable activities, including the time he spent learning statistics because he is not qualified to opine on Dr. Burch's statistical methods, duplication between him and Mr. Bryan (who is also not a qualified expert and who is not cited in Dr. Swanson's sur-rebuttal report), hours spent on his report *after* the final version had already been served on Plaintiffs, consultations with defense counsel, and unexplained "research" lacking the specificity required for reimbursement. Overall, Plaintiffs identified 126.98 hours of Dr. Swanson's and Mr. Bryan's time that should be subtracted, leaving Defendants with 66.95 hours of billable sur-rebuttal work, which is nearly 50% more than what Dr. Burch required for her rebuttal analysis (45 hours), and another 10 hours of billable deposition-related time for Dr. Swanson. The hours to be subtracted are highlighted in Ex A, a color-coded version of Dr. Swanson's and Mr. Bryan's invoices, for ease of reference.

Dr. Bonneau's bill should also be reduced by 3 hours, because he failed to distinguish between his own deposition preparation from time spent meeting with defense counsel, which is not compensable. That reduction brings Dr. Bonneau's total billable hours to 30.58 hours.

   1.    **The time Dr. Swanson spent learning statistics, due to his admitted lack of expertise, is unreasonable and should not be compensated.**

Defendants have now represented to this Court that Dr. Christopher Bonneau—not Dr. Swanson—is their actual expert on ecological inference. ECF No. 168 at ¶ 4; ECF No. 169 at 3. Yet, instead of having Dr. Bonneau critique Burch's EI analysis, they asked Dr. Swanson, who "is not offered as expert on King's Ecological Inference analysis," ECF No. 168 at ¶ 4, to learn EI from scratch, generating $5000 in unnecessary work to learn and install EI code on his computer.

Because of Dr. Swanson's complete lack of familiarity with EI analysis, he billed 9.5 hours to "research/refresh [him]self on EI" (6.75 hours, totaling $2,700) and to "install and run [an] EI demo," (2.75 hours, totaling $1,100), and an additional 3 hours (totaling $1,200) to install the R program ("install R," "install R studio," and "Obtain King's EI Program in R"), which is a software

20

commonly used by statisticians and political scientists, to run EI analyses. Ex. A at 1.[5] Similarly, Dr. Swanson billed 3.5 hours (totaling $1,400) to "research/refresh myself on logistic regression," *id.*, which is another common statistical method that Dr. Burch employed.

These expenses, totaling 16 hours and $6,400, are "unnecessary" and should not be borne by Plaintiffs. *See Curtis v. Bill Hanna Ford*, 822 F.2d 549, 553 (5th Cir. 1987). Defendants created this unnecessary work by choosing to have Dr. Swanson, a non-expert, attempt to learn a new subject solely for the purposes of this litigation. A person who was already an expert in statistics would have the basic tools and skills involved in EI analysis at the ready, rather than charging for getting equipped and up to speed. Indeed, Dr. Bonneau testified in his deposition that he has experience utilizing and evaluating regressions and other statistical methods. ECF No. 164-7 at 27:22–29:16; 126:5–16. Defendants could have offered his already-extant expertise rather than instructing Dr. Swanson to educate himself in attempts to become an expert. It is not reasonable for Plaintiffs to subsidize Dr. Swanson's continuing education or compensate Defendants for their decision to employ the wrong person for the job.

In short, it would be manifestly unjust for Plaintiffs to pay *more* for the work of an unqualified expert witness like Dr. Swanson. Accordingly, the Court should subtract these 16 unnecessary hours ($6,400) from the fee demand.

## 2. Defendants are not entitled to reimbursement for unnecessary and duplicative work between Dr. Swanson and Mr. Bryan.

Defendants should not receive compensation for duplicative and unnecessary work. *See Rouse*, 181 F. Supp. 3d at 389 (declining to award fees for duplicative hours when multiple people

---

[5] Besides being unnecessary, entries related to software acquisition and installation should be stricken as vague, excessive, and unreasonable. Program installation is largely an automated process, and Dr. Swanson has not adequately described the work he actually performed to justify these entries.

researched, prepared, and reviewed the same materials). For reasons Defendants do not explain, Dr. Swanson and Mr. Bryan both billed hours for the same work, including document review, CES data analysis, and report drafting. Overall, Mr. Bryan seeks reimbursement for 60 hours of work ($24,000.00 in fees) that have virtually the same billing description as Dr. Swanson's entries or are otherwise the result of inefficiencies from having two people evaluate Dr. Burch's work. Yet Defendants fail to provide any information distinguishing Mr. Bryan's work on these tasks from Dr. Swanson's and do not explain why it was necessary for multiple people work on Dr. Swanson's report; both also billed time for conferring with one another, which would not have been needed had Dr. Swanson performed the work himself. Dr. Swanson's sur-rebuttal report does not even cite or reference Mr. Bryan's work, yet Defendants seek reimbursement on the theory that Mr. Bryan's work is related to Dr. Swanson's sur-rebuttal. *See generally* ECF No. 166-2.

Dr. Swanson and Bryan collectively claim 73.65 hours spent analyzing and reviewing data from the Cooperative Election Study. Mr. Bryan's entries, identified as "Research on CES and CPS" total 22 hours. Ex. A at 7. As a point of reference, Dr. Burch's CES analysis took her "approximately 10 hours." ECF No. 130-1 at ¶ 10. Although Mr. Bryan claimed to have also examined the CPS, Dr. Swanson's original report already analyzed the CPS, and the only new information provided about the CPS in his rebuttal is the number of survey respondents in the CPS—looking up that figure is straightforward and cannot possibly entail hours of work. ECF No. 166-2 at 4. To the extent that any other work on the CPS was necessary, Mr. Bryan's entries fail to explain what might be. Even allowing Dr. Swanson more than twice the amount of time that Dr. Burch spent on the CES, compensating Mr. Bryan for literally re-doubling those efforts— and more than quintupling Dr. Burch's time overall—is unreasonable. Such redundancy is particularly unwarranted when none of the billing entries explains how Mr. Bryan's efforts are

distinct from Dr. Swanson's already substantial time investment. Mr. Bryan's CES and CPS billing entries, totaling 22 hours, should be cut as redundant and excessive.

Dr. Swanson and Mr. Bryan also collectively billed 52 hours drafting Dr. Swanson's 17-page sur-rebuttal report. Dr. Swanson billed 24.75 hours drafting, revising, and finalizing the surrebuttal report while Mr. Bryan separately billed another 27.25 hours on "report writing on CES" and "report writing."[6] Ex. A at 2, 7. In addition to being duplicative and excessive, Mr. Bryan is not listed as an author in Dr. Swanson's sur-rebuttal report, so it is unclear how he can properly bill time for "report writing." Mr. Bryan's 27.25 hours should be deducted.

Curiously, Dr. Swanson also billed 2.5 hours (or $1000) for "finaliz[ing] declaration" on September 18 and 19 of 2023, days *after* his sur-rebuttal had already been produced to Plaintiffs. Ex. A at 3. Those hours are clearly unwarranted.

Further inefficiencies caused by Mr. Bryan include 1.5 hours for "Document review and client call," 0.5 hour for "doc review" of this Court's order, another 4.5 hours for him to attend four "Client Call[s]," and another 0.75 hours on "Client correspondence," none of which would have been needed if Dr. Swanson had performed the work himself. Ex. A at 5, 7. Dr. Swanson also appeared to bill 0.75 hours for one of those calls on June 26, 2023, to meet with Mr. Bryan, as well as another 0.5 hours for discussing EI with Mr. Bryan on May 25, 2023. *Id.* at 1–2. Both Dr. Swanson and Mr. Bryan appear to have attended a 3-hour-long Zoom session with one another on May 26, 2023, and they now seek to bill Plaintiffs for both of their time (3 hours for Dr. Swanson, and 3.5 hours for Mr. Bryan)—those meetings would have been avoided if one of them had done the work. *Id.* at 1, 7. While Defendants can choose to retain multiple individuals, they

---

[6] As a point of comparison, Defendants' other expert, Dr. Bonneau, billed six hours to draft an eight-page report. ECF No. 166-5 at 1.

must all be disclosed as expert witnesses, and Plaintiffs cannot reasonably be expected to pay for the duplication and inefficiencies created as a result of Defendants' own choices, particularly in the absence of any explanation as to why Mr. Bryan's work was reliable, necessary, or reasonable. *See Jolie Design & Décor, Inc. v. Gogh*, No. 15-CV-0740, 2016 WL 4708210, at *4 (E.D. La. Aug. 11, 2016) ("[W]hile a party is free to employ multiple attorneys, that party's opponent is not required to pay for duplicative work by those attorneys—it remains the burden of the party seeking fees to demonstrate the reasonableness of all the fees it seeks."), *report and recommendation adopted*, 2016 WL 4718186 (E.D. La. Sept. 8, 2016). These inefficiencies total 15 hours' worth of reductions (4.25 hours in reductions for Dr. Swanson and 10.75 hours for Mr. Bryan).

In short, Defendants have failed to justify Dr. Swanson and Mr. Bryan performing duplicative and inefficient work, and this Court should subtract 66.75 hours for the redundant and duplicative work that they billed—even assuming that Mr. Bryan's work is billable at all despite his failure to be disclosed as an expert witness and the omission of any reference to his work in Dr. Swanson's sur-rebuttal report, see infra Section II.B. Of the 66.75 hours in reductions, 60 hours come from Mr. Bryan's invoices, while the remaining 6.75 hours are due to unnecessary meetings and post-submission work by Dr. Swanson.

### 3. Dr. Swanson's entries related to CES data are impermissibly vague.

Many of Dr. Swanson's billing entries are too vague to enable an assessment of his hours, and this Court should eliminate those hours because "the documentation of hours is inadequate." *Hensley*, 461 U.S. at 433; *see also League of United Latin Am. Citizens v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1233 (5th Cir. 1997). Dr. Swanson billed a total of 51.65 hours related to Cooperative Election Study ("CES") data. Plaintiffs do not challenge 18.65 of those hours that Dr. Swanson initially spent "analyz[ing] CES data and logit reg syntax," "replicat[ing] [] Burch's logit analysis," and "const. of logistic model w/ correct weights." Ex. A at 1. Unlike those entries,

24

however, Dr. Swanson's remaining CES entries totaling 33 hours are too vague for either Plaintiffs or this Court to assess their reasonableness and should therefore be discounted.

As a general matter, Plaintiffs note that Dr. Swanson spent an inordinate number of hours related to Dr. Burch's analysis of the CES dataset. The first part of Dr. Burch's CES analysis reported voter turnout data in the form of basic percentages. ECF No. 130-1 at ¶ 12. The second part of this analysis examined the relationship between voter turnout, race, and education, using a regression analysis. *Id.* at ¶ 13. In her March 24, 2023 declaration, Dr. Burch anticipated that Dr. Swanson's analysis of the basic percentages in the first part of her study would not require him to conduct a regression analysis to confirm her results. ECF No. 130-1 at ¶ 12. To the extent he chose to verify her results, she anticipated it would take him five minutes to acquire the CES dataset from the Harvard-MIT dataverse website and three hours to conduct the analysis in using a program called SPSS. *Id.* at ¶¶ 11–12. As to the second part of her CES analysis, Dr. Burch concluded that regression diagnostics were not necessary to replication or evaluation of her regression analysis. *Id.* at ¶ 14. To the extent Dr. Swanson elected to conduct a diagnostic of her regression analysis, she estimated it would take him *one hour* to do so—Dr. Swanson ultimately appeared to bill 18.65 hours on this single task alone. *Id.*; Ex. A at 1.

On top of those already substantial hours, which Plaintiffs do not dispute, Dr. Swanson billed 33 additional hours (totaling $13,200) using the following vague descriptions: "continue with CES analysis," "CES study research," "Analyze Burch's CES Data," "CES data analysis," and "Summary CES Analysis." Ex. A at 1–2. These entries "are too general to provide the court with a clear picture of the work" he performed evaluating Dr. Burch's work and fail to provide anywhere close to the level of specificity as Dr. Burch did when outlining her research in her March 24, 2023 declaration. *See Sanders v. Nunley*, No. 1:95-CV-237, 1999 WL 33537095, at *4

25

(N.D. Miss. Jan. 17, 1999) (finding that entries labeled "OC w/client" or "Research re. [a document]" were too vague to be awarded). Dr. Swanson's vague entries make it impossible to adequately compare the duration of his work to Dr. Burch's estimates in order to determine whether Defendants' hours are reasonable. Those 33 hours should be eliminated. *See Roscoe Indep. Sch. Dist.*, 119 F.3d at 1233 (5th Cir. 1997) ("If the applicant's documentation of the hours claimed is 'vague or incomplete,' the district court may reduce or eliminate those hours.") (citing *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995)).

Mr. Bryan similarly billed 22 hours of vague entries for "Research on CES and CPS," which should be subtracted as duplicative, as explained *supra* in Section II.A.2, but vagueness is an independent reason for eliminating those hours as well.

> **4. Dr. Swanson's and Dr. Bonneau's deposition-related hours are not reimbursable under this Court's order pursuant to Rule 37 or Plaintiffs' unopposed stipulation and must be reduced under Rule 26(b)(4)(E)(i).**

Under Rule 26(b)(4)(E)(i), "an expert's deposition preparation time is only reimbursable to the extent that it confers value on the deposing party." *CEATS*, 2019 WL 13077321, at *3 (quoting *Script Sec. Sols., LLC v. Amazon.com, Inc.*, No. 2:15-CV-1030-WCB, 2016 WL 6649721, at *7 (E.D. Tex. Nov. 10, 2016)). "[T]ime that [an] expert spends consulting with counsel for the retaining party is not likely to be preparation time that confers value on the deposing party." *CEATS*, 2019 WL 13077321, at *3. The burden of proving the reasonableness of the reimbursement "falls on the retaining party," and "the costs of the experts' purported preparation time will be denied" absent "a sufficiently detailed explanation of the appropriateness of the time spent." *Id.* at *2. Neither the Court's Rule 37 order nor Plaintiffs' unopposed stipulation requires Plaintiffs to pay Defendants' experts for their deposition-related activities.

Contrary to the requirements of Rule 26(b)(4)(E)(i), Defendants have failed to carry their burden to justify the number of hours Dr. Swanson and Dr. Bonneau spent on deposition

preparation. In fact, they provide no explanation whatsoever for how Dr. Swanson spent the 6 hours that he billed or why those hours were necessary. Dr. Swanson's entries do not specify what he did during those 6 hours beyond "review" and "prep," Ex. A at 4, and Defendants' briefing offers nothing more either, ECF No. 167 at 5–6. The same is true of Dr. Bonneau, who billed 3 hours for "deposition prep." *Id.*; ECF No. 166-6 at 1.

Critically, Dr. Swanson and Dr. Bonneau have failed to identify which of those hours were spent preparing on their own, which may be compensable, as opposed to consulting with defense counsel, which is not compensable under Rule 26(b)(4)(E)(i). This failure to "segregate" actual preparation time from attorney time is fatal to Defendants' efforts to seek reimbursement. *CEATS*, 2019 WL 13077321, at *3 (holding that deposition preparation was non-reimbursable, due to defendant's failure to "provide a sufficiently detailed breakdown of their preparation time distinguishing what was beneficial to [Plaintiff] versus what was beneficial to [Defendant]," which meant that there was "no reasonable way to segregate and exclude any time the expert spends in consultation with an attorney or other representative of the retaining party").

Nor did this Court's Rule 37 order require Plaintiffs to reimburse Defendants for deposition preparation. ECF No. 140 at 12–13 & n.3. This Court's ruling was clear that the prejudice caused by Plaintiffs' improper rebuttal disclosures would be eliminated by Plaintiffs' payment of reasonable expert fees and costs "incurred by Defendants in having their experts respond to the untimely rebuttal opinions." *Id.* By the time Dr. Swanson and Dr. Bonneau began preparing for their depositions, they had completed their responses to Dr. Orey and Dr. Burch respectively.

Plaintiffs' unopposed stipulation also tracks this Court's order and does not provide for payment for the preparation of Defendants' experts for deposition. ECF No. 143 at 2. Rather, Plaintiffs stipulated, without any objection from Defendants that the conditions were insufficient

27

to cure their prejudice, to being "responsible for reasonable expert fees and costs actually incurred in *preparing such sur-rebuttal reports*." *Id.* (emphasis added). Plaintiffs noticed the depositions of Dr. Swanson and Dr. Bonneau after the submission of their sur-rebuttal reports, and none of their deposition preparation contributed to the preparation of their sur-rebuttal reports. *See Kahlig Enterprises*, 2023 WL 2638281, at *2–3 (comparing deposition preparation to trial preparation). As explained above, this Court has already determined how the prejudice to Defendants will be cured, and Defendants cannot now relitigate this Court's order and seek to shift additional costs to Plaintiffs that neither the Court nor the parties contemplated.

Post-deposition, Dr. Swanson billed an excessive number of hours reviewing his transcript. Whereas Dr. Bonneau billed 1.5 hours reviewing his 168-page transcript, Dr. Swanson billed 8.23 hours related to his 324-page transcript. ECF No. 167 at 7. In other words, Dr. Swanson's reading speed was about one-third of Dr. Bonneau's. Defendants' explanation for the disparity is that Dr. Swanson's work was more "technical," but that does not hold water. *Id.* Both experts were reviewing their own supposed areas of expertise and their own responses to questions that were asked of them—the technical aspects of which they already considered during deposition. Defense counsel, reviewing the same "technical" document (presumably with less familiarity as to Dr. Swanson's work and also needing to consider legal ramifications), billed less than 6 hours on Dr. Swanson's transcript. ECF No. 166-7 at 4. Furthermore, the review of deposition transcripts is for identifying simple errors in transcription, not for Dr. Swanson to re-analyze his answers anew. And in any event, Dr. Swanson's deposition lasted 7 hours, so he billed *more time reviewing* the transcript than the length of the deposition itself. Plaintiffs submit that Dr. Swanson's 8.23 hours should be reduced to 3 hours, which is similar to but slightly slower than Dr. Bonneau's pace, to account for any marginal difference that the more "technical" transcript may have caused.

Accordingly, the Court should deduct 11.23 hours of Dr. Swanson's deposition-related hours, and 3 hours of Dr. Bonneau's time under Rule 26(b)(4(E).

*  *  *

In total, apart from the rate reduction related to Dr. Swanson's admitted lack of expertise in the field of ecological inference and Mr. Bryan's status as a non-expert, *see infra* Sections II.B. and II.C, Plaintiffs have identified 126.98 hours, or $50,792, to be subtracted from Dr. Swanson/Mr. Bryan's bills as unreasonable. Notably, despite that reduction, Plaintiffs would still be compensating Defendants for 66.95 hours of billable work by Dr. Swanson and Mr. Bryan solely for the former's sur-rebuttal report—which remains significantly more than the 45 hours that Dr. Burch needed for her rebuttal analysis—as well as another 10 hours for deposition-related activities. *See* ECF No. 130-1 at ¶¶ 10, 17. Plaintiffs do not challenge the time that Dr. Bonneau spent rebutting Dr. Orey's report but do contest the 3 hours (or $900) he purportedly spent on deposition preparation as failing to meet the specificity required by courts in this circuit; a reduction of those 3 hours would bring Dr. Bonneau's total billable hours to 30.58 hours.

### B. Mr. Bryan is not entitled to compensation for "reasonable expert fees" because he is not an expert in this case.

Plaintiffs stipulated to pay "reasonable expert fees and costs actually incurred in preparing sur-rebuttal reports." ECF No. 143 at 2. There is no suggestion that Mr. Bryan is an expert witness in this case: he has not been noticed as an expert, has not submitted any reports, and has not been deposed or otherwise subject to cross-examination. Nor is he identified as an author or even a source in Dr. Swanson's sur-rebuttal report. By the plain terms of the stipulation, then, he is not entitled to expert fees in connection with Dr. Swanson's sur-rebuttal. Likewise, Rule 26(b)(4)(E)(i) provides no grounds entitling Mr. Bryan to compensation from Plaintiffs, since the Rule only requires a party deposing an opponent's expert to pay "*the expert* a reasonable fee for

29

time spent in responding to discovery." Fed. R. Civ. P. 26(b)(4)(E)(i) (emphasis added). And courts have deducted "various labor charges for [an] expert's administrative assistant" from expert fees awarded under Rule 26(b)(4)(E). *Auto. Rentals, Inc. v. Keith Huber, Inc.*, 2012 WL 12854841, at *2 (S.D. Miss. Jan. 10, 2012). Accordingly, the entirety of Mr. Bryan's 68.25 hours billed to Plaintiffs—not just the 60 hours that Plaintiffs have identified as duplicative in Section II.A.2—is non-compensable. *See* Ex. A at 5 (14 hours), 7 (54.25 hours).

Despite Defendants' burden to prove the reasonableness of the fees they seek, *Parkcrest Builders*, 336 F.R.D. at 530, Defendants' motion does not cite a single authority to support the proposition that a non-expert may be compensated as an expert in circumstances like those present here. If Defendants had sought to qualify Mr. Bryan as an expert in his own right, Plaintiffs would have vigorously challenged such designation given Mr. Bryan's track record of dubious credibility. *See* ECF No. 165 at 10 (questioning Mr. Bryan's credentials and citing *Singleton v. Merrill*, 582 F. Supp. 3d 924, 985 (N.D. Ala. 2022) (assigning very little weight to Bryan's testimony); *Caster v. Merrill*, 2022 WL 264819, at *42 (N.S. Ala. Jan. 24, 2020) (same); *Robinson v. Ardoin*, 605 F. Supp. 3d 759, 823-24 (M.D. La. 2022) (same); Swanson Depo. Tr., ECF No. 164-1, at 27–31 (acknowledging Bryan has been repeatedly found "not credible" in court). To the extent that Mr. Bryan's purported work on this matter is compensable at all, it could only possibly be as part of the "costs actually incurred" by Dr. Swanson in preparing his sur-rebuttal to Dr. Burch's rebuttal report.

But even for this narrower purpose, Defendants have failed to justify why Mr. Bryan's time is relevant to Dr. Swanson's sur-rebuttal. In their opposition to Plaintiffs' *Daubert* motion, Defendants describe Mr. Bryan's work as conducting "calculations" on Dr. Swanson's behalf in order to "perform the geometric analysis of the compactness of various districts" in responding to

Mr. Cooper's report. *See* ECF No. 169 at 11. Plainly, such work is unnecessary to sur-rebutting Dr. Burch's report and thus outside the scope of the stipulation. Indeed, Dr. Swanson's sur-rebuttal report does not mention Mr. Bryan or BGD even once. By contrast, Dr. Swanson's opening expert report did state that BGD "assembled data, maps, and other work product" under Dr. Swanson's direction. *See* ECF No. 164-2 at 10. This is consistent with Defendants' opposition to Plaintiffs' *Daubert* motion, where they analogize Mr. Bryan's work to that of an "assistant" to whom Dr. Swanson "delegated [] computation." *Id.* If Defendants wished for Mr. Bryan's fees to be compensated as an input to Dr. Swanson's work, they should have appropriately represented his work in their invoices and sur-rebuttal report. Instead, they improperly bill Mr. Bryan's time as though he were their expert, which he undisputedly is not. Their failure to properly account for Mr. Bryan's time, and his wholesale lack of expert qualifications, should preclude his 68.25-hour, $27,300 bill from being reimbursed. Thus, to the extent that Mr. Bryan's hours are not already excluded as duplicative (and 60 of his 68.25 hours are duplicative, *see* Section II.A.2), his remaining time should be eliminated.

### C. Dr. Swanson's and Mr. Bryan's hourly rates are unreasonable given their lack of expertise.

Defendants seek payment for Dr. Swanson's and Mr. Bryan's time at a rate of $400 per hour. Mr. Bryan, who is not a disclosed expert and has been discredited by multiple courts and is not cited in Dr. Swanson's sur-rebuttal, cannot justify any expert compensation; the rate is also unreasonable for Dr. Swanson's acknowledged non-expert work on ecological inference.

### 1. Mr. Bryan, as a non-expert whose contribution is not explained in Dr. Swanson's sur-rebuttal report, should not receive compensation at the rate of an expert witness.

As discussed above, Mr. Bryan's time should not be compensated at all, as he is not an expert in this case. To the extent he is entitled to any compensation as an input cost of Dr.

Swanson, even though he is not referenced in Dr. Swanson's report, his rate must be substantially reduced. As covered at length in Dr. Swanson's deposition, Mr. Bryan's prospects as an expert witness (and entitlement to a fee rate commensurate with an expert) have been clouded by a number of unfavorable court opinions criticizing his reliability. For example, in *Robinson v. Ardoin*, the court noted that "Bryan's conclusions are unsupported by the facts and data in this case and thus wholly unreliable." 605 F. Supp. 3d at 824. The other cases previously cited here and in Plaintiffs' *Daubert* motion similarly cast aspersions on Mr. Bryan's potential to be qualified as an expert in his own right. It is unconscionable that Mr. Bryan purports to charge a higher hourly rate than Defendants' other expert, Dr. Bonneau, who charges $300 per hour.

In the analogous context of attorney's fees, courts decline to award an attorney's billable rate for subordinate clerical tasks like "compilation of statistical and financial data." *Saldivar v. Austin Indep. Sch. Dist.*, 2016 WL 1064654, at *4 (W.D. Tex. Mar. 15, 2016) ("It is well established that 'clerical work performed by an attorney is not recoverable at an attorney's rate.'" (quoting *Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989))). The same reasoning applies here, where, notwithstanding his checkered history of testifying in Voting Rights Act cases, Dr. Swanson chose to employ Mr. Bryan to perform certain tasks in support of Dr. Swanson's expert analysis. To the extent Mr. Bryan is entitled to compensation for non-duplicative tasks, *see infra* Section II.A.2, his hourly rate should be reduced to $25 per hour to reflect the administrative nature of the services he is qualified to provide. This rate still exceeds the $21.72 average hourly rate for an office administrator in Midlothian, VA, where Mr. Bryan is based.[7]

---

[7] *See* Indeed, Office Administrator Salary in Midlothian, VA, https://www.indeed.com/career/office-administrator/salaries/Midlothian--VA (last visited Dec. 14, 2023).

As explained in Section II.A.2 and II.A.3, Mr. Bryan's hours are largely vague and duplicative of Dr. Swanson's own substantial hours, such that only 8.25 hours are demonstrably distinct. Those hours include tasks such as downloading data, "support[ing] and review[ing]" a draft, "reviewing" data, and looking at Dr. Burch's county list. Ex. A at 7. To the extent that Mr. Bryan merits any compensation from Plaintiffs despite not being an expert, he should receive no more than $25 an hour for 8.25 hours of administrative support ($206.25). If the Court determines Mr. Bryan should be paid for any portion of his 60 hours of duplicative work, which he should not, the reduced rate of $25 an hour applies to that work as well.

### 2. Dr. Swanson, as an admitted non-expert on ecological inference, should not receive compensation as an expert witness for the work he performed on ecological inference.

Defendants have now acknowledged that Dr. Swanson lacks relevant qualifications and is not being offered as an expert on ecological inference. ECF No. 168 at 2; ECF No. 169 at 3, 11. Accordingly, Dr. Swanson should not receive any compensation from Plaintiffs for his EI-related work, because Plaintiffs stipulated to reasonable "*expert* fees and costs." ECF No. 143 at 2.

Courts assessing reasonableness of expert fee rates consider the expert's area of expertise and the "quality and complexity of the responses provided" by the expert. *See Duke*, 2014 WL 370442, at *6. It is undisputed that Dr. Swanson is not an expert in EI. Defendants even concede that the extent of Dr. Swanson's sur-rebuttal as to Dr. Burch's EI analysis "simply points out—as anyone can—that her answers are not helpful because she is asking the wrong questions." ECF No. 169 at 14. If "anyone can" perform the work Dr. Swanson did, *id.*, then his qualifications are irrelevant to that work, and it should not be compensated at expert rates, if at all. *See Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003).

As detailed in Plaintiffs' *Daubert* motion, Dr. Swanson admitted (and demonstrated) at his deposition that he "has no expertise using the King's EI Technique relied on by Dr. Burch"; he has

not even "conducted an analysis using an EI-type technique (not using King's EI) [since] the early 1990s"; his "familiarity with the technique was limited to 'look[ing] through what's on the website' during his work in this case"; and he "admittedly has no experience analyzing voting behavior, or using the software environment on which the EI program is run." *See* ECF No. 165 at 16–17. Defendants did not dispute those facts in their response to the *Daubert* motion, and nowhere have Defendants justified relying on non-EI-expert Dr. Swanson to respond to Dr. Burch's sur-rebuttal report. Instead, tellingly, Defendants stated that "Dr. Swanson is not offered as an expert on King's Ecological Inference analysis," and that *Dr. Bonneau* would testify as an expert about ecological inference instead—yet Defendants evidently did not ask Dr. Bonneau to evaluate and respond to Dr. Burch's rebuttal report, as he submitted a sur-rebuttal only as to a different Plaintiffs' expert, Dr. Orey. ECF No. 169 at 3.

First, because of Dr. Swanson's lack of expertise with EI, Dr. Swanson should not receive compensation for "review[ing] Burch's Rebuttal: EI" (1.0 hour). Ex. A at 1. Second, the Court should decline to award compensation for the time that Dr. Swanson spent drafting, revising, and finalizing the ecological inference portion of his sur-rebuttal report. Because Dr. Swanson does not delineate whether he was working on the logit regression piece of his sur-rebuttal, or the ecological inference piece, a reasonable estimate is to examine the length of Dr. Swanson's written work. The section on EI takes up approximately two pages of his 17-page sur-rebuttal report. *See* ECF No. 166-2 at 15–17. Because Dr. Swanson billed 24.75 hours towards the writing of his report, reducing his compensation by least 2.5 hours is warranted.

Having conceded Dr. Swanson's lack of expertise, Defendants' attempt to seek expert fees for his EI-related work is categorically unreasonable. Because Dr. Swanson is not qualified as an expert on EI, it would be "manifestly unjust" to award fees for the time he spent as a lay-witness.

34

*See Parkcrest Builders*, 336 F.R.D. at 532. The amount of time that Dr. Swanson spent on EI (not including the hours he spent attempting to learn about EI) is approximately 3.5 hours, and he should receive $0 for that work.[8]

**CONCLUSION**

For the foregoing reasons, the fees Defendants have sought in this case are excessive. Accordingly, this Court should reduce the fee award to $34,435.87[9] or such other lesser amount it deems reasonable and appropriate under the scope of its prior Rule 37 Order, Plaintiffs' unopposed stipulation, and Rule 26(b)(4)(E)(i). If the Court determines that Defendants are entitled to attorney's fees in connection with their sur-rebuttal reports, Defendants should be awarded an additional $1,120.00 in relevant fees. If the Court determines that Mr. Bryan should be compensated for his non-duplicative work despite not being disclosed as an expert witness or referenced in Dr. Swanson's sur-rebuttal, Defendants should be awarded an additional $206.25. If the Court determines that Dr. Swanson should be compensated for his non-duplicative work on ecological inference as a lay witness, Defendants should be awarded an additional $420.00.

---

[8] To the extent the Court determines to compensate any of Dr. Swanson's time billed for EI-related tasks, his billable rate should be lowered in light of his lack of expertise. Given that Dr. Bonneau's rate is $300 per hour as an experienced expert, Dr. Swanson's rate as a non-expert for his EI work should be reduced well below $300 an hour. And since Defendants believe that no special expertise is needed to offer the observations that Dr. Swanson provides on EI, ECF No. 169 at 14, his rate should be no higher than a paralegal's rate in Mississippi, or $120 per hour ($420 for 3.5 hours) for his EI-work. *See Rubino*, 2019 WL 2461817, at *3.

[9] This figure reflects a deduction of $29,621.40 for Defendants' attorney's fees and costs, which are not compensable, *see* Section I.A; a reduction of 126.98 hours (or $50,892.00) of Dr. Swanson's and Mr. Bryan's unnecessary, excessive, and duplicative hours, *see* Section II.A; a reduction of 3 hours (or $900) for Dr. Bonneau, *see* Section II.A.4; elimination of Mr. Bryan's remaining, non-duplicative 8.25 hours (or $3,300) for billing as a non-expert in the case, *see* Section II.B; and elimination of Dr. Swanson's remaining, non-duplicative 3.5 hours (or $1400.00) for his non-expert work on ecological inference, *see* Section II.C.2. The total reduction is therefore $86,013.40.

Respectfully submitted,

/s/ *Joshua Tom*
Joshua Tom, MSB 105392
*jtom@aclu-ms.org*
ACLU OF MISSISSIPPI
101 South Congress Street
Jackson, MS 39201
(601) 354-3408


\* Admitted *pro hac vice*
\*\* *Pro hac vice* motion forthcoming

ACLU FOUNDATION
Ari J. Savitzky*
Sophia Lin Lakin*
Ming Cheung*
Victoria Ochoa**
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2500
*asavitzky@aclu.org*
*slakin@aclu.org*
*mcheung@aclu.org*
*vochoa@aclu.org*

SOUTHERN POVERTY LAW CENTER
Jade Olivia Morgan (Miss. Bar No. 105760)
Leslie Faith Jones (Miss. Bar No. 106092)
111 East Capitol Street, Suite 280
Jackson, MS 39201
(601) 948-8882
*jade.morgan@splcenter.org*
*leslie.jones@splcenter.org*

Bradley E. Heard*
Ahmed Soussi*
Sabrina Khan*
150 E Ponce de Leon Avenue, Suite 340
Decatur, GA 30030
(470) 521-6700
*bradley.heard@splcenter.org*
*ahmed.soussi@splcenter.org*
*sabrina.khan@splcenter.org*

SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood (Miss. Bar No. 106441)
425 Lexington Avenue
New York, NY 100017
(212) 455-2000
*jyoungwood@stblaw.com*


*Attorneys for Plaintiffs*

36

**CERTIFICATE OF SERVICE**

I, Joshua Tom, hereby certify that on December 19, 2023, I electronically filed the

foregoing with the Clerk of the Court using the ECF system which sent notification of such filing

to all parties on file with the Court.

/s/ *Joshua Tom*
Joshua Tom
