IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

DYAMONE WHITE, et al.                                                                      PLAINTIFFS

v.                                                                          CAUSE NO. 4:22-CV-62-SA-JMV

STATE BOARD OF ELECTION
COMMISSIONERS, et al.                                                                      DEFENDANTS

ORDER

This is a Section 2 Voting Rights Act case challenging the district boundaries utilized to elect the justices of the Mississippi Supreme Court. The case is currently set for a bench trial commencing on August 5, 2024.

On October 27, 2023, the Plaintiffs filed a Motion to Partially Exclude [164], wherein they request that the Court exclude certain portions of the proposed testimony of Dr. David Swanson, one of the Defendants' experts. More particularly, the Plaintiffs request that Dr. Swanson be precluded from testifying regarding electoral map drawing and ecological inference analysis. The Defendants oppose the Motion [164].

*I.     Preliminary Matter*

Prior to addressing the Plaintiffs' substantive arguments, the Court feels compelled to address an argument that the Defendants raised in their Response Memorandum [169]. In short, the Defendants contend that *Daubert* and its progeny are not implicated because this case will be tried as a bench trial, as opposed to a jury trial.

The Defendants rely on the Fifth Circuit's 2010 decision in *Whitehouse Hotel Ltd. Partnership v. CIR*, wherein the court noted "that the importance of the trial court's gatekeeper role is significantly diminished in bench trials . . . because, there being no jury, there is no risk of tainting the trial by exposing a jury to unreliable evidence." 615 F.3d 321, 330 (5th Cir. 2010)

(citing *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000)). The Defendants also cite a prior decision of this Court, wherein the Court, largely relying on *Whitehouse* and *Gibbs*, summarily denied a *Daubert* motion prior to a bench trial. *See Estate of Manus v. Webster Cnty., Miss.*, 2014 WL 3866608, at *4 (N.D. Miss. Aug. 6, 2014). In response, the Plaintiffs cite multiple cases wherein district courts *have* considered *Daubert* motions in the context of a bench trial. *See* [172] at p. 3 (citing numerous cases).

To put it simply, the parties have made this issue more complicated than necessary. The *Whitehouse* case itself indicates that the trial court's gatekeeper role is *significantly diminished*—not non-existent—in the bench trial context. *See Whitehouse*, 615 F.3d at 330. The Court therefore finds it appropriate to consider the Plaintiffs' arguments, while also bearing in mind the context in which Dr. Swanson's testimony will be presented—namely, to this Court in a bench trial.

II. *Substantive Arguments*

As indicated above, the Plaintiffs point to two specific topics as to which they believe Dr. Swanson should not be permitted to testify—electoral map drawing and ecological inference analysis.

Rule 702 governs expert testimony and provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principle and methods; and

2

>> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702.

"The proponent of the expert testimony has the burden of establishing its admissibility." *Fozard v. Knauf Gips KG*, 2024 WL 2161362, at *4 (S.D. Miss. May 13, 2024) (quoting *United States v. Kuhrt*, 788 F.3d 403, 420 (5th Cir. 2015)).

The Plaintiffs' first area of concern as it pertains to Dr. Swanson's proposed testimony is electoral map drawing. For context, the Plaintiffs have retained William Cooper as an expert. Cooper has prepared a report that contains four proposed new redistricting plans (two illustrative plans and two "least change" plans). *See* [164], Ex. 4. According to Cooper, the proposed plans would create a majority-BVAP District.

Dr. Swanson, who the Defendants retained as an expert in demography, has prepared two reports—the first of which expends considerable effort and time addressing the illustrative plans contained in Cooper's report. *See* [164], Ex. 2.

The Plaintiffs contend that Dr. Swanson should be precluded from providing opinions on this subject matter. To support this position, the Plaintiffs argue:

>> While Dr. Swanson purports to opine on Mr. Cooper's illustrative districting plans in his initial report, he lacks the knowledge, skill, education, or experience necessary to provide an expert opinion on electoral maps and their compliance with traditional districting principles, which are the crux of the *Gingles* 1 analysis. Dr. Swanson expressly stated under oath that he is not an expert on electoral map-drawing. He agrees that he has no experience drawing electoral maps, and no specialized knowledge with respect to electoral maps. He does not know how to use the computer programs that electoral map drawers use. He conceded that he is only "somewhat" familiar with the traditional principles of drawing electoral maps, nor does he know how those principles are applied. Nor is he familiar with the usual practices of map-drawers. Dr. Swanson's knowledge of electoral map-drawing is so lacking that he does not have a working knowledge of the basic terms used in analyzing electoral maps.

3

[165] at p. 18 (citations omitted).

The Defendants' response is relatively straightforward—they take the position that Dr. Swanson "has never claimed to be an expert in drawing maps. He is, however, an expert in understanding maps. His demographic analysis of the various maps potentially at issue in this case is accurate." [169] at p. 11.

In short, the Court finds the Defendants' position—and their distinction between the Plaintiffs' argument and the proposed testimony—persuasive. Dr. Swanson has not claimed to be an expert in map drawing, nor has he drawn any maps as part of his work in this case. His testimony should be limited to his opinions as to the maps that Cooper has drawn and his opinions pertaining to them.

In reaching this conclusion, the Court is cognizant that the Plaintiffs have pointed to certain qualifications that Dr. Swanson lacks. Those issues appear to be ripe questions for cross-examination. *See*, *e.g.*, *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). However, the Court declines to wholly preclude Dr. Swanson, especially at this stage in the litigation, from testifying altogether as to this area. Additionally, though, the Court realizes that it is conceivable that Dr. Swanson's testimony could at some point go beyond his qualifications. The Court will address any objections that the Plaintiffs might raise on that point in the context of trial.[1]

---

[1] The fact that this case will be tried as a bench trial renders this approach much more practical. Should the Court find that Dr. Swanson's trial testimony exceeds his qualifications, it will not hesitate to strike any portion(s) of it.

4

The Plaintiffs' second point of contention pertains to ecological inference analysis. The Plaintiffs have designated Dr. Traci Burch as an expert—her report states that she is "widely regarded as an expert on political behavior, barriers to voting, and political participation." [164], Ex. 5 at p. 1. Although her report and rebuttal report address multiple issues, of particular importance here is her utilization of a method referred to as King's Ecological Inference analysis ("King's EI") in estimating voter turnout by race. As described in Dr. Burch's rebuttal report, "EI takes information on vote totals and racial demographics in geographic units and uses Bayesian statistical methods to estimate voting behavior—in this case, turnout by race." [164], Ex. 6 at p. 10.

Dr. Swanson's surrebuttal report addresses Dr. Burch's analysis and points to what he believes are flaws in that analysis. For instance, he states that "[i]n constructing her Ecological Inference (EI) model of existing District 1, Dr. Burch erroneously included Adams County (a county in existing District 2) and erroneously excluded Bolivar County (a county in existing District 1)." [164], Ex. 3 at p. 15. Dr. Swanson's surrebuttal report also states that Dr. Burch's findings in regard to King's EI do not change his "opinion that Black Mississippians are able to participate effectively in the political process. As I showed in my initial report, Blacks vote at higher rates than Whites in District 1." *Id.* at p. 15-16. Dr. Swanson also attacks Dr. Burch's analysis regarding the State of Mississippi as a whole because she "express[es] an opinion about White voters relative to non-white voters not an opinion about White voters relative to Black voters." *Id.* at p. 16.

Addressing Dr. Swanson's opinions regarding Dr. Burch's analysis, the Plaintiffs contend:

> Dr. Swanson has no experience using the King's EI Technique relied on by Dr. Burch. His familiarity with the technique was limited to "looking through what's on the website" during his work in this case. The one time he conducted an analysis using an EI-type

5

> technique (not using King's EI) was in the early 1990s, decades ago. He is not a political scientist. He is admittedly not an expert in voting behavior. He admittedly has no experience analyzing voting behavior or using the software environment on which the EI program is run.

[165] at p. 21.

The Defendants emphasize that "Dr. Burch purported to use King's EI to estimate voter turnout by race in District 1, but she did no such thing. The counties she analyzed are not the counties that compose District 1. She excluded Bolivar County, which is in District 1, and she added Adams County, which is in District 2. In short, she analyzed a district that does not exist." [169] at p. 14. The Defendants contend that Dr. Swanson should likewise be permitted to testify regarding his belief that her opinion improperly "express[es] an opinion about White voters relative to non-white voters not an opinion about White voters relative to Black voters." [164], Ex. 3 at p. 16. They take the position that Dr. Swanson has not attacked the mechanics of Dr. Burch's King's EI analysis but, instead, his testimony will be that Dr. Burch's "answers are not helpful because she is asking the wrong questions." [169] at p. 14.

The distinction between the proposed testimony and the underlying mechanics of King's EI is critical. Should Dr. Swanson's trial testimony delve into the mechanics of King's EI, an issue which the Defendants contend he will not testify about and a topic on which he apparently concedes he lacks expertise, the Court will address it at that time (and, as noted above, strike certain testimony if necessary). But to altogether preclude Dr. Swanson from testifying as to this topic is not warranted. As emphasized above, the Plaintiffs will be given ample opportunity to cross-examine Dr. Swanson on his qualifications and expertise (or perceived lack thereof).

*Conclusion*

For the reasons set forth above, the Plaintiffs' Motion [164] is DENIED. The Court will address objections to Dr. Swanson's testimony, if any, as they arise during the course of his testimony.

SO ORDERED this the 23rd day of July, 2024.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE