IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

DYAMONE WHITE, et al.                                                                                    PLAINTIFFS

v.                                                                                    CAUSE NO. 4:22-CV-62-SA-JMV

STATE BOARD OF ELECTION
COMMISSIONERS, et al.                                                                                   DEFENDANTS

ORDER

On February 1, 2024, Magistrate Judge Virden entered an Order [177] granting in part and denying in part the Defendants' request for attorney's fees and expert fees. The Plaintiffs have since filed an Objection and Appeal [178].

*Relevant Background*

Some context as to the procedural history of this case is necessary.[1] On July 19, 2022, the Court entered a Case Management Order [47] which set various discovery-related deadlines including, as relevant here, deadlines for the parties' respective expert designations. On October 3, 2022, the Plaintiffs, in accordance with their deadline to do so, served their expert witness disclosures and initial reports. *See* [66]. Magistrate Judge Virden articulated the following synopsis of those disclosures and opinions:

> [O]n October 3, 2022, Plaintiffs served their expert witness disclosures, including the initial reports of political science professors, Dr. Burch and Dr. Orey. In a nutshell, Dr. Burch's initial report was that Black Mississippians vote at a lower rate of turnout than White Mississippians, and that this lower turnout rate could be explained by the disparity in educational attainment. For her opinion, she relied on the data obtained from the Current Population Survey Voting and Registration Supplement ("CPS data") supplied by the U.S. Census Bureau. In Dr. Orey's initial designation he opined, in relevant part, but offered nothing in support thereof, that

---

[1] Magistrate Judge Virden clearly set forth much of the relevant procedural history in a previous Order [140], and the Court will refer to it throughout this filing.

>the outcome of a formally non-partisan race, like that for the Supreme Court, could not be driven by partisanship.

[140] at p. 2.

The Defendants timely designated Dr. David Swanson as an expert in demography and Dr. Christopher Bonneau as an expert in political science.[2] Magistrate Judge Virden summarized those two experts' reports as follows:

>Dr. Swanson's report, as discussed below, stated that Dr. Burch's expert report contained a flawed analysis of the CPS data on which she relied. Dr. Swanson opined that that data, when properly analyzed, actually supported the finding that Black Mississippians do not have a lower rate of voter turnout than White Mississippians. In Dr. Bonneau's report, in relevant part, he opines, based on data and analyses, that party rather than race explains racially polarized voting in Mississippi. He offers this information in opposition to Dr. Orey's unsupported opinion to the contrary.

[140] at p. 2.

A month later, on February 6, 2023, the Plaintiffs disclosed rebuttal reports of both Dr. Burch and Dr. Orey. In her rebuttal report, Dr. Burch candidly acknowledged multiple errors in her original analysis. She incorrectly included children aged 15-17 in her analysis. Magistrate Judge Virden summarized other issues with Dr. Burch's original report:

>[Dr. Burch] also states that she "calculated total turnout for both racial groups incorrectly." In an apparent effort to rectify these issues with her initial report, Dr. Burch states in her rebuttal report that she now thinks that the CPS data — which she relied upon to support the voter turnout opinions in her initial report — "is not reliable as a benchmark for voter turnout" or "for voter turnout by race." Dr. Burch further asserts in her rebuttal report that "Dr. Swanson's analysis is flawed" as it relates to voter turnout by race because he, too, used the CPS data in formulating his opinions. Further, in her rebuttal report, Dr. Burch states that she has "conducted additional analyses which employed alternative methods of looking at voter turnout by race." These analyses, which include the "logit regression analysis" are new and are purportedly

---

[2] The Defendants served the expert reports on January 6, 2023, which was later than originally ordered in the Case Management Order [47] but consistent with a previously-granted extension. *See* [73].

> predicated on data obtained from the "2020 Cooperative Election Study (CES)" ("CES data"). The CES is a set of data that is nowhere used or identified in Dr. Burch's initial report. The logit regression analysis, as newly employed by Dr. Burch to analyze the newly identified CES data, resulted in new regression tables and probability statistics related to voter turnout by race, and Dr. Burch uses this new analysis in her rebuttal report to bolster her opinion "that Black voter turnout is lower than white turnout." Additionally, Dr. Burch states in her rebuttal report that "[t]o further bolster [her] CES analysis," she is presenting "a second method of estimating the racial gap in turnout" — namely, "ecological inference (EI)" ("EI"). She describes EI as "us[ing] Bayesian statistical methods to estimate voting behavior." No such EI analysis appears in Dr. Burch's initial report, but in her rebuttal report she nevertheless asserts that her initial opinions are supported by her newly performed EI analysis using newly identified CES data. Dr. Burch's "rebuttal" report also purports to bolster her opinion regarding voter wait times, which she asserts affect voter turnout. And again, to do so she relies exclusively on her newly performed analysis of newly identified CES data.

[140] at p. 3-4.

Dr. Orey's rebuttal report similarly added new analyses. He explained in his rebuttal report that he had conducted new EI and empirical analyses which supported and further bolstered his original opinion that the outcome of a non-partisan election could not be driven by partisanship.

The Defendants took issue with these rebuttal reports. They filed a Motion to Strike [119], requesting that the Court fully strike Dr. Burch's rebuttal report and a portion of Dr. Orey's rebuttal report (and his corrected rebuttal report). The Plaintiffs responded in opposition.

On April 14, 2023, Magistrate Judge Virden entered an Order [140] taking a nuanced approach to the issue. In that Order [140], Magistrate Judge Virden concluded (correctly) that the relevant rebuttal opinions exceed the scope of permissible expert rebuttal or supplementation under Rule 26. However, rather than striking the rebuttal opinions, Magistrate Judge Virden proposed a compromise. Her Order [140] concluded as follows:

3

> Accordingly, it is therefore ordered that Plaintiffs shall have seven (7) business days in which to both move for a trial continuance and stipulate that, should it be granted, they will be responsible for reasonable expert fees and costs actually incurred by Defendants in having their experts respond to the untimely rebuttal opinions of Drs. Burch and Orey. Should Plaintiffs fail to do either, or both, the motion to strike the "rebuttal" reports will be granted effective on the 8th business day from the date of this Order.

[140] at p. 13 (emphasis omitted).

When given this option, the Plaintiffs immediately agreed to seek a trial continuance and to pay reasonable fees and costs that the Defendants incurred in having their experts respond to the improper rebuttal opinions. In fact, in their Motion for Continuance [143], the Plaintiffs specifically represented as follows: "Plaintiffs further hereby represent and stipulate, pursuant to and in compliance with the terms of the April 14 Order, that they will be responsible for reasonable expert fees and costs actually incurred in preparing such sur-rebuttal reports." [143] at p. 2.[3]

A continuance was granted, and Dr. Swanson and Dr. Bonneau prepared their surrebuttal reports. The Defendants then, consistent with the Court's previous ruling authorizing them to recover fees and costs, filed a Motion for Payment of Fees and Costs [167]. In the Motion [167], the Defendants sought recovery of attorney's fees and costs associated with the experts' deposition preparation, in addition to the expert fees and costs incurred. The Plaintiffs responded in opposition, taking issue with the request for attorney's fees and costs altogether and additionally contending that the requested expert fees and costs were excessive in amount.

On February 1, 2024, Magistrate Judge Virden entered an Order [177] granting in part and denying in part the Defendants' request. She concluded that the attorney's fees and expenses were noncompensable and declined to award them. As to the expert fees and expenses, Magistrate Judge

---

[3] This stipulation was consistent with an email that Plaintiffs' counsel sent to Magistrate Judge Virden's chambers after the entry of her Order [140] and prior to the filing of the Motion for Continuance [143]. *See* [166], Ex. 1.

Virden reduced one of Dr. Swanson's entries by 5.23 hours but otherwise concluded that the request should be granted. The Plaintiffs were ordered to pay the Defendants a total of $88,735.87 (consisting of $79,529.54 for Dr. Swanson and $9,206.33 for Dr. Bonneau).

The Plaintiffs then filed the present Objection and Appeal [178], requesting that this Court modify Magistrate Judge Virden's ruling pursuant to Rule 72(a) and reduce the total award to $44,829.54 (consisting of $35,623.21 for Dr. Swanson and $9,206.33 for Dr. Bonneau).[4]

*Standard*

"A magistrate judge's non-dispositive order may only be set aside if it 'is clearly erroneous or is contrary to law.'" *Moore v. Ford Motor Co.*, 755 F.3d 802, 806 (5th Cir. 2014) (quoting FED. R. CIV. P. 72(a)); *see* 28 U.S.C. § 636(b)(1)(A) (magistrate judge's nondispositive order may be reconsidered "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law"). "Under Rule 72(a), 'the district court is not permitted to receive further evidence; it is bound by the clearly erroneous rule in reviewing questions of fact.'" *Id*. at 808 n. 15. "The 'clearly erroneous' standard requires that the Court affirm the decision of the magistrate judge unless 'on the entire evidence [the Court] is left with a definite and firm conviction that a mistake has been committed.'" *Magana v. CoreCivic*, 2023 WL 372644 at *2 (N.D. Miss. Jan. 24, 2023) (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948)).

*Analysis and Discussion*

The Plaintiffs take issue with Magistrate Judge Virden's ruling in three different respects, which they frame as follows: "(1) a failure to apply the correct legal standard for assessing the reasonableness of expert fees, which is contrary to law and subject to de novo review; (2) a failure

---

[4] In the interim, the parties entered into a stipulation pursuant to which the Plaintiffs would pay the undisputed amount of $44,829.54 to the Defendants and the remainder of the payment would be stayed subject to the resolution of the appeal. On March 20, 2024, the Court entered an Order [186] to that effect, in accordance with the parties' agreement.

to consider the undisputed fact that Dr. Swanson is not an expert on ecological inference and is not entitled to expert compensation for that work, which constitutes clear error; and (3) a mistake of fact in conflating Dr. Bonneau, a qualified expert billing at $300 per hour, with Mr. Bryan, an unqualified and undisclosed assistant who cannot reasonably bill at $400 per hour, which also constitutes clear error." [178] at p. 5.

The Court will take these issues in turn—beginning with the Plaintiffs' arguments that Magistrate Judge Virden failed to apply the correct legal standard in assessing the reasonableness of expert fees. They contend that Magistrate Judge Virden's analysis as to Dr. Swanson "was limited to the reasonableness of the number of hours he billed in preparing his sur-rebuttal report and in relation to his deposition—without any discussion of the reasonableness of Dr. Swanson's hourly rate." *Id*. at p. 11. The Plaintiffs contend that Magistrate Judge Virden should have utilized the factors that this Court has previously used when analyzing the reasonableness of expert fees. They argue that because the Order [140] did not explicitly address those factors, Magistrate Judge Virden must not have considered them.

The party seeking reimbursement bears the burden of demonstrating that the fee sought is reasonable. *Duke Performance Food Grp., Inc.*, 2014 WL 370442, at *6 (N.D. Miss. Feb. 3, 2014). In *Duke*, the Court articulated the following factors that are among those a reviewing court may consider in determining the reasonableness of requested fees:

(1) the witness's area of expertise;
(2) the education and training required to provide the insight that is sought;
(3) prevailing rates for other comparable experts;
(4) the nature, quality and complexity of the responses provided;
(5) the cost of living in a particular geographic area; and
(6) the fees traditionally charged by the expert on related matters.

*Id*. (citation omitted).

"Ultimately, however, it is in the court's discretion to set an amount that it deems reasonable." *Borel v. Chevron U.S.A. Inc.*, 265 F.R.D. 275, 276 (E.D. La. 2010) (citing *Fisher-Price, Inc. v. Safety 1st, Inc.*, 217 F.R.D. 329, 333 (D. Del. 2003)) (quotation marks omitted).

Concerning the first two factors, the Plaintiffs argue that "the Order does not mention Dr. Swanson's admitted lack of expertise, education, and training on ecological inference. That omission is particularly glaring, given Defendants' admission that Dr. Swanson is not an expert on ecological inference, and Defendants' failure to contest in their reply memorandum [to the original motion] that Dr. Swanson's rate should be zeroed out or substantially reduced." [178] at p. 7.

The Court is unpersuaded. Dr. Swanson possesses extensive credentials which are outlined in his original report. *See* [119], Ex. 5 at p. 5-8. He has over fifty years of demography-related experience and has been qualified and testified as an expert in courts across the country. The Court also finds it noteworthy that Dr. Swanson's original report indicated that he was being compensated at a rate of $400 per hour.[5]

The Plaintiffs make much of the fact that Dr. Swanson lacks certain expertise related to ecological inference. What they fail to emphasize, though, is that ecological inference was not referenced in either Dr. Burch or Dr. Orey's original report. In other words, at the time Dr. Swanson was retained, the Plaintiffs had not brought ecological inference into the analysis. It was only in the rebuttal reports that ecological inference was raised. This is important because, in essence, the Plaintiffs are requesting that the Court reduce Dr. Swanson's hourly rate because of a perceived lack of qualification on this specific topic, while simultaneously disregarding the fact

---

[5] The Plaintiffs made no reference to that hourly rate when stipulating to being responsible for the fees and costs incurred in preparation of the surrebuttal reports. Although they stipulated only to being responsible for the *reasonable* fees and costs and they now take the position that $400 per hour is not reasonable, it is not lost on this Court that they were on notice of that amount being Dr. Swanson's hourly rate when they entered into the stipulation.

7

that it is their own experts' failure which placed Dr. Swanson in the position of preparing a surrebuttal report addressing Dr. Burch and Dr. Orey's new analyses. The Court finds that it would be wholly inequitable to now hold the Plaintiffs' experts' errors against Dr. Swanson and/or the Defendants.[6] Rather, for purposes of this discussion, the Court finds that Dr. Swanson does in fact possess sufficient experience, education, and training to provide expert opinions in this case.

As to the third factor, the Plaintiffs contend that Dr. Swanson's $400 per hour rate is too high, relative to other experts. The Defendants' other expert, Dr. Bonneau, charges a rate of $300 per hour. The Plaintiffs also emphasize that their own expert, William Cooper, charges only $150 per hour. As to Cooper, the Court notes that his area of expertise (map-drawing) is different than Dr. Swanson's. This weighs against that comparison. Furthermore, as to the comparison with Dr. Bonneau, the fact that another expert charges a different rate than another expert does not necessarily render the higher rate improper or unreasonable. Dr. Swanson has fifty years of experience. Although $400 per hour may be on the higher end of a reasonable rate, the Plaintiffs have not made any persuasive argument that it is wholly unreasonable—particularly, again, considering the full circumstances of this case and the way in which it became necessary for Dr. Swanson to prepare a surrebuttal report.

The fourth factor concerns the nature, quality, and complexity of the subject matter. Again, the Plaintiffs attempt to slice this issue too thin. They argue that Dr. Swanson's opinions on ecological inference lack complexity. The Court disagrees. Having reviewed Dr. Swanson's surrebuttal report, the Court wholly rejects the assertion that it lacks in complexity. While the

---

[6] Further, the Court notes that should the Defendants have retained another expert who possesses qualifications satisfactory to the Plaintiffs, it would have necessitated substantial work for that person to get up to speed on the case.

8

Plaintiffs are dissatisfied with Dr. Swanson's knowledge as it pertains to ecological inference, the report does precisely what was anticipated—it attacks Dr. Burch's findings in various ways.

The fifth and sixth factors concern the cost of living in the relevant geographical area and the fees traditionally charged by the expert on related matters. *See Duke*, 2014 WL 370442 at *6. The Court finds that neither of these factors weigh heavily one way or the other.

Setting aside for a moment the particular *Duke* factors and considering this issue as a whole, the Court feels compelled to address the entirety of this case. First, in the Defendants' original Motion to Strike [119], which (necessarily) predated the Court's Order [140] addressing it, Dr. Swanson prepared a declaration pertaining to the work that would be required to rebut Dr. Burch's rebuttal report. In his declaration, Dr. Swanson stated:

> 16. In total, I estimate that it would take between 164 and 180 person-hours to critically examine the results found in Dr. Burch's rebuttal and write up the results. This would be added to the eight person-hours it has already taken in reading her rebuttal, assessing it, and writing up this declaration.

[119], Ex. 14 at p. 8.

As Magistrate Judge Virden noted in her Order [177], this estimate was remarkably close to the actual time that Dr. Swanson took in preparing his surrebuttal report. In other words, neither the rate nor the hours expended should have come as any surprise to the Plaintiffs—they were on notice of both prior to entering into the stipulation. While cognizant that the Plaintiffs' stipulation was to pay *reasonable* fees and costs—not *any* fees and costs—the Court finds no error in Magistrate Judge Virden's analysis and conclusion on that point.

Secondarily, the Court cannot help but note the shifting of the Plaintiffs' position as it pertains to their position in this litigation. At the time they entered into the stipulation, the Plaintiffs

9

had a simple choice—agree to pay the fees and expenses or have their experts' rebuttal reports stricken. They chose the former. The Court finds their current position quite unavailing.

On their second point of contention, the Plaintiffs argue that "awarding Dr. Swanson $400 per hour to perform work related to ecological inference, a subject on which he has no expertise and for which he is no longer being offered as an expert, constitutes clear error." [178] at p. 16.

The Court sees no need to again delve deeply into this issue. As emphasized above, it was the Plaintiffs who placed the Defendants (and Dr. Swanson) in the peculiar position they were in. The Plaintiffs knew that Dr. Swanson was being compensated at $400 per hour and they knew the amount of time that he anticipated the job would take. Their arguments miss the mark.

Lastly, the Plaintiffs argue that Magistrate Judge Virden erred "[b]y failing to correctly identify Dr. Swanson's assistant[.]" [178] at p. 13. They further explain that "the Order repeatedly refers to Dr. Swanson's assistant as 'Dr. Bonneau' when determining the appropriateness of the fees requested for the assistance provided to Dr. Swanson. However, Dr. Bonneau is Defendants' other expert witness—not Dr. Swanson's assistant or associate—and Plaintiffs have not contested the fees that Dr. Bonneau billed for the preparation of his sur-rebuttal report." *Id*. The Plaintiffs take the position that this was not a typographical error and that "[h]ad the Magistrate Judge correctly identified Mr. Bryan as Dr. Swanson's assistant, the court would have needed to assess his qualifications under the *Duke* multi-factor test, and he is not qualified to command $400 per hour under that standard[.]" *Id*. at p. 18.

It cannot be disputed that Magistrate Judge Virden's Order [177] incorrectly refers to Tom Bryan as Dr. Bonneau. However, the Plaintiffs' attempt to connect that typographical error to a "clear error" in the legal sense is unpersuasive. In relevant part, the Order [177] provides:

> In addition to the more general complaints delineated above, Plaintiffs take particular offense to the inclusion of approximately

10

> 54 hours of time spent by Dr. Swanson's assistant, Dr. Bonneau, included for his work on Dr. Swanson's sur-rebuttal report, which, as noted, took a collective of 180.2 hours of preparation. Dr. Bonneau was apparently disclosed as an assistant of Dr. Swanson in Dr. Swanson's original designation.
>
> My reason for allowing Dr. Bonneau's fees is that his role was disclosed in the prior report, Dr. Swanson did not represent in this declaration that all of the person hours necessary to complete this sur-rebuttal report would be exclusively performed by him, and most importantly, had Dr. Swanson been required to accomplish these additional tasks himself, the expense of doing so would apparently be at least as much and might well have taken considerably longer to complete given the other responsibilities about which Dr. Swanson spoke in his declaration. Thus, the expert fees and expenses to prepare the sur-rebuttal reports shall be permitted.

[177] at p. 4-5 (citations omitted).

Other than the use of Dr. Bonneau's name as opposed to Mr. Bryan's name, all other information contained in this analysis is accurate. For instance, Bryan's name—not Dr. Bonneau's name—was disclosed in Dr. Swanson's initial report. *See* [119], Ex. 5 at p. 8. Thus, it is clear that Magistrate Judge Virden simply included the wrong name in the Order [177]. Additionally, Magistrate Judge Virden provided a clear explanation as to why she permitted the Defendants to recover those fees and costs. The Court sees no basis to disturb those findings.

In sum, the Plaintiffs' argument on this point appears to be an attempt to take a minor typographical error and turn it into a reversible one. The argument is rejected.

*Conclusion*

For the reasons set forth above, the Plaintiffs' Objection and Appeal [178] is OVERRULED. The Plaintiffs are responsible for payment of the remainder of the fees and costs outlined in Magistrate Judge Virden's Order [177]. Payment shall be made within thirty (30) days of today's date.

SO ORDERED this the 24th day of July, 2024.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE