IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

| | |
|---|---|
| DYAMONE WHITE; DERRICK SIMMONS; TY PINKINS; CONSTANCE OLIVIA SLAUGHTER HARVEY-BURWELL, *Plaintiffs*, vs. STATE BOARD OF ELECTION COMMISSIONERS; TATE REEVES *in his official capacity as Governor of Mississippi*; LYNN FITCH *in her official capacity as Attorney General of Mississippi*; MICHAEL WATSON *in his official capacity as Secretary of State of Mississippi*. *Defendants*. | 4:22-cv-00062-MPM-JMV |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR THE COURT TO TAKE JUDICIAL NOTICE**

**INTRODUCTION**

Defendants seek judicial notice of unreliable data from the Current Population Survey Voting and Registration Supplement ("CPS"), a self-reported, unverified survey that is known to overstate voter participation, particularly among Black voters. Multiple federal courts in Voting Rights Act cases have found the CPS data to be inaccurate and declined to take judicial notice of it. Indeed, Defendants recently filed an *identical* motion in the Southern District of Mississippi, and the three-judge panel unanimously rejected it. Defendants have made no effort to distinguish that case, and their motion should again be denied.

**BACKGROUND**

The CPS is a monthly survey administered by the U.S. Census Bureau on a wide range of topics; this survey is unrelated to the Decennial Census conducted by the agency every ten years, which is not a survey but a complete count of the U.S. population. Every other year, in even-numbered election years, the CPS includes questions related to voting and registration in a "Voting and Registration Supplement." *About Voting and Registration*, U.S. Census Bureau, https://www.census.gov/topics/public-sector/voting/about.html (last revised Nov. 22, 2021). The data is based on voluntary interview responses to survey questions from a sample of people. *Collecting Data*, U.S. Census Bureau, https://www.census.gov/programs-surveys/cps/technical-documentation/methodology/collecting-data.html (last revised Aug. 9, 2022).

The Census Bureau itself acknowledges that voting data collected through the CPS may contain errors as a result of "population controls," "survey coverage," and "[r]espondent misreporting." *See Frequently Asked Questions (FAQs) About Voting and Registration*, U.S. Census Bureau, https://www.census.gov/topics/public-sector/voting/about/faqs.html (last updated

1

Nov. 22, 2021). The CPS also acknowledges that these errors can result in data that differs from "official vote counts," such as those collected by the Mississippi Secretary of State. *Id*.

Academic researchers have found that the CPS specifically overestimates Black political participation relative to White political participation. *E.g.*, Ex. 1, Stephen Ansolabehere et al., *The Current Population Survey Voting and Registration Supplement Overstates Minority Turnout*, 84 The Journal of Politics 1850 (2022), at 1852 ("[T]he CPS consistently overstates the participation rate among blacks and Hispanics, while it sometimes underestimates participation among whites."); Ex. 2, Ted Enamorado et al., *Validating Self-Reported Turnout by Linking Public Opinion Surveys with Administrative Records*, 83 Public Opinion Quarterly (2019), at 724 (explaining that the "gap between self-reported and actual turnout rates has been consistently exceeding 15 percentage points over the last five US presidential elections"); Ex. 3, Responsive Expert Report of Dr. Traci Burch (Feb. 6, 2023), at 4 (finding "turnout estimates in the CPS are unreliable not just because of overreporting in general, but because of differences in overreporting by race in particular"); Ex. 4, Response of Dr. Traci Burch to Supplemental Response (June 19, 2024), at 2–3 (explaining that the issue with CPS "is that it relies on self-reported voter turnout," which tends to have an "upward bias when compared to data on actual turnout").

## ARGUMENT

A "court may judicially notice a fact that is not subject to reasonable dispute" because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). While the "usual method of establishing adjudicative facts is through the introduction of evidence, ordinarily consisting of the testimony of witnesses," "[i]f particular facts are" "outside the area of reasonable controversy, this process is dispensed with as unnecessary." Advisory Committee Notes to Fed. R. Evid. 201(b) (1972). "A high degree of

indisputability is the essential prerequisite" for taking judicial notice. *Id.*; *see also Weinhoffer v. Davie Shoring, Inc.*, 23 F.4th 579, 583 (5th Cir. 2022). In other words, the "'indisputability' hurdle" of Rule 201(b) requires showing a particular fact is a "self-evident truth[] that no reasonable person could question." *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 (5th Cir. 1998). By contrast, "where there is evidence on both sides of an issue the matter is subject to reasonable dispute." *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 347–48 (5th Cir. 1982).

Here, the CPS survey data on voter turnout and registration data is "subject to reasonable dispute," and its accuracy can "reasonably be questioned." *See* Fed. R. Evid. 201(b). Most notably, the CPS estimates significantly overstate voter participation, with the degree of error varying between racial groups, making it especially questionable and subject to dispute on the precise issue—voter turnout by race—for which Defendants seek to introduce it into the record. And the Census Bureau itself has acknowledged the possibility of overreporting and other biases affecting the results of the CPS.[1]

Federal courts have declined to take judicial notice of CPS data on voter participation because its accuracy is disputed. Indeed, Defendants unsuccessfully filed an identical motion in *MS NAACP v. State Board of Election Commissioners*—also a redistricting case brought under Section 2 of the Voting Rights Act—seeking judicial notice of CPS data for the same purpose of proving voter turnout by race in Mississippi. *See* Mot. for Judicial Notice, *MS NAACP*, No. 3:22-cv-00734-DPJ-HSO-LHS (S.D. Miss. Feb. 7, 2024), ECF Nos. 188, 189. At trial, the three-judge

---

[1] *See* Advisory Committee Notes to Rule 201(b) ("With respect to judicial notice of adjudicative facts, the tradition has been one of caution in requiring that the matter be beyond reasonable controversy" because "fair procedure in resolving disputes of adjudicative facts calls for giving each party a chance to meet" and dispute facts, including via "rebuttal evidence" and "cross-examination").

panel denied Defendants' motion. Ex. 5 at 101:11-102:5, Bench Trial Tr. Vol. 1 (Feb. 26, 2024) ("[T]he Court cannot take judicial notice of the actual data because the accuracy of the data is disputed."). In holding that Rule 201 of the Federal Rules of Evidence does not permit judicial notice of the disputed CPS data, the panel relied on the Census Bureau's own recognition of the CPS's flaws, as well as the academic sources cited by the plaintiffs—the same as those cited by Plaintiffs here. *Id.* ("Under Rule 201, if we were to take judicial notice of the data, then it would have to be considered conclusive, and that's not the case."). The panel took judicial notice only of the fact that "the Census Bureau routinely produces these [CPS] statistics," *id.* (explaining that the CPS is self-authenticating) a fact that Plaintiffs do not dispute.

Other courts, including the Fifth Circuit, have also recognized the inaccuracy of CPS's voter participation data. *Thomas v. Bryant*, 366 F. Supp. 3d 786, 808 (S.D. Miss. 2019) (finding that CPS voter turnout data by race, offered by expert Dr. Peter Morrison, "fail[ed] to persuade" because it "rel[ied] upon known issues with self-reported voting surveys—issues that [ecological inference], in contrast, seeks to overcome"); *Thomas v. Bryant*, 938 F.3d 134, 162–63 (5th Cir. 2019) (upholding same, because CPS data has "serious problems" and "known issues" as a "self-reported voting survey[]"); *Miss. State Chapter, Operation Push, Inc. v. Mabus*, 932 F.2d 400, 412 (5th Cir. 1991) (affirming district court decision to favor expert analysis of voter registration based on official state records, over self-reported Census Bureau survey data on voter participation, due to unreliability of "uncorroborated self-reporting" and to "evidence demonstrating that black respondents to the [census] questionnaire overreported voter registration at a higher rate than white respondents."). Last year, a federal district court in Georgia denied a motion for judicial notice of the same CPS voter turnout data in a Voting Rights Act Section 2 case because "the Census Bureau expressly states" that the CPS "voter turnout and registration data has errors" and because its

4

"accuracy . . . is questioned by the Census Bureau itself." *Alpha Phi Alpha Fraternity Inc. v. Raffensperger*, No. 1:21-CV-5337-SCJ, 2023 WL 5675032, at *3 (N.D. Ga. Aug. 23, 2023). In light of that consistent precedent, there is no question that the CPS's statistics on voter participation are "subject to reasonable dispute" under Rule 201(b).

Meanwhile, Defendants make no effort to apply the indisputability standard in their Memorandum of Law supporting their Motion. ECF No. 218 at 8-10. Instead, Defendants rely on cases where courts have found *other* Census Bureau data to be judicially noticeable. ECF No. 218 at 9-10. The mere fact that the Census Bureau published certain data does not make that data judicially noticeable—especially where the data is an unverified survey that the Census Bureau itself states may contain errors due to misreporting. *See Luna v. Am. Nat'l Ins. Co.*, No. EP-21-CV-00064-FM, 2021 WL 1911339, at *4 (W.D. Tex. May 12, 2021) ("Publication in a government document alone is not necessarily sufficient to render a fact so self-evident that no reasonable person could question it.").

Defendants have not provided a single case where CPS data was subject to judicial notice,[2] instead conflating other Census sources with the CPS. In two of the cases they cite, ECF No. 218 at 10, the Court took judicial notice of data from the American Community Survey ("ACS"), a distinct survey on different issues with different methodology. *See Stringer v. Whitely*, 942 F.3d 715, 722 n.23 (5th Cir. 2019); *League of United Latin Am. Citizens v. Abbott*, 617 F. Supp. 3d 622, 631 n.2

---

[2] Defendants point to the fact that two courts have discussed data from the CPS in the past. ECF No. 218 at 9 (discussing *Shelby Cnty., Ala. v. Holder*, 570 U.S. 529, 535 and *Ala. State. Conf. of NAACP v. Alabama*, 612 F. Supp. 3d 1232, 1290 (M.D. Ala. 2020)). But there is no indication that those courts took judicial notice of the data, and the *Alabama State Conference* case was simply citing the *Shelby County* case. 612 F. Supp. 3d 1232, 1290 (M.D. Ala. 2020). Regardless, since 2013, substantial political science literature has developed on the topic and further demonstrated over-reporting on the CPS whereby Black voters over-report participation at higher rates than White voters, as discussed *supra*.

5

(W.D. Tex. 2022). The ACS has a larger sample size than the CPS and is conducted yearly, and responding to the ACS is required by law (similar to the decennial Census itself), whereas responding to the CPS is not. *See Top Questions About the Survey*, U.S. Census Bureau, https://www.census.gov/programs-surveys/acs/about/top-questions-about-the-survey.html (last revised Mar. 21, 2024); *Methodology*, U.S. Census Bureau, https://www.census.gov/programs-surveys/cps/technical-documentation/methodology.html (last revised June 4, 2024). Further, as discussed above, over-reporting is a known problem when surveys ask about *voting behavior, and voting behavior by race, in particular*. The data in the judicial notice cases Defendants cite involved demographics and economic information for which there is no such known problem, not voting behavior. *Stringer*, 942 F.3d at 722 n.23 (ACS data about frequency of moving in one's lifetime); *League of United Latin Am. Citizens*, 617 F. Supp. 3d at 631 n.2 (ACS data about Hispanic population in an area); *Mississippi ex rel. Hood v. AU Optronics Corp.*, 876 F. Supp. 2d 758 at 773-74 n.13 (S.D. Miss. 2012) (data about mobile phone ownership); *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 572 (5th Cir. 2011) (data about rates of relocation).[3]

The accuracy of the CPS data on voter participation by race is significantly disputed on the exact issue for which Defendants seek to rely on it: it understates White turnout and registration and overstates Black turnout and registration, likely making racial disparities in voter turnout and registration appear smaller than they are. *See, e.g.*, Ex 1, *supra*. Defendants are free to try to elicit

---

[3] In the remaining cases Defendants cite, courts took notice of classically judicially noticeable facts that were virtually irrefutable and did not require additional inferences, nor complex or controversial survey data. *United States v. Berrojo*, 628 F.2d 368 at 369 (5th Cir. 1980) (judicial notice of a drug's presence on the Schedule II controlled substance list); *Cannon v. Nash*, No. 3:17CV488-DPJ-FKB, 2019 WL 2110594, at *1 (S.D. Miss. Apr. 29, 2019) (judicial notice only of the fact of a prisoner's release based on a government website).

testimony regarding the CPS data. But such controversial, disputed data is not properly the subject of judicial notice.[4] The motion should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion for the Court to Take Judicial Notice. If the motion is granted, Plaintiffs reserve all rights to elicit expert testimony from Dr. Burch on the unreliability of the CPS voter participation data.

---

[4] Defendants also ask for admission of a table summarizing the relevant data pursuant to Federal Rule of Evidence 1006. ECF No. 218 at 10. Should this Court take judicial notice of the CPS survey data, which it should not, Plaintiffs do not object to the use of a summary table in the record.

/s/ Jonathan Youngwood
SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood (Miss. Bar No. 106441)
425 Lexington Avenue
New York, NY 100017
(212) 455-2000
*jyoungwood@stblaw.com*


\* Admitted *pro hac vice*

SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood (Miss. Bar No. 106441)
Janet Gochman*
Noah Gimbel*
Kate Lambroza*
425 Lexington Avenue
New York, NY 100017
(212) 455-2000
*jgochman@stblaw.com*
*noah.gimbel@stblaw.com*
*kate.lambroza@stblaw.com*

ACLU FOUNDATION
Ari J. Savitzky*
Sophia Lin Lakin*
Ming Cheung*
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2500
*asavitzky@aclu.org*
*slakin@aclu.org*
*mcheung@aclu.org*

AMERICAN CIVIL LIBERTIES UNION
OF MISSISSIPPI FOUNDATION
Joshua Tom (Miss. Bar No. 105392)
101 South Congress Street
Jackson, MS 39201
(601) 354-3408
JTom@aclu-ms.org

SOUTHERN POVERTY LAW CENTER
Jade Olivia Morgan (Miss. Bar No. 105760)
Leslie Faith Jones (Miss. Bar No. 106092)
111 East Capitol Street, Suite 280
Jackson, MS 39201
(601) 948-8882
*jade.morgan@splcenter.org*
*leslie.jones@splcenter.org*

Bradley E. Heard*
Ahmed Soussi*
Sabrina Khan*
150 E Ponce de Leon Avenue, Suite 340
Decatur, GA 30030

(470) 521-6700
*bradley.heard@splcenter.org*
*ahmed.soussi@splcenter.org*
*sabrina.khan@splcenter.org*

*Attorneys for Plaintiffs*

9

## CERTIFICATE OF SERVICE

    I, Jonathan Youngwood, hereby certify that on August 1, 2024, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all parties on file with the Court.

/s/ Jonathan Youngwood
Jonathan Youngwood
