**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**DYAMONE WHITE; DERRICK
SIMMONS; TY PINKINS;
CONSTANCE OLIVIA SLAUGHTER
HARVEY-BURWELL**                                                   **PLAINTIFFS**

**VS.**                              **CIVIL ACTION NO. 4:22-cv-00062-SA-JMV**

**STATE BOARD OF ELECTION
COMMISSIONERS; TATE REEVES**
*in his official capacity as Governor of
Mississippi*; **LYNN FITCH** *in her
official capacity as Attorney General of
Mississippi*; **MICHAEL WATSON** *in
his official capacity as Secretary of
State of Mississippi*                                              **DEFENDANTS**

---

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF DEFENDANTS' RESPONSE
TO PLAINTIFFS' MOTION FOR JUDICIAL NOTICE**

---

**INTRODUCTION**

Consistent with the governing standard of inquiry in this Section 2 Voting Rights Act case, the Court should take judicial notice of the entirety of the 2024 Mississippi Supreme Court Central District General Election results—not just the vote counts for Kitchens and Branning as requested by Plaintiffs. Viewed in their entirety, the 2024 Central District election results do not support a violation of Section 2. To the contrary, they reaffirm that black voters in the Central District have an equal opportunity to participate in the political process and elect Supreme Court Justices of their choice.

The 2024 election results submitted by Plaintiffs demonstrate that the majority of votes cast in the Central District contest in the 2024 General Election were for black and black-preferred

candidates. Those votes were split three ways among incumbent Jim Kitchens—an undisputed black-preferred candidate—and challengers Ceola James and Abby Robinson, both of whom are black. These results are a strong indication that if black voters had cast their votes cohesively for a single candidate in 2024, that candidate would have won election to Position 3 on the Supreme Court, obviating any need for a runoff. And even in the Runoff Election held two days before Thanksgiving, the black-preferred candidate in that contest, Kitchens, lost his seat on the Court by less than half a percentage point in a down-to-the-wire nailbiter—hardly a sign that black-preferred candidates are not equally competitive in the Central District.

Section 2 guarantees opportunity—not electoral success. It does not protect minority voters from political fratricide. Where black voters abandon political cohesion in a fractured field, the law provides no remedy. For these reasons and those set forth herein, the Court should take judicial notice of the entirety of the 2024 Central District General Election results [Dkt. #258-1 at 3]; reject any notion that the 2024 Supreme Court elections are probative of any Section 2 violation; and proceed to enter judgment for Defendants.

## ARGUMENT

## I. VIEWED IN THEIR ENTIRETY, THE 2024 CENTRAL DISTRICT ELECTION RESULTS DO NOT SUPPORT A SECTION 2 VIOLATION.

### A. The Court should judicially notice the entirety of the 2024 Central District General Election results—not just the vote counts for Kitchens and Branning.

Defendants do not dispute that this Court may judicially notice the results of the 2024 Mississippi Supreme Court elections as certified by the State Board of Election Commissioners ("SBEC"). However, Plaintiffs ask this Court to take judicial notice of only two facts regarding the Central District election results from the General Election: (1) that Branning received 41.34% of the vote for Position 3; and (2) that Kitchens received 35.58% of the vote for Position 3. Dkt.

2

#259 at 3.  In keeping with its charge to consider the "totality of the circumstances" and conduct the "intensely local appraisal" required by *Gingles*, see *N.A.A.C.P. v. Fordice*, 252 F.3d 361, 367 (5th Cir. 2001), this Court's consideration of the Central District election results should not be so circumscribed.  Rather, this Court should judicially notice the reported vote totals amassed by *all five candidates* for Central District Position 3 in the 2024 General Election.  Those vote totals appear in the same source document that Plaintiffs submitted in support of their motion for judicial notice—*viz.*, the 2024 election results certified by the SBEC [Dkt. #258-1 at 3]—as follows:

| **Candidate:** | **Reported Votes:** | **Percentage of Total:** |
|---|---|---|
| Jennifer B. Branning | 147,892 | 41.34% |
| Byron Carter | 25,390 | 7.10% |
| Ceola James | 38,345 | 10.72% |
| Jim Kitchens | 127,266 | 35.58% |
| Abby Gale Robinson | 18,824 | 5.26% |
| TOTAL: | 357,717 | 100.00% |

When the Court considers the vote totals for all five candidates—which it must do given the requisite scope of inquiry in a Section 2 case, see *Fordice*, *supra*—it becomes apparent that Jim Kitchens, Ceola James, and Abby Robinson together garnered 184,435 of the 357,717 total votes, or **51.56%** of the total vote.

Plaintiffs' expert, Dr. Orey, testified that Kitchens is a black-preferred candidate.  Trial Tr. Vol. 2 at 227, 246.  Defendants' expert, Dr. Bonneau, confirmed in his testimony the undisputed fact that James is black.  Trial Tr. Vol. 5 at 808.  While Robinson's racial identity is not in the trial record, it cannot be disputed that her racial identity is also black, as may be confirmed by

reference to (a) any one of many campaign-related news items appearing in the public domain[1] or (b) a federal court decision related to a claim that Robinson brought against a bank, alleging that it racially discriminated against her in its lending practices.[2]  Thus, the majority of votes cast in the Central District contest in the 2024 General Election were for black and black-preferred candidates.

**B.** **The 2024 Central District election results reaffirm that black voters in the Central District have an equal opportunity to participate in the political process and elect Supreme Court Justices of their choice.**

Viewed in their entirety, the 2024 Central District election results do not support the notion that black voters "have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice."  52 U.S.C. § 10301(b).  All that can reasonably be inferred from the General Election is that black voters split their votes three ways— *viz.*, among Kitchens, James, and Robinson as black and black-preferred candidates.

As noted above, Plaintiffs' expert, Dr. Orey, testified that Kitchens is a black-preferred candidate.  Trial Tr. Vol. 2 at 227, 246.  Dr. Orey further testified that "Blacks overwhelmingly support the Black candidates when given the option," *id.* at 228, and "typically Whites vote against Black candidates where they usually lose," *id.* at 250.  If—as Plaintiffs contend it should be—Dr. Orey's testimony on these points is credited, it is reasonable to conclude that the votes received in the General Election by Kitchens, James, and Robinson were the product of a three-way split of the black vote in that contest.  The General Election results thus demonstrate that if black voters had coalesced around a *single* candidate, that individual would have won a majority of votes—and

---

[1] *See, e.g.*, https://www.youtube.com/watch?v=RCpa6H-rSIk.

[2] *See Robinson v. RiverHills Bank*, Civil Action No. 3:21-CV-195-DPJ-LGI, 2022 WL 4234269, at *1-2, 8 (S.D. Miss. Aug. 16, 2022).

the Position 3 seat—during the General Election, thereby negating any need for the Runoff Election.

Where, as here, it is reasonable to infer a three-way split of the black vote, there is "no evidence of minority political cohesiveness." *See League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 986 F.2d 728, 744 n.5 (5th Cir. 1993). *See also Levy v. Lexington County, S.C.*, 589 F.3d 708, 720 (4th Cir. 2009) (reaffirming that "minority voters may be racially polarized but still lack political cohesion if their votes are split among several different minority candidates for the same office"). And minority political cohesion ("*Gingles II*") is an essential element of a Section 2 claim. *Fusilier v. Landry*, 963 F.3d 447, 455 (5th Cir. 2020). *See also Agee v. Benson*, No. 1:22-cv-272, 2023 WL 10947213, at *5 (W.D. Mich. Aug. 29, 2023) (reaffirming that "where black voters are split between multiple candidates," they "thus lack political cohesion," and "plaintiffs cannot rely on polarization to show cohesion").

The most logical reason that a black-preferred candidate did not win the General Election in the Central District is because black voters did not vote cohesively in that district. And Section 2 does not provide a remedy for lack of minority political cohesion. To the contrary, minority political cohesion is a requisite element for a prima facie case under Section 2. *See Fusilier*, 963 F.3d at 455. Plaintiffs have cited no authority for the proposition that Section 2 requires a court to load enough black voters into a given district to ensure that multiple black and black-preferred candidates can compete against each other and still win. That is simply not the law.

Even in the Runoff Election between Branning and Kitchens, Branning won by only 1,402 votes—that is, by just over half a percentage point—taking 50.55% of the total vote to Kitchens' 49.45%. Dkt. #258-1 at 4. Branning's razor-thin margin of victory in the Runoff Election hardly proves that "the white majority votes sufficiently as a bloc to enable it . . . *usually* to defeat the

minority's preferred candidate." *Thornburg v. Gingles*, 478 U.S. 30, 51 (1986) (emphasis added). For one thing, the Runoff Election is only one election contest—it does not and cannot establish any pattern regarding what "usually" occurs, as required by *Gingles*.

The Court should also consider that runoff elections are themselves inherently <u>un</u>usual. Especially one held on November 26, 2024—three weeks after a Presidential election and two days before Thanksgiving. *See* Dkt. #258-1 at 4. As Plaintiffs' documentary submission bears out, see *id.* at 3-4, overall turnout in the Runoff Election was down 65% from the General Election Central District contest held just three weeks prior. And Kitchens garnered 121,750 less votes in the Runoff Election than did Kitchens, James, and Robinson (i.e., the black-preferred and black candidates) in the General Election. *See id.* On this record—months after trial—that is all that can be said with any degree of certainty about the Runoff Election. Everything else is speculation.

As a final observation flowing from Plaintiffs' documentary submission, the Court should note that Kitchens' defeat in the Central District Runoff Election—like Beam's defeat in the Southern District General Election, see *id.* at 6—cuts against Plaintiffs' narrative, which they repeated throughout the trial, that Mississippi Supreme Court contests present insurmountable obstacles of incumbency. That was obviously not the case in 2024, when two incumbents fell to challengers.

Viewed in their entirety as part of the Court's "intensely local appraisal" of the "totality of circumstances" required by law, the 2024 Central District election results do not support a Section 2 violation. To the contrary, they further illustrate that the Central District lines, as currently configured, provide for highly competitive Supreme Court elections in which black voters—

should they opt to vote cohesively—have an equal opportunity to participate in the political process and elect Supreme Court Justices of their choice. That is all Section 2 requires.[3]

## CONCLUSION

For all these reasons, the Court should take judicial notice of the entirety of the 2024 Central District General Election results [Dkt. #258-1 at 3]; reject any notion that the 2024 Supreme Court elections are probative of any Section 2 violation; and proceed to enter judgment for Defendants.

THIS the 23rd day of January, 2025.

Respectfully submitted,

STATE BOARD OF ELECTION
COMMISSIONERS, TATE REEVES, IN HIS
OFFICIAL CAPACITY AS GOVERNOR OF
MISSISSIPPI, LYNN FITCH, IN HER OFFICIAL
CAPACITY AS ATTORNEY GENERAL OF
MISSISSIPPI, AND MICHAEL WATSON, IN HIS
OFFICIAL CAPACITY AS SECRETARY OF
STATE OF MISSISSIPPI, DEFENDANTS

By:     LYNN FITCH, ATTORNEY GENERAL
          STATE OF MISSISSIPPI

By:     s/Rex M. Shannon III
          REX M. SHANNON III (MSB #102974)
          Special Assistant Attorney General

REX M. SHANNON III (MSB #102974)
BETH WINDSOR USRY (MSB #99267)
JUSTIN L. MATHENY (MSB #100754)
STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
CIVIL LITIGATION DIVISION
Post Office Box 220
Jackson, Mississippi  39205-0220

---

[3] "The purpose of section 2 is not to guarantee a minority group that it will elect candidates of its choice . . . . [Citations omitted.]  [T]he 'potential to elect' is all that is required under section 2." *Westwego Citizens for Better Gov't v. City of Westwego*, 946 F.2d 1109, 1117 n.9 (5th Cir. 1991) (quoting *Gingles*, 478 U.S. at 50 n.17).

Tel.:  (601) 359-4184
Fax:  (601) 359-2003
rex.shannon@ago.ms.gov
beth.usry@ago.ms.gov
justin.matheny@ago.ms.gov

MICHAEL B. WALLACE (MSB #6904)
CHARLES E. COWAN (MSB #104478)
WISE CARTER CHILD & CARAWAY, P.A.
Post Office Box 651
Jackson, Mississippi  39205-0651
Tel.:  (601) 968-5500
Fax:  (601) 944-7738
mbw@wisecarter.com
chc@wisecarter.com

ATTORNEYS FOR DEFENDANTS STATE
BOARD OF ELECTION COMMISSIONERS,
TATE REEVES, IN HIS OFFICIAL CAPACITY
AS GOVERNOR OF MISSISSIPPI,  LYNN
FITCH, IN HER OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF MISSISSIPPI, AND
MICHAEL WATSON, IN HIS OFFICIAL
CAPACITY AS SECRETARY OF STATE OF
MISSISSIPPI

## CERTIFICATE OF SERVICE

I, Rex M. Shannon III, Special Assistant Attorney General and one of the attorneys for the above-named State Defendants, do hereby certify that I have this date caused to be filed with the Clerk of the Court a true and correct copy of the above and foregoing via the Court's ECF filing system, which sent notification of such filing to all counsel of record.

THIS the 23rd day of January, 2025.

s/Rex M. Shannon III
REX M. SHANNON III