**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

DYAMONE WHITE; DERRICK SIMMONS;
TY PINKINS; CONSTANCE OLIVIA SLAUGHTER
HARVEY-BURWELL,

        *Plaintiffs*,

        vs.

STATE BOARD OF ELECTION COMMISSIONERS;
TATE REEVES, *in his official capacity as Governor of Mississippi*; LYNN FITCH, *in her official capacity as Attorney General of Mississippi*; MICHAEL WATSON, *in his official capacity as Secretary of State of Mississippi,*

        *Defendants,*

**CIVIL ACTION NO.**
**4:22-cv-62-SA-JMV**

**PLAINTIFFS' BRIEF REGARDING REMEDIAL ISSUES**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION .......................................................................................................... 1

ARGUMENT ................................................................................................................. 3

    I.   THE COURT SHOULD ALLOW THE LEGISLATURE THE 2026
        LEGISLATIVE SESSION TO DRAW A LAWFUL MAP ......................................... 4

    II.  THE COURT SHOULD ORDER SPECIAL ELECTIONS FOR
        NOVEMBER 2026. ........................................................................................... 5

        A.  The Severity and Nature of the VRA Violation Warrant Special
            Elections ........................................................................................................ 7

        B.  Special Elections in November 2026 Pose Minimal-to-No Burden on
            Ordinary State Processes .............................................................................. 10

        C.  Plaintiffs' Proposed Remedy Accommodates the State's Potential
            Interests. ....................................................................................................... 12

CONCLUSION ............................................................................................................. 14

CERTIFICATE OF SERVICE ..................................................................................... 17

ADDENDUM ................................................................................................................. I

# TABLE OF AUTHORITIES

**Cases**

*Alpha Phi Alpha Fraternity Inc. v. Raffensperger*,
No. 1:21-CV-05337-SCJ, 2023 WL 9424682 (N.D. Ga. Dec. 28, 2023) ................................ 3

*Arbor Hill Concerned Citizens v. County of Albany*,
357 F.3d 260 (2d Cir. 2004) ................................................................................................. 6

*Bell v. Southwell*,
376 F.2d 659 (5th Cir. 1967) ............................................................................................ 6, 8

*Clark v. Roemer*,
777 F. Supp. 471 (M.D. La. 1991) ........................................................................................ 6

*Farmhand, Inc. v. Anel Engineering Industries, Inc.*,
693 F.2d 1140 (5th Cir. 1982) .............................................................................................. 3

*Folson v. Fulco*,
305 So. 3d 406 (Miss. 2020) ................................................................................................. 6

*Ketchum v. City Council of City of Chicago, Ill.*,
630 F. Supp. 551 (N.D. Ill. 1985) ......................................................................................... 6

*Martin v. Mabus*,
700 F. Supp. 327 (S.D. Miss. 1988) ...................................................................................... 6

*Mississippi State Conference of NAACP v. State Board of Election Commissioners*,
739 F. Supp. 3d 383 (S.D. Miss. 2024) ......................................................................... passim

*Mississippi State Conference of NAACP v. State Board of Election Commissioners*,
741 F. Supp. 3d 509 (S.D. Miss. 2024) ...................................................................... 1, 5, 10

*Mississippi State Conference of NAACP v. State Board of Election Commissioners*,
782 F. Supp. 3d 349 (S.D. Miss. 2025) ..................................................................... 5, 10, 11

*Nation v. San Juan County*,
2017 WL 6547635 (D. Utah Dec. 21, 2017), *aff'd* 929 F.3d 1270 (10th Cir. 2019) ............... 6

*North Carolina v. Covington*,
581 U.S. 486 (2017) ......................................................................................................... 1, 7

*Personhuballah v. Alcorn*,
155 F. Supp. 3d 552 (E.D. Va. 2016) ................................................................................... 3

*Taylor v. Monroe County Board of Supervisors*,
421 F.2d 1038 (5th Cir. 1970) ...................................................................................... passim

*Tucker v. Burford*,
603 F. Supp. 276 (N.D. Miss. 1985) ................................................................................. 6

*Watkins v. Fordice*,
791 F. Supp. 646 (S.D. Miss. 1992) ................................................................................. 6

*White v. State Board of Election Commissioners*,
--- F. Supp. 3d ----, No. 4:22-CV-62-SA-JMV, 2025 WL 2406437 (N.D. Miss. Aug.
19, 2025) ................................................................................................................... passim

*Williams v. City of Dallas*,
734 F. Supp. 1317 (N.D. Tex. 1990) ................................................................................ 6

*Wright v. Sumter County Board of Elections & Registration*,
361 F. Supp. 3d 1296 (M.D. Ga. 2018), *aff'd*, 979 F.3d 1282 (11th Cir. 2020)....................... 6

## Statutes

52 U.S.C. § 10301 ................................................................................................. passim

52 U.S.C. § 20301 ......................................................................................................... 5

Miss. Code Ann. § 23-15-849 ......................................................................................... 4

Miss. Code Ann. § 23-15-991 ....................................................................................... 13

Miss. Code Ann. § 23-15-993 ....................................................................................... 13

Miss. Const. § 149 ...................................................................................................... 8, 12

## Other Authorities

Ballotpedia,
*Mississippi Elections, 2026*, https://ballotpedia.org/Mississippi_elections,_2026 ................ 11

Frank Corder,
*Trump Nominates Two Mississippi Supreme Court Justices to Federal Court*,
Magnolia Tribune (Aug. 12, 2025), https://magnoliatribune.com/2025/08/12/trump-
nominates-two-mississippi-supreme-court-justices-to-federal-court/ ..................................... 4

Mississippi Legislature,
*Timetable for Processing Legislation – 2026*,
https://billstatus.ls.state.ms.us/htms/timetable2026.pdf ......................................................... 5

Mississippi Secretary of State,
*Election Calendar 2025-2026*,
https://www.sos.ms.gov/content/documents/ed_pubs/pubs/2025SC/Elections%20Cale
ndar%20State%20&%20County%20Officials_2025-5.pdf ....................................................11

State of Mississippi Judiciary,
*Investiture of Kenny Griffis Set for Jan. 3 at Supreme Court Justice* (Dec. 20, 2021),
https://courts.ms.gov/news/2021/12.20.21Griffis investiture.php .......................................... 13

State of Mississippi Judiciary,
*Justice Ishee Sworn in To Begin New Term on Supreme Court* (Jan. 7, 2020),
https://courts.ms.gov/news/2020/01.07.20Ishee%20oath%20of%20office.php..................... 13

State of Mississippi Judiciary,
*Chief Justice Randolph, Presiding Justice King and Justice
Coleman Sworn in to New Terms* (Jan. 4, 2021), https://courts.ms.gov/news/2021/01.0
4.21Justices%20take%20oaths.php ...................................................................................... 8

State of Mississippi Judiciary,
*Justice Kenny Griffis Sworn in for New Term* (Jan. 4, 2022),
https://courts.ms.gov/news/2022/01.04.22Justice%20Griffis%20oath%20MKR.php ............ 8

State of Mississippi Judiciary,
*Supreme Court Justices to Be Sworn in on Jan. 6, 2025* (Dec. 27,
2024), https://courts.ms.gov/news/view_news_page.php?article=3058&name=Supre
me%20Court%20Justices%20to%20be%20sworn%20in%20on%20Jan.%206,%2020
25....................................................................................................................................... 8

U.S. Senator Roger Wicker,
*Senator Wicker Statement on Mississippi U.S. District Court Nominations* (Aug. 14,
2025), https://www.wicker.senate.gov/2025/8/senator-wicker-statement-on-
mississippi-u-s-district-court-nominations ........................................................................... 4

## INTRODUCTION

After an eight-day trial featuring seventeen witnesses, voluminous evidence, and extensive argument, this Court ruled that "the current Mississippi Supreme Court map," which has been in effect since 1987, "violates Section 2 of the Voting Rights Act." *White v. State Bd. of Election Comm'rs*, --- F. Supp. 3d ----, No. 4:22-CV-62-SA-JMV, 2025 WL 2406437, at *53 (N.D. Miss. Aug. 19, 2025). The Court enjoined the use of the current Supreme Court lines, *id.*, and has asked the parties to set forth their positions on remedial issues, including on timing and the need for special elections, Order, ECF No. 267 (Sept. 10, 2025).

Plaintiffs propose that the Court follow the path marked by the three-judge panel in the *Mississippi NAACP* case. There, following a Section 2 liability determination, the Court (1) determined that special elections to fill out the remainder of the four-year legislative term were warranted in the areas where unlawful vote dilution had been established, applying the standard set forth in *North Carolina v. Covington*, 581 U.S. 486 (2017), and consistent with Fifth Circuit case law, and (2) gave the Legislature until the end of the following year's legislative session to draw lawful remedial district lines for the affected areas. *See Miss. State Conf. of NAACP v. State Bd. of Election Comm'rs* (*MS NAACP I*), 739 F. Supp. 3d 383, 466 (S.D. Miss. 2024) (ordering special elections); *Miss. State Conf. of NAACP v. State Bd. of Election Comm'rs* (*MS NAACP II*), 741 F. Supp. 3d 509, 515 (S.D. Miss. 2024) (timing of remedial process).

The need for special elections is even greater in this case. In the state legislative case, the three-judge court concluded that special elections were warranted because, "if left as is, black voters in each affected district will be served for a full [four-year] term by a legislator chosen in an election that diluted black votes. The harm is localized, but it is severe to the affected voters. This is the exact kind of injury that warrants a remedy." 739 F. Supp. 3d at 465. Here, unless this

Court orders special elections, Black voters whose voting strength is unlawfully diluted will not have a remedy *until the 2030s*. District 1, where most of the injured voters reside, just elected a new Justice to the Court (Place 3), whose term will not expire until 2033. Another Justice representing that district (Place 1) is currently serving a term that expires in January 2031, more than five years from now. While the Court could order staggered special elections for *all* seats on the Mississippi Supreme Court to take place in the coming years, it should at a minimum order special elections to fill out the remaining term for those two seats. Limiting special elections to the two District 1 seats where the bulk of the term is yet to be served would be the least intrusive way to mitigate most of the harm from the unlawful vote dilution proven at trial, preventing those severe injuries from persisting into the 2030s while minimizing turnover on the Supreme Court.

In terms of timing, this case is essentially on the same track as the state legislative case, in which there was also a summertime liability determination. The next Supreme Court election is currently set to take place in November 2026 as part of the statewide general election, so new lines must be in place for that contest. Giving the Legislature until the end of the 2026 legislative session (*i.e.*, until early April) would provide ample opportunity to craft valid remedial plans and determine a special election calendar culminating in special elections in November concurrent with the one already scheduled, just as the Legislature did in the 2025 legislative session for remedial state legislative districts. That timing would minimize any administrative burdens or disruptions and allow for expedited proceedings to adjudicate any objections to the remedial plans.

Plaintiffs' proposed relief is well within the Court's equitable powers and is necessary to remedy the severe and longstanding violation of the Voting Rights Act. The Court should accordingly order special elections to correct the Section 2 violation proven at trial.

## ARGUMENT

In the remedy phase, "the [district] court's first and foremost obligation" after finding liability is "to correct the Section 2 violation." *White*, 2025 WL 2406437, at *53; *MS NAACP I*, 739 F. Supp. 3d at 464 (quoting *U.S. v. Brown*, 561 F.3d 420, 435 (5th Cir. 2009)) (citation modified). The Court sits in equity and must "exercise its traditional equitable powers to fashion the relief so that it completely remedies the prior dilution of minority voting strength." *Id.*

Defendants' filing of a notice of appeal on September 17, 2025, ECF No. 269, does not divest this Court of jurisdiction to implement a remedy. *See, e.g.*, *Farmhand, Inc. v. Anel Eng'g Indus., Inc.*, 693 F.2d 1140, 1145 (5th Cir. 1982). Courts routinely advance the remedial phase of a Section 2 case and implement the remedy before any appeals of the underlying liability determination have been concluded. *See, e.g.*, *Alpha Phi Alpha Fraternity Inc. v. Raffensperger*, No. 1:21-CV-05337-SCJ, 2023 WL 9424682, at *5 (N.D. Ga. Dec. 28, 2023); *Personhuballah v. Alcorn*, 155 F. Supp. 3d 552 (E.D. Va. 2016). Indeed, Defendants, in seeking an abeyance of the deadlines in the appellate proceedings in this case before the Fifth Circuit, directly acknowledged that this Court may proceed with the implementation of a remedy. Motion of Defendants-Appellants to Place Appeal in Abeyance at 11, *White v. State Bd. of Election Comm'rs*, No. 25-60506, Doc. 11 (5th Cir. Sep. 23, 2025) ("[A]n abeyance here would not disturb the district court's ability and flexibility to press forward with a remedial phase of the case, if it chooses to do so, in the coming months.").

Here, a just and equitable remedy that would correct the Section 2 violation would be to give the Legislature the 2026 session to draw lawful remedial plans, and to order special elections—at a minimum in District 1, Place 1 and District 1, Place 3—to take place in November 2026.

## I. THE COURT SHOULD ALLOW THE LEGISLATURE THE 2026 LEGISLATIVE SESSION TO DRAW A LAWFUL MAP.

Independent of this litigation, as many as three justices of the Supreme Court will already be on the ballot in 2026, in addition to congressional and other candidates across the state. Justice David Ishee in District 2 will be up for re-election. *See* Addendum (chart listing information about election timetables for all nine seats on the Mississippi Supreme Court); *see also infra* n.8. Moreover, Justice Robert Chamberlin (District 3, Place 1) and Justice James Maxwell (District 3, Place 2), have been nominated for the federal bench,[1] and if confirmed in the coming months, their vacancies will initially be filled by gubernatorial appointment, subject to a special election no less than nine months later. *See* Miss. Code Ann. § 23-15-849(2) ("If half or more than half of the term remains, vacancies in the office of justice of the Supreme Court or judge of the Court of Appeals shall be filled for the unexpired term by the qualified electors at the next regular election for state officers or for representatives in Congress occurring more than nine (9) months after the vacancy to be filled occurred . . . . "). Such elections would likely be held in November 2026 as well.

November 2026 Supreme Court elections cannot be run using the unlawful 1987 plans, which have been enjoined by the Court. Accordingly, new district lines must be in place in advance of the November 2026 election.

The Court should give the Legislature the 2026 legislative session to fashion lawful Supreme Court lines, which is the *maximum* amount of time that can be allowed while ensuring the creation of new lines in advance of the November 2026 election, and thus the most deferential

---

[1] U.S. Senator Roger Wicker, *Senator Wicker Statement on Mississippi U.S. District Court Nominations* (Aug. 14, 2025), https://www.wicker.senate.gov/2025/8/senator-wicker-statement-on-mississippi-u-s-district-court-nominations (last visited Aug. 25, 2025); Frank Corder, *Trump Nominates Two Mississippi Supreme Court Justices to Federal Court*, MAGNOLIA TRIB. (Aug. 12, 2025), https://magnoliatribune.com/2025/08/12/trump-nominates-two-mississippi-supreme-court-justices-to-federal-court/ (last visited Aug. 25, 2025).

option vis-à-vis the Legislature's important role. Notably, that time would allow for a remedial schedule consistent with the state legislative case. *See MS NAACP II*, 741 F. Supp. 3d at 515. The Legislature will adjourn *sine die* on April 5, 2026. *See* Mississippi Legislature, *Timetable for Processing Legislation – 2026*, https://billstatus.ls.state.ms.us/htms/timetable2026.pdf. If the Legislature does not produce a plan by that date or otherwise indicates it will not do so, the parties can submit proposed plans and election calendars to this Court in short order, and the Court can hold a hearing or otherwise evaluate the parties' submissions and issue a final remedial order. If the Legislature does produce a plan, then objections (if any) may be raised and adjudicated on an expedited basis, as in the state legislative case. *E.g.*, *Mississippi State Conf. of NAACP v. State Bd. of Election Comm'rs* (*MS NAACP III*), 782 F. Supp. 3d 349, 360–61 (S.D. Miss. 2025) (approving remedial plans and special election schedule following remedial phase).

Especially because there is no primary contest for Mississippi Supreme Court elections, finalizing the district lines by June 2026 would allow more than enough time for the candidate qualification process, ballot creation, and compliance with the 45-day mail-ballot deadline under the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. § 20301 *et seq.* Indeed, in the state legislative case, a similar amount of time was sufficient to accommodate primary elections in advance of the November 2025 general election. *See, e.g.*, *MS NAACP III*, 782 F. Supp. 3d at 360–61.

## II. THE COURT SHOULD ORDER SPECIAL ELECTIONS FOR NOVEMBER 2026.

In addition to the already-scheduled Supreme Court elections, the Court should also order special elections for November 2026 under the revised lines. "It is within the scope of [the Court's] equity powers to order a governmental body to hold special elections to redress violations of the VRA." *Arbor Hill Concerned Citizens v. Cnty. of Albany*, 357 F.3d 260, 262 (2d Cir. 2004)

5

(collecting cases); *see, e.g.*, *Taylor v. Monroe Cnty. Bd. of Sup'rs*, 421 F.2d 1038, 1042 (5th Cir. 1970) (remanding for determination of special elections); *Bell v. Southwell*, 376 F.2d 659, 665 (5th Cir. 1967) (same). State laws governing election deadlines and terms "must yield" when "necessary . . . to afford adequate relief." *Taylor*, 421 F.2d at 1041 (remanding and ordering special elections). There is an extensive history of ordering special elections as a remedy in Mississippi redistricting cases. *E.g.*, *MS NAACP I*, 739 F. Supp. 3d at 466 (ordering special elections for state legislature last year in Section 2 case); *Watkins v. Fordice*, 791 F. Supp. 646, 646–49 (S.D. Miss. 1992) (special elections for state legislature); *Martin v. Mabus*, 700 F. Supp. 327, 344 (S.D. Miss. 1988) (special judicial elections); *Tucker v. Burford*, 603 F. Supp. 276, 279 (N.D. Miss. 1985) (ordering special elections "to fill the unexpired portion of the terms" of officials elected under unlawful plan in Voting Rights Act Section 5 case); *Taylor*, 421 F.2d at 1042. Federal cases from other districts are consistent.[2] And Mississippi state courts order such remedies, too. *Folson v. Fulco*, 305 So. 3d 406, 413 (Miss. 2020) (affirming trial court's ordering of special election).

In determining whether the equities require special elections, the three-judge panel in *MS NAACP I* adopted and applied the three-factor test from the Supreme Court's decision in *Covington*, which considers, "[1] the severity and nature of the particular . . . violation, [2] the

---

[2] *See, e.g.*, *Nation v. San Juan Cnty.*, 2017 WL 6547635, *18 (D. Utah Dec. 21, 2017) (applying *Covington* and ordering special elections in Section 2 case), *aff'd* 929 F.3d 1270 (10th Cir. 2019); *Wright v. Sumter Cnty. Bd. of Elections & Registration*, 361 F. Supp. 3d 1296, 1305 (M.D. Ga. 2018) (ordering special elections and recognizing "that 'citizens are entitled to have their rights vindicated as soon as possible so that they can vote for their representatives under a [lawful] plan.'" (citation omitted)), *aff'd*, 979 F.3d 1282 (11th Cir. 2020); *Clark v. Roemer*, 777 F. Supp. 471, 484 (M.D. La. 1991) ("Federal courts have ordered special elections to remedy violations of voting rights on many different occasions."); *Williams v. City of Dallas*, 734 F. Supp. 1317, 1415 (N.D. Tex. 1990) (finding special election warranted for Section 2 violation); *Ketchum v. City Council of City of Chi., Ill.*, 630 F. Supp. 551, 565 (N.D. Ill. 1985) ("Federal courts have often ordered special elections to remedy violations of voting rights.").

extent of the likely disruption to the ordinary processes of governance if early elections are imposed, and [3] the need to act with proper judicial restraint when intruding on state sovereignty." 739 F. Supp. 3d at 465 (quoting *Covington*, 581 U.S. at 488). The panel unanimously determined that special elections for state legislature should be held to prevent "severe" injury to "affected voters" in the areas where vote dilution was proven, where new elections otherwise would not take place for three years. *Id.* at 465–66. Here, the circumstances even more strongly favor a special election remedy, and the Court should order special elections in at least District 1 (or whatever new district is created under the remedial district lines giving Black voters an equal opportunity to elect their preferred candidates) for any seats where more than half of the eight-year term remains unserved, setting them for November 2026, concurrent with the next regularly scheduled State Supreme Court election. Otherwise, Mississippi voters will continue to experience the vote-dilutive effects of the current, unlawful Supreme Court districts for many years to come.

**A. The Severity and Nature of the VRA Violation Warrant Special Elections.**

The length of time remaining in the terms of the officials elected using the unlawfully diluted districts is a key factor in determining whether to order special elections. Courts may also consider the nature and number of violations found when assessing the severity of the harm. These considerations favor special elections here.

Courts, including the Fifth Circuit and the three-judge panel in *MS NAACP*, generally favor special elections if the officials elected using the unlawful districts have more than half of their term remaining. In *Taylor*, for instance, the Fifth Circuit remanded to the district court to consider the feasibility of special elections, which would "have permitted legally elected officials to have served at least more than half the current term of office." 421 F.2d at 1042. And in *MS NAACP I*, the panel ordered special elections because the officials representing the diluted districts "have served . . . a little more than six months of their four-year terms." 739 F. Supp. 3d at 465. There,

in the absences of special elections, "black voters in each affected district [would have been] served for a full term" by officials elected using unlawful districts. *Id.* As the three-judge panel concluded, the harm to Black voters in those circumstances "is severe" and "is the exact kind of injury that warrants a remedy." *Id.*

Here, voters face even more severe harm. Due to the staggered eight-year terms of Mississippi Supreme Court justices, in the absence of special elections, voters in District 1 will not have three justices elected using lawful district lines *until January 2033*. *See* Miss. Const., § 149; *see also* Addendum. District 1—the district that includes a large proportion of the State's Black population, including the southern portion of the Mississippi Delta—is currently represented by Justice Jenifer Branning, who was elected in November 2024 (after trial in this case) and sworn in on January 6, 2025;[3] Justice Kenny Griffis, who was sworn in on January 3, 2022;[4] and Justice Leslie King, who was sworn in on January 4, 2021.[5] *See also* Addendum. Two of the three justices in District 1 thus have the majority of their terms remaining—Justice Branning has served less than eight months of her eight-year term, and Justice Griffis less than four years of his.

In *MS NAACP I*, *Southwell*, and *Taylor*, the Fifth Circuit and the three-judge district court all determined that special elections were needed because it would be unjust for legislators elected under unlawful lines to continue holding office for a period of less than four years. *Southwell*, 376

---

[3] State of Miss. Judiciary, *Supreme Court Justices to Be Sworn in on Jan. 6, 2025* (Dec. 27, 2024), https://courts.ms.gov/news/view_news_page.php?article=3058&name=Supreme%20Court%20Justices%20to%20be%20sworn%20in%20on%20Jan.%206,%202025 (last visited Aug. 25, 2025).

[4] State of Miss. Judiciary, *Justice Kenny Griffis Sworn in for New Term* (Jan. 4, 2022), https://courts.ms.gov/news/2022/01.04.22Justice%20Griffis%20oath%20MKR.php (last visited Aug. 25, 2025).

[5] State of Miss. Judiciary, *Chief Justice Randolph, Presiding Justice King and Justice Coleman Sworn in to New Terms* (Jan. 4, 2021), https://courts.ms.gov/news/2021/01.04.21Justices%20take%20oaths.php (last visited Aug. 25, 2025).

F.2d at 665 n.13; *Taylor*, 421 F.2d at 1039; *MS NAACP I*, 739 F. Supp. 3d at 465.  For example, in *Taylor*, the Fifth Circuit held that merely correcting district lines "in time for an election for a term to commence three and a half years in the future" is "surely" inadequate.  421 F.2d at 1042.  In District 1, Justice Griffis's term will not expire for another four-plus years, and Justice Branning's term will continue for seven-plus years—more than *twice* the length of time the Fifth Circuit found inappropriate in *Taylor*.  *See id.*

The nature and number of VRA violations also support special elections in this case.  In *MS NAACP I*, the panel ultimately ordered special elections after finding violations affecting three legislative seats—one state house district (out of 122) and two state senate districts (out of 52).  739 F. Supp. 3d at 403, 465.  Here, three justices were similarly elected under the unlawful district lines—but they represent a third of the Mississippi Supreme Court, a much larger share of the body at issue.  And because each Supreme Court district covers approximately one-third of the State, the number of injured voters is much higher, too.  Moreover, the Section 2 violation in this case is clear: Plaintiffs' evidence on the *Gingles* preconditions was "persuasive" and the so-called Senate Factors "overwhelmingly" weighed in Plaintiffs' favor.  *See, e.g.*, *White*, 2025 WL 2406437, at *12–19, 53.

The Section 2 violation here is at least as severe as in the state legislative case.  As in that case, "allowing the violation[] to go unaddressed" for many years "is not an equitable result."  *See MS NAACP I*, 739 F. Supp. 3d at 466.  That is especially the case with respect to the District 1, Place 3 seat, where the current Justice elected under the old lines has served for less than a year.  Fair representation under lawful districting plans should not be delayed until 2033.

**B. Special Elections in November 2026 Pose Minimal-to-No Burden on Ordinary State Processes.**

In theory, a special election can impose burdens on the state, such as the need to hold a special legislative session, the need to truncate the elected terms of numerous offices, and the need to administer elections that would otherwise not occur. But those considerations are either irrelevant or minimal here.

First, no special legislative session is necessary to implement Plaintiffs' proposal. *See MS NAACP I*, 739 F. Supp. 3d at 465 ("[S]pecial sessions are a disruption of the ordinary legislative process and should be ordered only if it is equitable to do so."). In *MS NAACP*, after issuing a liability decision in the summer of 2024, the panel allowed the Legislature until the end of the regular 2025 legislative session to enact new districts and set deadlines for a November 2025 special election. *MS NAACP II*, 741 F. Supp. 3d at 515; *MS NAACP III*, 782 F. Supp. 3d at 360–61. That schedule allowed sufficient time for the Legislature to take action during its regular session, and for remedial proceedings to take place, while ensuring a workable path to the November general election. *Id.* Here, the Court can do the same. *See supra* Section I. No special session is necessary.

Second, the Court may limit the disruption and burden of special elections by minimizing the number of officials whose terms may be interrupted by a special election. *See MS NAACP III*, 782 F. Supp. 3d at 361 (choosing remedial districting option that "will nullify the effect under state law of the 2023 elections for fewer members"). Plaintiffs' proposed remedy incorporates that concern and reduces the number of impacted Justices to the greatest extent practicable—by seeking special elections for the seats held by the two justices from District 1 who have yet to serve a majority of their terms.

To the extent that the Court determines that all voters residing in a district whose lines are changed should have an opportunity to elect Justices under new lines via special elections, this Court also has authority to order special elections in the other supreme court districts if their lines change under the new map. *See MS NAACP I*, 739 F. Supp. 3d at 466 (ordering special elections for "all revised districts"). Indeed, outside of District 1, all three of the remaining justices who have a majority of their terms remaining were just elected or reelected in 2024.[6] Accordingly, as an alternative remedy, the Court could order special elections for five districts: District 2, Place 2; District 3, Place 1; and District 3, Place 2, in addition to District 1, Place 1, and District 1, Place 3. (Notably, both Justices serving in those District 3 positions have been nominated to the federal bench, and if confirmed, new elections will need to be held for those seats anyway, *see supra* n.1.) Under this approach, every voter in the state will have an opportunity to elect Justices in their district based on the new, non-diluted lines within a reasonable period of time.

Third, holding special elections in November 2026 will not impose significant burdens on election administration. There is already a general election on November 3, 2026 for federal offices across the state, as well as a Supreme Court election in District 2, Place 1 (currently occupied by Justice Ishee) and potentially one or two other Supreme Court seats that will become open in the event of any confirmations to the federal bench.[7] Thus, voters and poll workers will already be mobilized across the state. Adding additional Supreme Court seats in other districts to the ballot would impose essentially zero extra cost on election administrators.

---

[6] The Court has already taken judicial notice of these 2024 elections. *White*, 2025 WL 2406437, at *37.

[7] Ballotpedia, *Mississippi Elections, 2026*, https://ballotpedia.org/Mississippi_elections,_2026 (last visited Aug. 25, 2025); MS Sec'y of State, *Election Calendar 2025-2026*, https://www.sos.ms.gov/content/documents/ed_pubs/pubs/2025SC/Elections%20Calendar%20St ate%20&%20County%20Officials_2025-5.pdf.

Indeed, a special election for the Mississippi Supreme Court would be less burdensome than the special election ordered in *MS NAACP*. For legislative seats, the election calendar encompassed both a partisan primary in August and a general election in November. *MS NAACP III*, 782 F. Supp. 3d at 361. And there was no statewide general election already set for November 2025. Here, because Supreme Court elections are formally nonpartisan, there is no need for a partisan primary, and the candidates can proceed directly to the special election in November, concurrent with federal elections and state judicial elections that will already be taking place. *See White*, 2025 WL 2406437, at *33.

Special elections are also equitable under the circumstances. Plaintiffs filed this action on April 25, 2022, seeking, among other things, declaratory and injunctive relief, the adoption of remedial plans, interim electoral plans for future elections, and any other proper relief. Compl., ECF No. 1. The Legislature and the Defendants have had extensive time since then to redistrict the Mississippi Supreme Court districting lines for the first time since the 1980s, but they have not done so. Instead, they ran another election using those districts in 2024, with the knowledge that those district lines might soon be determined to be invalid under federal law.

### C. Plaintiffs' Proposed Remedy Accommodates the State's Potential Interests.

Where possible, the court should "exercise restraint before intruding onto state sovereignty." *MS NAACP I*, 739 F. Supp. 3d at 465. Thus, this Court, as in *MS NAACP*, appropriately ruled that the state legislature "should first be given an opportunity to enact a new plan" consistent with this Court's rulings and to set an election calendar for special elections in 2026. *White*, 2025 WL 2406437, at *53. Plaintiffs have proposed allowing the Legislature the full 2026 legislative session for this opportunity. *See supra* Section I.

To the extent that the state has specific interests regarding Mississippi Supreme Court elections, Plaintiffs' proposal accommodates those as well. The Mississippi Constitution expresses a preference that, "as near as can be conveniently done," "not more than a majority" of the seats of the Mississippi Supreme Court "shall become vacant at any one time." Miss. Const., § 149. The state constitution then authorizes the state legislature to create staggered electoral terms for the justices. *Id.* ("[I]f necessary for the accomplishment of that purpose, [the legislature] shall have power to provide that the terms of office of some of the judges first to be elected shall expire in less than eight years.").

Plaintiffs' main proposal, which requires holding special elections for only two positions on the Supreme Court, avoids turning over a majority of the court.[8] And if, in the alternative, the Court wished to order special elections in all changed districts as described above, it could do so across two election cycles (2026 and then 2027, when statewide offices will be on the ballot) in order to adhere to the Mississippi Constitution's preference for avoiding more than four Justices being on the ballot at once. Additionally, providing that the winners of the special elections would fill out the remainder of the prior incumbents' eight-year terms would necessarily maintain the

---

[8] While Justice Ishee will be on the ballot in November 2026 for a regularly scheduled election, his current term does not end until December 2028, which means his seat will not see turnover at the same time as the other seats that may be on the November 2026 ballot. Due to the timing requirements designed to create staggered Supreme Court elections under Mississippi law, the District 2, Place 1 seat occupied by Justice Ishee (as well as the District 1, Place 1 seat occupied by Justice Griffis) has general elections that occur approximately 14 months before the start of the prevailing candidate's eight-year term on the Supreme Court. *See* Miss. Code Ann. §§ 23-15-991, 23-15-993; *see also* State of Miss. Judiciary, *Justice Ishee Sworn in To Begin New Term on Supreme Court* (Jan. 7, 2020), https://courts.ms.gov/news/2020/01.07.20Ishe e%20oath%20of%20office.php; State of Miss. Judiciary, *Investiture of Justice Kenny Griffis Set for Jan. 3 at Supreme Court* (Dec. 20, 2021), https://courts.ms.gov/news/2021/ 12.20.21Griffis investiture.php (last visited Oct. 6, 2025).

staggered electoral schedule currently in effect and ensure that no future election would involve more than four Supreme Court seats in any given year.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an order granting the following remedy:

1. The Mississippi Legislature shall have until the conclusion of its regular 2026 session to adopt a new redistricting plan that completely remedies the Section 2 violation that this Court found in its August 19, 2025, decision.

2. Should the Legislature adopt new Supreme Court districts, the Legislature shall also have until the end of the regular 2026 session to provide for special elections to occur concurrent with the November 2026 general election. At a minimum, there shall be special elections in the new Section 2-compliant remedial district in which Black voters have an equal opportunity to elect candidates of their choice, for any seats in which the current incumbent has not yet served at least half of their term in office.

3. Should the Legislature enact legislation pursuant to the Court's remedial order, the parties shall provide formal notice to the Court of such action within seven days and propose a schedule for next steps, including the submission of any objections and/or alternative plans or special election schedules.

4. Should the Legislature make clear in some form or fashion that no new Supreme Court districts will be enacted, or should the session end without new Supreme Court districts being enacted, the parties shall provide formal notice to the Court within seven days and propose a schedule for next steps, including the submission of any objections and alternative plans or special election schedules.

14

This the 10th day of October, 2025.

AMERICAN CIVIL LIBERTIES UNION
OF MISSISSIPPI FOUNDATION
Joshua Tom (Miss. Bar No. 105392)
101 South Congress Street
Jackson, MS 39201
(601) 354-3408
*JTom@aclu-ms.org*

SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood (Miss. Bar No. 106441)
Janet Gochman*
Noah Gimbel*
Kate Lambroza*
425 Lexington Avenue
New York, NY 100017
(212) 455-2000
*jyoungwood@stblaw.com*

/s/ *Ari J. Savitzky*
ACLU FOUNDATION
Ari J. Savitzky*
Ming Cheung*
Sophia Lin Lakin*
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2500
*asavitzky@aclu.org*
*mcheung@aclu.org*
*slakin@aclu.org*

SOUTHERN POVERTY LAW CENTER
Bradley E. Heard*
Ahmed Soussi*
Sabrina Khan*
150 E Ponce de Leon Avenue, Suite 340
Decatur, GA 30030
(470) 521-6700
*bradley.heard@splcenter.org*
*ahmed.soussi@splcenter.org*
*sabrina.khan@splcenter.org*

* Admitted *pro hac vice*

*Attorneys for Plaintiffs*

15

## CERTIFICATE OF SERVICE

I, Ari Savitzky, hereby certify that on October 10, 2025, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all parties on file with the Court.

This the 10th day of October, 2025.

*/s/ Ari Savitzky*_____

Ari Savitzky

**ADDENDUM**

Below is a list of the current justices, and the length of time remaining on their terms:

| Justice | District | Place | Start Date (Current Term) | Most Recent Election | End of Term | Years Remaining |
|---|---|---|---|---|---|---|
| Kenneth Griffis | 1 | 1 | Jan. 3, 2022[1] | Nov. 2020 | Jan. 5, 2031* | 5 |
| Leslie King | 1 | 2 | Jan. 4, 2021[2] | Nov. 2020 | Dec. 31, 2028 | 3 |
| Jenifer Branning | 1 | 3 | Jan. 6, 2025[3] | Nov. 2024 | Jan. 2, 2033 | 7 |
| David Ishee | 2 | 1 | Jan. 7, 2020[4] | Nov. 2018 | Dec. 31, 2028* | 3 |
| David Sullivan | 2 | 2 | Jan. 6, 2025[5] | Nov. 2024 | Jan. 2, 2033 | 7 |
| Michael Randolph | 2 | 3 | Jan. 4, 2021[6] | Nov. 2020 | Dec. 31, 2028 | 3 |
| Robert Chamberlin | 3 | 1 | Jan. 6, 2025[7] | Nov. 2024 | Jan. 6, 2033 | 7 |

[1] State of Miss. Judiciary, *Justice Kenny Griffis Sworn in for New Term* (Jan. 4, 2022), https://courts.ms.gov/news/2022/01.04.22Justice%20Griffis%20oath%20MKR.php.

[2] State of Miss. Judiciary, *Chief Justice Randolph, Presiding Justice King and Justice Coleman Sworn in to New Terms* (Jan. 4, 2021), https://courts.ms.gov/news/2021/01.04.21Justices%20take%20oaths.php.

[3] State of Miss. Judiciary, *Supreme Court Justices to Be Sworn in on Jan. 6, 2025* (Dec. 27, 2024), https://courts.ms.gov/news/view_news_page.php?article=3058&name=Supreme+Court+Justices+to+be+sworn+in+on+Jan.+6%2C+2025.

[4] State of Miss. Judiciary, *Justice Ishee Sworn in To Begin New Term on Supreme Court* (Jan. 7, 2020), https://courts.ms.gov/news/2020/01.07.20Ishee%20oath%20of%20office.php.

[5] *Supra* n.3.

[6] *Supra* n.2.

[7] *Supra* n.3.

| James Maxwell | 3 | 2 | Jan. 6, 2025[8] | Nov. 2024 | Jan. 6, 2033 | 7 |
| Josiah Coleman | 3 | 3 | Jan. 4, 2021[9] | Nov. 2020 | Dec. 31, 2028 | 3 |

*  *The seats occupied by Griffis and Ishee have a 14-month delay between the election and the start of the term.  See* Pls.' Br. n.8.

---

[8] *Id.*

[9] *Supra* n.2.