IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

| | |
|---|---|
| **DYAMONE WHITE; DERRICK SIMMONS; TY PINKINS; CONSTANCE OLIVIA SLAUGHTER HARVEY-BURWELL** | **PLAINTIFFS** |
| VS. | CIVIL ACTION NO. 4:22-cv-00062-SA-JMV |
| **STATE BOARD OF ELECTION COMMISSIONERS; TATE REEVES** *in his official capacity as Governor of Mississippi*; **LYNN FITCH** *in her official capacity as Attorney General of Mississippi*; **MICHAEL WATSON** *in his official capacity as Secretary of State of Mississippi* | **DEFENDANTS** |

**DEFENDANTS' MEMORANDUM RESPONSE TO ORDER DIRECTING BRIEFING**

In accordance with this Court's September 10, 2025 order, Defendants submit this Memorandum addressing their position on "an appropriate deadline to impose upon the Legislature to enact a new Mississippi Supreme Court electoral map," "the need for potential special elections," and "any additional remedial issues." Dkt. 267 at 1. Defendants respectfully submit that this Court should afford the Mississippi Legislature until the completion of its 2026 regular session to enact new districts for the Mississippi Supreme Court, defer its consideration of special-elections issues until after the 2026 regular session, and order the parties to meet and confer on a proposed limited stay of the Court's injunction to allow the regularly scheduled Southern District election and any Northern District elections that may occur in 2026.

1

## BACKGROUND

The Mississippi Supreme Court is composed of nine Justices chosen from electoral districts established by the Legislature. Miss. Const. art. VI, §§ 145, 145A, 145B. In 1987, the Legislature last modified the Supreme Court's three election districts (District 1 - Central District, District 2 - Southern District, and District 3 - Northern District). Miss. Code Ann. § 9-3-1; *see* 1987 Miss. Laws, ch. 491, § 1. The nine Supreme Court judgeships are separate offices designated by position number within each district. Miss. Code Ann. § 23-15-993 (establishing position numbers 1, 2, and 3 for each district). Justices are elected at a general election in even-numbered years and serve staggered eight-year terms. Miss. Const. art. VI, § 149; Miss. Code Ann. § 23-15-991; *id.* § 23-15-993. The following lists the current Supreme Court Justices by district and position, the last election held for that position, and the next scheduled election year for that position:[*]

| Supreme Court Justice | Last Election | Next Election |
|---|---|---|
| Justice T. Kenneth Griffis (District 1, Position 1) | 2020 | 2028 |
| Presiding Justice Leslie D. King (District 1, Position 2) | 2020 | 2028 |
| Justice Jennifer K. Branning (District 1, Position 3) | 2024 | 2032 |
| Justice David M. Ishee (District 2, Position 1) | 2018 | 2026 |
| Justice David P. Sullivan (District 2, Position 2) | 2024 | 2032 |
| Chief Justice Michael K. Randolph (District 2, Position 3) | 2020 | 2028 |
| Justice Robert P. Chamberlin (District 3, Position 1) | 2024 | 2032 |
| Justice James D. Maxwell II (District 3, Position 2) | 2024 | 2032 |
| Presiding Justice Josiah D. Coleman (District 3, Position 3) | 2020 | 2028 |

---

[*] *See* Miss. Code Ann. § 9-3-1 (district boundaries); *id.* § 23-15-991 (terms of office); *id.* § 23-15-993 (positions); Election Results for Last Supreme Court Elections, Mississippi Secretary of State's Website (accessible by election year at https://www.sos.ms.gov/elections-voting/election-results); Mississippi Supreme Court Justices, Mississippi Supreme Court's Website (accessible at: https://courts.ms.gov/appellatecourts/sc/scjustices.php/).

In April 2022, Plaintiffs filed this lawsuit challenging the current configuration of the Mississippi Supreme Court districts under section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments. *See* Dkt. 1 at 52-55; *see also* Dkt. 133 (amended complaint).

On August 19, 2025, this Court issued its post-trial liability order, crediting Plaintiffs' claim that "the current electoral map [for Mississippi Supreme Court elections] illegally dilutes the votes of Black voters in District 1 (Central District) in violation of Section 2 of the Voting Rights Act of 1965." Dkt. 264 at 1; *see id.* at 10-103. The Court ruled "that the current Mississippi Supreme Court electoral map violates Section 2" and "enjoined [Defendants] from utilizing the current electoral map in any further Mississippi Supreme Court elections." *Id.* at 104 (capitalization altered). But the Court added that it "will provide the Mississippi Legislature an opportunity to enact a plan in compliance with Section 2." *Id.*

On September 17, 2025, Defendants timely appealed from the Court's liability order under 28 U.S.C. § 1292. Dkt. 269. On September 29, the Fifth Circuit granted Defendants' motion to place the appeal on hold until the resolution of several redistricting cases pending at the United States Supreme Court and the Fifth Circuit. Order, Dkt. 27-2, CA5 No. 25-60506 (Sept. 29, 2025). Those cases, likely to be decided in the coming months, present outcome-determinative issues that overlap with liability and remedy issues in this lawsuit.

In one set of cases, the U.S. Supreme Court will likely resolve at its 2025 Term whether private parties may sue to enforce section 2 of the Voting Rights Act. *SBEC v. Mississippi NAACP*, S. Ct. No. 25-234 (direct appeal, docketed Aug. 26, 2025); *Turtle Mountain Band of Chippewa Indians v. Howe*, S. Ct. No. 25-253 (petition for certiorari docketed Sept. 2, 2025); *Allen v. Caster*, S. Ct. No. 25-243 (petition for certiorari docketed Aug. 26, 2025); *Allen v. Singleton*, S. Ct. No. 25-273 (direct appeal docketed Aug. 26, 2025); *Allen v. Milligan*, S. Ct. No. 25-274 (direct appeal

3

docketed Aug. 26, 2025). As this Court's liability ruling recognized, the circuits are split on the section 2 private-enforcement question. Dkt. 264 at 4-5. The U.S. Supreme Court has mandatory appellate jurisdiction in *SBEC*, *Singleton*, and *Milligan*, the Court has stayed the Eighth Circuit's mandate pending disposition of the petition for certiorari in *Turtle Mountain* (*see* S. Ct. No. 25A62 (July 25, 2025)), and *Caster* is directly related to the direct appeals in *Singleton* and *Milligan*. In the coming weeks, each of the private-enforcement cases should be fully briefed for consideration at conference(s) by the U.S. Supreme Court. Notably, the appellants in *SBEC* include Defendants here, and several counsel in the two cases overlap. A precedential ruling for the state parties in the pending private-enforcement cases would require dismissal of this case.

In the second set of cases, the U.S. Supreme Court is poised to decide at its 2025 Term whether courts may constitutionally apply section 2 to compel States to consider race in creating electoral districts. *Louisiana v. Callais*, S. Ct. No. 24-109, consolidated with *Robinson v. Callais*, S. Ct. No. 24-110. In March, the Court heard argument in those cases but later restored them to the calendar for reargument. *Louisiana v. Callais*, 145 S. Ct. 2608 (2025). A few months ago, the Court ordered supplemental briefing on "[w]hether the State's intentional creation of a second majority-minority congressional district" to remedy an adjudged section 2 violation "violates the Fourteenth or Fifteenth Amendments." Order, *Louisiana v. Callais*, S. Ct. No. 24-109 (Aug. 1, 2025). The Court will hear argument on October 15. Order, *Louisiana v. Callais*, S. Ct. No. 24-109 (Aug. 12, 2025). That case is regarded as one of the Court's most significant in its 2025-2026 Term. The pending direct appeals and petition for certiorari in the *Allen* litigation raise similar issues that question section 2's constitutionality. *See Allen v. Singleton*, S. Ct. No. 25-273; *Allen v. Milligan*, S. Ct. No. 25-274; *Allen v. Caster*, S. Ct. No. 25-243. A ruling in any of these cases

4

may be outcome determinative in this case, or at least affect how this Court approaches any further proceedings.

In a third category (entailing a single case), the Fifth Circuit is likely to consider in the coming months a petition for rehearing en banc that presents materially the same issues on section 2's private enforcement and constitutionality as those in the *SBEC*, *Turtle Mountain*, *Allen*, and *Callais* litigation. *See Nairne v. Landry*, CA5 No. 24-30115. As this Court's liability order noted (Dkt. 264 at 11-12 n.5), a Fifth Circuit panel recently ruled that those defenses are foreclosed by precedent. *Nairne v. Landry*, — F.4th —, 2025 WL 2355524, at *22-23 & n.26 (5th Cir. Aug. 14, 2025). But the case is effectively on hold. The Fifth Circuit immediately withheld its mandate (*Nairne v. Landry*, Dkt. 313, CA5 No. 24-30115 (Aug. 14, 2025)) and has permitted the state defendants until October 27 to petition for rehearing en banc (*Nairne v. Landry*, Dkt. 328-2 at 2, CA5 No. 24-30115 (Aug. 25, 2025)). And the district court in *Nairne* has stayed any further remedial proceedings on account of the pending redistricting cases at the U.S. Supreme Court. *See* Minute Entry, Dkt. 345, *Nairne v. Ardoin*, No. 3:22-cv-178 (M.D. La. Aug. 6, 2023). The *Nairne* appeal may remain effectively on hold if rehearing is sought. And, if rehearing is granted, the en banc Fifth Circuit would be free to reconsider its section 2 precedents and issue a ruling that may be outcome determinative or shape any further proceedings here.

## RESPONSE TO THE COURT'S DIRECTIVES

### I. THE COURT SHOULD ALLOW THE MISSISSIPPI LEGISLATURE UNTIL THE CONCLUSION OF ITS 2026 REGULAR SESSION TO ENACT A NEW MAP FOR THE STATE'S SUPREME-COURT DISTRICTS.

The upcoming regular session of the Mississippi Legislature begins on January 6, 2026, and is scheduled to last 90 days. *See* Timetable for Processing Legislation 2026, https://billstatus.ls.state.ms.us/htms/timetable2026.pdf. The Legislature should be given through

5

the end of that regular session (including the 15 days required by state law for the Governor to sign or veto legislation passed near the end of the session) to duly enact legislation establishing a new Mississippi Supreme Court electoral map. Well-established redistricting principles support that approach, it aligns with this Court's liability order and district-court rulings in other recent redistricting suits, and it will not prejudice Plaintiffs.

"Redistricting is primarily the duty and responsibility of the State." *Abbott v. Perez*, 585 U.S. 579, 603 (2018) (quotation marks omitted). If a federal court conducts remedial proceedings after invalidating "an existing apportionment scheme," "whenever practicable," the court should "afford a reasonable opportunity for the legislature" to create and adopt a remedial plan. *White v. Lipscomb*, 437 U.S. 535, 540 (1978); *see In re Landry*, 83 F.4th 300, 308 (5th Cir. 2023) ("the proper procedure to implement" redistricting remedies "accommodate[es] to the greatest extent the legislatures' ability to confect their own remedial plans"); *United States v. Brown*, 561 F.3d 420, 435 (5th Cir. 2009) ("in redistricting cases" "district courts must offer governing bodies the first pass at devising a remedy"); *Chisom v. Roemer*, 853 F.2d 1186, 1192 (5th Cir. 1988) ("[R]esponsible state or local authorities must be first given an opportunity to correct any constitutional or statutory defect before the court attempts to draft a remedial plan."). Giving the Legislature the entirety of its 2026 session to enact new Supreme Court districts comports with these principles. That approach respects the Legislature's constitutional duty and responsibility to devise the districts. MISS. CONST. art. VI, § 145; *see id*. §§ 145A, 145B. The timetable is practicable and reasonable. Legislators need time to study and devise proposed new maps, to account for the complex considerations associated with redistricting, and to manage other legislative business. And this approach respects the Legislature's ordinary legislative process for

6

the consideration and passage of general laws. *See* Timetable for Processing Legislation 2026, https://billstatus.ls.state.ms.us/htms/timetable2026.pdf.

This approach fits with this Court's liability ruling and approaches in similar redistricting disputes. This Court acknowledged that lawmakers should have the "first" chance to enact a new map and ruled that it "will provide the Mississippi Legislature" the "opportunity to enact a plan in compliance with Section 2." Dkt. 264 at 104 (citing *Robinson v. Ardoin*, 86 F.4th 574, 601 (5th Cir. 2023)). Other federal courts have allowed legislative bodies the opportunity in the course of their ordinary legislative processes to remedy electoral maps before conducting further proceedings. *E.g.*, *Mississippi State Conference of NAACP v. State Bd. of Election Comm'rs*, 741 F. Supp. 3d 509, 515 (S.D. Miss. 2024) (three-judge court) ("*MS NAACP II*") (allowing the Legislature "until the conclusion of its regular 2025 session to remedy the Section 2 violations" that the court "found in the enacted legislative maps"); *Mississippi State Conference of NAACP v. Barbour*, No. 3:11cv159, 2011 WL 1870222, at *9 (S.D. Miss. May 16, 2011) (three-judge court) (giving the Legislature until "the end of the 2012 session" to adopt a new legislative map and deferring consideration of "special elections"), *aff'd*, 565 U.S. 972 (2011).

Plaintiffs will suffer no prejudice from giving the Legislature through its 2026 regular session to enact a new map. They have already agreed that the Court "can give the Legislature the 2026 session to enact VRA-compliant plans for the Supreme Court districts, subject to any objections." 8/28/25 E-mail from Mr. Savitzky to Court (Ex. A). That position makes good sense. This Court ruled that the current configuration of the State's supreme-court districts violates section 2 by "illegally dilut[ing] the votes of Black voters in District 1 (Central District)." Dkt. 264 at 1; *see id.* at 10-103. There are no Central District elections scheduled in 2026—the next round of elections in that district will not occur until 2028. *See supra* at 2. So there is no possibility that

plaintiffs may suffer any claimed vote-dilution injury while the Legislature considers new supreme-court maps at its 2026 regular session.

## II. THE COURT SHOULD DEFER CONSIDERATION OF SPECIAL ELECTIONS AND ANY FURTHER REMEDIAL PROCEEDINGS AT LEAST UNTIL AFTER THE 2026 LEGISLATIVE SESSION.

This Court should not rule on special-elections issues or conduct a remedy phase before the Legislature has an opportunity to enact a new Supreme Court map. The equities here weigh against ordering such future elections now. And, given that the U.S. Supreme Court and/or Fifth Circuit are likely in the coming months to issue significant rulings on redistricting issues central to this case, briefly postponing a special-elections decision and further remedial proceedings aligns with recent rulings by the Fifth Circuit in this case and by district courts in other pending section 2 litigation.

In "redistricting cases," federal courts consider ordering remedial measures "in light of well-known principles of equity." *North Carolina v. Covington*, 581 U.S. 486, 488 (2017) (per curiam) (quotation marks omitted). To "select a fitting remedy for the legal violation[ ]" at issue, courts "must undertake an equitable weighing process" that "account[s]" for "what is necessary, what is fair, and what is workable." *Ibid.* (quotation marks omitted). And when "deciding whether to truncate existing [officeholders'] terms and order a special election," "obvious considerations" include the "severity and nature" of the "violation" at issue, "likely disruption to the ordinary processes of governance" if a special election is "imposed," and "the need to act with proper judicial restraint when intruding on state sovereignty." *Ibid.*; see *Mississippi State Conference of NAACP v. State Bd. of Election Comm'rs*, 739 F. Supp. 3d 383, 465 (S.D. Miss. 2024) (three-judge court) ("*MS NAACP I*") (considering whether plaintiffs "acted quickly to assert their rights" on

8

special-elections inquiry). Each of these equitable considerations show that the Court should not decide any special-election issues now.

*First*, the "severity and nature" of the section 2 violation here weigh against any claimed immediate need to set special elections. This Court has ruled that the current Supreme Court map dilutes the votes of black voters in District 1 (Central District). Dkt. 264 at 1. But Plaintiffs are not suffering ongoing harm linked to any current Justice's service on the Supreme Court in District 1 or any other district. As several of the witnesses at trial acknowledged, Mississippi Supreme Court Justices are judicial officers, not representatives elected to advance the policy interests of voters or groups of voters. *See, e.g.*, Tr. Vol. 1 at 146 (testimony of Plaintiff Ty Pinkins that "[he] understand[s] that the Supreme Court doesn't control whether a hospital gets placed in the community"); Tr. Vol. 2 at 370 (testimony of Plaintiff Dyamone White acknowledging that Supreme Court cannot solve health, wellness, or housing challenges or remedy problems with access to health care); Tr. Vol. 4 at 724-25 (testimony of Plaintiff Sen. Derrick Simmons acknowledging that Supreme Court "is a court where they just look at errors of law" and that it can only decide cases that come before it). *See also* Tr. Vol. 1 at 176 (testimony of Plaintiffs' witness Aelicia Thomas acknowledging that Mississippi Supreme Court Justices should be independent and impartial). And Plaintiffs did not produce evidence at trial that any Supreme Court Justices are biased against black voters or lack integrity. *See, e.g.*, Tr. Vol. 4 at 725 (testimony of Plaintiff Sen. Derrick Simmons denying any allegation that the Mississippi Supreme Court is not fair and impartial); Tr. Vol. 2 at 371 (testimony of Plaintiff Dyamone White that she has "no clue" regarding the integrity of the Mississippi Supreme Court). The "severity and nature" of the section 2 violation here thus does not support a need to imminently decide special-elections issues in the

case. *Contra MS NAACP I*, 739 F. Supp. 3d at 465 (concluding that section 2 violations as to certain districts for legislative elections were "severe to the affected voters").

*Second*, special elections would disrupt "ordinary processes of governance" and intrude on the State's sovereignty. The Mississippi Supreme Court holds settings and decides cases year-round. And state law provides for staggered eight-year terms of office to preserve continuity of supreme-court operations and minimize the time that sitting Justices must spend campaigning for election. Miss. Const. art. VI, § 149; Miss. Code Ann. § 23-15-991; *id.* § 23-15-993. Any special elections will frustrate those state interests. And, in the circumstances here, special elections carry an even greater risk of undue disruption. In the coming months, the U.S. Supreme Court and/or the Fifth Circuit will likely resolve significant redistricting issues in the *SBEC*, *Turtle Mountain*, *Allen*, *Callais*, and *Nairne* litigation. *See supra* at 3-5. Such rulings may require immediate dismissal of this case or at least reshape the law governing section 2 liabilities and remedies. So ordering special elections now creates a potential doubly disruptive scenario—where the State must start the election process for special elections next year but later call off those elections.

*Third*, Plaintiffs' litigation approach to this case undermines any claimed need for the Court to set special elections now. Section 2 plaintiffs often seek a preliminary injunction and/or accelerated review to obtain expedient relief. *E.g.*, *Robinson v. Ardoin*, 605 F. Supp. 3d 759, 769 (M.D. La. 2022) (expedited preliminary-injunction proceedings); *MS NAACP I*, 739 F. Supp. 3d at 465 (noting expedited pre-trial proceedings). Not so here. Plaintiffs filed suit in 2022. Dkt. 1. They did not seek expedition before trial, or before the most recent round of Supreme Court elections in 2024. That delay belies Plaintiffs' apparent view—adopted after the Court's August 2025 liability ruling—that the Court should press forward with ordering special elections. *See*

10

8/28/25 E-mail from Mr. Savitzky to Court (Ex. A) (suggesting that the Court should act now to set a "special election calendar").

*Finally*, waiting until next year to resolve special-elections issues aligns with the Fifth Circuit's treatment of Defendants' appeal in this case and district-court rulings in other section 2 challenges. As explained (*supra* at 3-5), a precedential ruling in the coming months from the U.S. Supreme Court in the *SBEC*, *Turtle Mountain*, *Allen*, or *Callais* cases, and/or the Fifth Circuit in the *Nairne* case could dictate the outcome of this case or at least impact any further proceedings here. Last month, the Fifth Circuit stayed proceedings in Defendants' appeal in this case (without objection from Plaintiffs) pending resolutions in the *SBEC*, *Turtle Mountain*, *Allen*, *Callais*, and *Nairne* appeals. Order, Dkt. 27-2, CA5 No. 25-60506 (Sept. 29, 2025). For the same reasons, several district courts in the Fifth Circuit recently have stayed further proceedings in section 2 cases. *See*, *e.g.*, *Elizondo v. Spring Branch Independent Sch. Dist.*, No. H-21-1997, 2025 WL 2664245, at *6 (S.D. Tex. Sept. 17, 2026) (staying final judgment pending appeal); Minute Entry, Dkt. 345, *Nairne v. Ardoin*, No. 3:22-cv-178 (M.D. La. Aug. 6, 2023) (staying remedial proceedings and canceling hearing); Order, Dkt. 752, *Clark v. Edwards*, 3:86-cv-435 (M.D. La. July 17, 2025) (staying further proceedings). This Court should take a similar approach by not rushing to decide whether the State must conduct special elections next year.

### III. THE COURT SHOULD CONSIDER A LIMITED STAY OF THE COURT'S INJUNCTION TO AVOID DISRUPTION TO THE SCHEDULED 2026 ELECTION FOR DISTRICT 2, POSITION 1 AND ANY 2026 ELECTIONS FOR DISTRICT 3 THAT MAY BE REQUIRED BY STATE LAW.

All parties apparently agree that the Legislature should be afforded an opportunity to enact a new Supreme Court map at its 2026 regular session. But the parties have not yet attempted to resolve how to accommodate that timetable without upsetting the schedule for next year's election for Supreme Court District 2, Position 1 (Southern District) and potential elections for District 3

(Northern District). The Court's liability order broadly enjoins Defendants from "utilizing the current electoral map in any further Mississippi Supreme Court elections." Dkt. 264 at 104. That injunction thus likely blocks the State from conducting the regularly scheduled election for District 2, Position 1 (Southern District) set to begin early next year. *See supra* at 2; Miss. Code Ann. § 23-15-977(1) (February 2 candidate qualifying deadline). And, depending on the timing of expected vacancies due to the recent nominations of Justice Maxwell and Justice Chamberlin to serve on this Court, state law may require elections in District 3 (Northern District) next year on a similar timetable. *See* Miss. Code Ann. § 23-15-849(2).

The parties may be able to agree on a resolution of this problem. The Court should thus order the parties to meet and confer within 14 days and report to the Court on a proposed limited stay of the Court's injunction (or other measures) that would allow next year's scheduled District 2 election and any District 3 elections to proceed without disruption. If the parties cannot reach an agreement, the Court should then set a briefing schedule for Defendants to file a motion to resolve the issue and (if necessary) set an evidentiary hearing.

This approach makes practical sense. Plaintiffs have not challenged the composition of Supreme Court Districts 2 and 3. Their proof at trial and this Court's liability ruling focused on their only claim—that the current supreme-court map violates section 2 by "dilut[ing] the votes of Black voters in District 1 (Central District)." Dkt. 264 at 1. So a limited stay of the Court's injunction that allows District 2 and 3 elections to proceed in 2026 would align the scope of the Court's injunction with the injury that Plaintiffs proved at trial. It would also eliminate disruption to election schedules established by state law, minimize the risk of confusion for candidates, election officials, and voters, and diminish the inherent harm in prematurely halting 2026 elections when rulings from the U.S. Supreme Court or the Fifth Circuit may soon negate the basis for

12

blocking them. If the parties cannot agree on the proposed terms of limited relief that mitigates these harms, this Court should allow Defendants an opportunity to file a motion for relief, obtain a ruling from this Court, and if necessary seek further review.

## CONCLUSION

Defendants respectfully submit that the Court should enter an order providing: (1) that the Mississippi Legislature shall have until the end of its 2026 regular session to pass legislation adopting a new Mississippi Supreme Court electoral map, including the time prescribed under state law for the Governor to veto or sign such legislation into law; (2) that counsel for Defendants shall file a notice of any duly enacted Mississippi Supreme Court electoral map with the Court within 7 days of its enactment, or if no such map is enacted at the 2026 regular session a notice of that development within 7 days of the end of the session; (3) that the Court defers consideration of ordering special elections and any further remedial proceedings until the end of the 2026 regular session; and (4) that the parties shall meet and confer within 14 days and report to the Court by email on proposed measures that would allow scheduled 2026 District 2 election and any 2026 District 3 elections to proceed and, if necessary, propose a schedule for motion practice to address that issue.

THIS the 10th day of October, 2025.

Respectfully submitted,

STATE BOARD OF ELECTION COMMISSIONERS, TATE REEVES, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF MISSISSIPPI, LYNN FITCH, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF MISSISSIPPI, AND MICHAEL WATSON, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE OF MISSISSIPPI, DEFENDANTS

LYNN FITCH, ATTORNEY GENERAL
STATE OF MISSISSIPPI

REX M. SHANNON III (MSB #102974)
BETH WINDSOR USRY (MSB #99267)
JUSTIN L. MATHENY (MSB #100754)
STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
CIVIL LITIGATION DIVISION
Post Office Box 220
Jackson, Mississippi 39205-0220
Tel.: (601) 359-4184
Fax: (601) 359-2003
rex.shannon@ago.ms.gov
beth.usry@ago.ms.gov
justin.matheny@ago.ms.gov

MICHAEL B. WALLACE (MSB #6904)
CHARLES E. COWAN (MSB #104478)
WISE CARTER CHILD & CARAWAY, P.A.
Post Office Box 651
Jackson, Mississippi 39205-0651
Tel.: (601) 968-5500
Fax: (601) 944-7738
mbw@wisecarter.com
chc@wisecarter.com

ATTORNEYS FOR DEFENDANTS