IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

DYAMONE WHITE, et al.                                                              PLAINTIFFS

v.                                               CAUSE NO. 4:22-CV-62-SA

STATE BOARD OF ELECTION
COMMISSIONERS, et al.                                            DEFENDANTS

ORDER REGARDING REMEDIAL ISSUES

On August 19, 2025, the Court entered an Order and Memorandum Opinion [264], wherein it concluded that "the current Mississippi Supreme Court electoral map violates Section 2 of the Voting Rights Act." [264] at p. 104. The Court's focus now turns to its obligation "to correct the Section 2 violation." *Miss. NAACP v. State Bd. of Election Comm'rs.*, 782 F. Supp. 3d 336, 464 (S.D. Miss. 2024) (quoting *United States v. Brown*, 561 F.3d 420, 435 (5th Cir. 2009)).

To be clear, the Court's initial ruling granted the Plaintiffs' request for declaratory and injunctive relief. But, having enjoined any further elections under the current map, the Court must set out the parameters for the creation of a new one, as well as other necessary aspects of remedying the violation.[1]

The parties agree on a portion of the appropriate remedy. They agree that the Mississippi Legislature should first be given an opportunity to implement a new map that complies with Section 2 and that the Legislature should be ordered to do so within its regular 2026 session. In its original Order and Memorandum Opinion [264], the Court indicated that it would "provide the

---

[1] The Defendants have appealed the Court's liability ruling in its entirety. *See* [269] at p. 1. The Fifth Circuit stayed proceedings pending decisions in other cases. *See* Fifth Cir. Cause No. 25-60506, Dkt. [27] at p. 1. Nevertheless, neither the Defendants' appeal nor the Fifth Circuit's stay precludes this Court from implementing a remedy for the Section 2 violation—the Defendants conceded as much when seeking a stay in the Fifth Circuit. *See id.*, Dkt. [11] at p. 10 (arguing that "[a]n abeyance will not block the district court from considering whether and when to move forward with remedial proceedings in this case.").

Mississippi Legislature an opportunity to enact a plan in compliance with Section 2 of the Voting Rights Act." [264] at p. 104. The Court will first give the Mississippi Legislature the opportunity to address the issue and will hereinafter address the timeline related thereto.

While the parties agree on that initial aspect of an appropriate remedy, their agreement essentially ends there. They assert different positions on the need for special elections. The Plaintiffs request that the Court order special elections for two of the three seats in District 1—in particular, District 1, Place 1 and District 1, Place 3 (the two seats in District 1 that still have over half of their respective eight-year terms remaining). Specifically, the Plaintiffs assert that "[w]hile the Court could order staggered special elections for *all* seats on the Mississippi Supreme Court to take place in the coming years, it should at a minimum order special elections to fill out the remaining term for those two seats." [272] at p. 7 (emphasis in original). For their part, the Defendants contend that the Court should defer ruling on any special election issues until after the Mississippi Legislature first has an opportunity to enact a new map.

In the recent legislative redistricting case in the District Court for the Southern District of Mississippi, the three-judge panel, in determining whether to order special elections, weighed three equitable considerations that were recognized by the Supreme Court in *North Carolina v. Covington*, 581 U.S. 486, 137 S. Ct. 1624, 198 L. Ed. 2d 110 (2017). Those considerations include (1) the severity and nature of the particular violation at issue, (2) the extent of the likely disruption if early elections are imposed, and (3) the need to act with judicial restraint when intruding on state sovereignty. *Miss. NAACP*, 739 F. Supp. 3d at 465 (citing *Covington*, 581 U.S. at 488, 137 S. Ct. 1624). As part of this analysis, a district court "must undertake an equitable weighing process to select a fitting remedy for the legal violations it has identified, taking account of what is necessary,

2

what is fair, and what is workable[.]" *Covington*, 581 U.S. at 488, 137 S. Ct. 1624 (internal punctuation and citations omitted).

The Court first looks to the severity and nature of the violation. *See Miss. NAACP*, 739 F. Supp. 3d at 465. The Defendants contend that this factor weighs in their favor because, in their view, the Plaintiffs are "not suffering ongoing harm linked to any current Justice's service" since Mississippi Supreme Court Justices are judicial officers as opposed to representatives elected to carry out the policy interests of their constituents. [273] at p. 9. They also point out that the Plaintiffs did not submit any evidence at trial to indicate that any specific Justice currently serving on the Mississippi Supreme Court is biased and/or partial such that cases are not being decided fairly.

This argument is a non-starter. Taken to its logical conclusion, it would mean that, unless a witness testified that a judicial officer had acted in a biased or partial manner, special elections would never be ordered in a case involving a judicial electoral map. Such cannot be the case.

Considering the first factor in the *Miss. NAACP* case, the District Court for the Southern District of Mississippi took into account the length of the subject officials' remaining terms. *See Miss. NAACP*, 739 F. Supp. 3d at 465. That court, noting that the elected officials had served only a little over six months of a four-year term, concluded that "if left as is, black voters in each affected district will be served for a full term by a legislator chosen in an election that diluted black votes." *Id*.

As noted previously, the two seats that the Plaintiffs target for special elections are District 1, Place 1 and District 1, Place 3. The District 1, Place 1 seat is currently held by Justice Kenny Griffis, who was sworn in on January 3, 2022 and whose term runs through January 2030. The

District 1, Place 3 seat is currently held by Jenifer Branning, who was sworn in on January 6, 2025 and whose term runs through January 2033.

If this Court does not order special elections, the harm inflicted by the election of Justices under an illegal map would not be fully rectified until January 2033. That is a substantial amount of time, particularly considering that this Court's "first and foremost obligation" at this stage is "to correct the Section 2 violation." *Miss. NAACP*, 739 F. Supp. 3d at 464 (quoting *Brown*, 561 F.3d at 435). Indeed, the remaining term length for the two seats that the Plaintiffs refer to is longer than was at issue in the *Miss. NAACP* case, where the legislators had approximately 3.5 years left on their respective terms. *Id*. Refusing to order special elections in this case considering the extensive amount of time remaining on these terms would, in this Court's view, be inequitable. It would serve only to further perpetuate the underlying violation and would not align with the Court's obligation to "correct the Section 2 violation." *Miss. NAACP*, 739 F. Supp. 3d at 464 (quoting *Brown*, 561 F.3d at 435). As the *Miss. NAACP* court phrased it, "[t]his is the exact kind of injury that warrants a remedy." *Id*. at 465. The first factor weighs in favor of special elections.

The second factor is the extent of the likely disruption to the ordinary processes of governance if early elections are ordered. *Id*. (citing *Covington*, 581 U.S. at 488, 137 S. Ct. 1624). While a special election will necessarily have *some* impact on the ordinary processes of governance, the impact here would be relatively minimal. The current proposal would not necessitate a special legislative session, as the parties have agreed that providing the Legislature the opportunity to create a new map during its regular 2026 session is appropriate. Additionally, holding the special elections in November 2026 will not place a significantly onerous burden on state election officials since there is already a general election scheduled for November 3, 2026,

4

at which time federal offices across the state, as well as a Supreme Court election for District 2, Place 1, will be on the ballot.

The Court finds that the disruption to the ordinary processes of governance will be relatively minimal when compared to the severity of the violation at issue.

The last factor concerns "the need to act with proper judicial restraint when intruding on state sovereignty." *Id.* (citing *Covington*, 581 U.S. at 488, 137 S. Ct. 1624). The Court remains cognizant of the need for judicial restraint, yet without special elections, the Section 2 violation here will not be fully rectified for almost 7 years. That simply cannot stand.

Additionally, the Court feels compelled to address another argument the Defendants briefly raise. They contend that "Plaintiffs' litigation approach to this case undermines any claimed need for the Court to set special elections now." [273] at p. 10. In particular, the Defendants point out that the Plaintiffs did not seek an expedited trial date in this case. They contend that the Plaintiffs' failure in this regard undercuts the current argument that special elections are needed.

The Court disagrees. As the Plaintiffs point out in their Reply [274], this lawsuit was filed in April 2022—two weeks after the end of the Mississippi Legislature's regular 2022 session, which was the first legislative session following the Census Bureau's release of the 2020 population data which would have been needed for redistricting. After the Legislature failed to enact a new map during that session, the Plaintiffs promptly filed suit. There is no evidence that the Plaintiffs delayed or failed to act diligently in pursuing their claim, and the Defendants have cited no authority indicating that Section 2 plaintiffs must seek an expedited trial date. The Court finds that any failure to seek an expedited trial date does not justify altogether precluding the Plaintiffs from seeking special elections. Such a conclusion would be far from equitable.

Special elections are justified under the circumstances and the Court *will* order the same. Generally speaking, to the extent that the Plaintiffs request that relief, it is GRANTED.

With that being said, though, the Court does find some merit to the Defendants' request to defer issuing a definitive ruling as to which seats will be subjected to a special election. Without knowing how the new map will be drawn, the Court is hamstrung in its ability to fully analyze the issue. While it would make sense under the current map to order special elections for the District 1, Place 1 and District 1, Place 3 seats, the map utilized in November 2026 will necessarily differ—possibly in significant respects. In the Court's view, waiting until after a new map has been enacted before issuing a definitive ruling is the most pragmatic approach.[2]

In light of the foregoing, it is hereby ORDERED that the Mississippi Legislature shall have until the conclusion of its regular 2026 session to enact a new Mississippi Supreme Court electoral map to remedy the Section 2 violation that this Court found in its Order and Memorandum Opinion [264]. The Court trusts the parties will take any necessary steps to notify the Mississippi Legislature of this directive.

Should the Mississippi Legislature adopt a new Mississippi Supreme Court map, the parties shall provide formal notice to the Court within seven days of the Legislature's enactment. Should the Mississippi Legislature in some way indicate that no new map will be enacted or should the session end without a new map being enacted, the parties shall provide formal notice of the same to the Court within seven days.

---

[2] In the Court's view, permitting the Legislature to have an opportunity to draw a new map without having specific seats already designated as subject to special election will also further state sovereignty interests.

The Court will hold a status conference once it receives notice regarding the Legislature's action or lack thereof. After receiving notice, the Court intends to act swiftly so as to meet any and all deadlines necessary to carry out special elections in November 2026. The parties shall be prepared to do the same.

SO ORDERED, this the 19th day of December, 2025.

/s/ Sharion Aycock
SENIOR UNITED STATES DISTRICT JUDGE