**EXPERT WITNESS REPORT**

**Functional Analysis of Mississippi Supreme Court Districts**

Prepared by: Byron D'Andra Orey, Ph.D.

*Professor of Political Science, Jackson State University*

April 15, 2026

## I. Introduction

I am a Professor of Political Science at Jackson State University, where my research focuses on racial politics, minority representation, and electoral systems. I previously testified in this matter as an expert in "political science, political participation behavior, racially polarized voting, and race and politics." *White v. State Bd. of Election Comm'rs*, 795 F. Supp. 794, 819 (N.D. Miss. 2025). I have been retained as an expert witness to conduct a functional analysis of proposed Mississippi Supreme Court districts and to assess whether those districts provide Black voters with a meaningful and effective opportunity to elect candidates of their choice.

The central question addressed in this report is whether the Plaintiffs' three proposed district configurations—(1) the Race-Blind Plan, (2) the Least-Change Plan, and (3) the Regional Plan—afford Black voters an equal and realistic opportunity to participate in the political process and elect their preferred candidates to the Mississippi Supreme Court notwithstanding the high degree of racially polarized voting in Mississippi that I discussed in my trial analysis.

## II. Qualifications

I hold a Ph.D. in Political Science and serve as a Professor of Political Science at Jackson State University. My scholarly work encompasses the study of racial and ethnic politics, voting rights, legislative representation, and the measurement of electoral opportunity for minority voters. I have a significant background in quantitative analysis of electoral politics. My qualifications and background were discussed extensively in my trial phase reports and my trial testimony, which I incorporate herein by reference.

## III. Methodology

This analysis employs two statistical measures to evaluate the functional effectiveness of the proposed Mississippi Supreme Court districts for Black voters: (1) the effectiveness score and (2) the percent won score. These measures are calculated based on a dataset containing county-by-county results for each of the sixteen biracial statewide election contests in Mississippi that were held between 2015 and 2024. These metrics have been used in other redistricting cases to assess the potential performance of proposed remedial districts, including in the recent state legislative redistricting case in Mississippi.

I used a dataset comprised of biracial contests because, as discussed in my trial-phase report and my trial testimony, those contests are and have been found to be the most probative for assessing the ability of Black voters to elect candidates of choice despite racially polarized voting patterns. Using county-by-county electoral data from statewide contests, and aggregating those county-level results up to the Supreme Court district level, allows me to assess the performance of Black-preferred candidates in each of the proposed district configurations despite the fact that these are only proposed districts.

The findings are presented below.

1

**Effectiveness Score**

The effectiveness score is defined as the average vote share, expressed as a proportion, received by Black-preferred Black candidates in each district in each of the proposed plans, calculated from the county-level results of the sixteen statewide election contests in the dataset. This metric provides a quantitative estimate of how well Black-preferred Black candidates are likely to perform within each district. An effectiveness score below 0.50 indicates that, on average, these candidates receive less than 50 percent of the vote in these contests, suggesting that the district is unlikely to provide Black voters with a meaningful opportunity to elect their candidates of choice. A score above 0.50 indicates the district is likely to be an effective opportunity district.

**Percent Won Score**

The percent won score represents the proportion of the sixteen election contests won by Black-preferred Black candidates in each district in each of the proposed plans, calculated as the number of victories divided by the total number of contests (N = 16). The analysis focuses on the two-party vote share, specifically examining the Democratic and Republican candidates who received the highest number of votes in contests featuring one Black candidate and one White candidate. This measure provides a complementary indicator of whether Black voters have a realistic opportunity to elect their preferred candidates. A percent won score below 60 percent suggests that the district may not provide Black voters with a realistic opportunity to elect candidates of their choice.

## IV. Election Contests Analyzed

Effectiveness scores and percent won scores were calculated using certified election returns from the following sixteen statewide general election contests conducted in Mississippi between 2015 and 2024:

Commissioner of Agriculture and Commerce (2015); Governor (2015); Secretary of State (2015); U.S. Senate Special Runoff (2018); Treasurer (2019); Secretary of State (2019); Commissioner of Insurance (2019); Attorney General (2019); U.S. Senate (2020); Commissioner of Agriculture and Commerce (2023); Commissioner of Insurance (2023); Secretary of State (2023); State Auditor (2023); Treasurer (2023); U.S. Senate (2024); and U.S. President (2024).

## V. Results

Table 1 presents the effectiveness scores and percent won scores for each district under each proposed plan, along with the Black Voting-Age Population (BVAP) percentage for each district for reference. A threshold column indicates whether each district's effectiveness score falls above or below the 0.50 benchmark for a functional opportunity district.

| Table 1. Effectiveness and Percent Won Scores of Black-Preferred Black Candidates by Proposed District Plan | | | | | | |
|---|---|---|---|---|---|---|
| **Plan** | **District** | **Effectiveness Score** | **0.50 Threshold** | **BVAP %** | **Wins / Total** | **% Won** |
| **Race-Blind Plan** | District 1 | 0.530 | Above | 54.5% | 13 / 16 | 81.3% |
| | District 2 | 0.292 | Below | 23.3% | 0 / 16 | 0% |
| | District 3 | 0.354 | Below | 30.3% | 0 / 16 | 0% |

2

| | | | | | | |
|---|---|---|---|---|---|---|
| **Least-Change Plan** | District 1 | 0.522 | Above | 52.2% | 13 / 16 | 81.3% |
| | District 2 | 0.320 | Below | 26.5% | 0 / 16 | 0% |
| | District 3 | 0.350 | Below | 29.5% | 0 / 16 | 0% |
| **Regional Plan** | District 1 | 0.537 | Above | 55.0% | 13 / 16 | 81.3% |
| | District 2 | 0.294 | Below | 23.5% | 0 / 16 | 0% |
| | District 3 | 0.350 | Below | 30.1% | 0 / 16 | 0% |

*Notes: Effectiveness Score = average vote share of Black-preferred Black candidates across 16 contests in each district. BVAP = Black Voting-Age Population. An effectiveness score below 0.50 indicates candidates receive less than 50% of the vote on average. A % Won score below 60% suggests the district may not provide Black voters with a realistic opportunity to elect candidates of their choice.*

## VI. Discussion

The data presented in Table 1 reveal a consistent and clear pattern across all three proposed plans: District 1 in each plan functions as an effective opportunity district for Black voters. In each configuration, District 1 achieves an effectiveness score above the 0.50 threshold and a percent won score above the 60 percent benchmark. Districts 2 and 3 fail to meet either threshold under any plan.

Under the Race-Blind Plan, District 1 achieves an effectiveness score of 0.530 and a win rate of 81.3 percent (13 of 16 contests). Districts 2 and 3 record effectiveness scores of 0.292 and 0.354 respectively. Districts 2 and 3 both fall well below the majority threshold and win zero of the sixteen contests analyzed.

The Least-Change Plan District 1 produces an effectiveness score of 0.522 and a win rate of 81.3 percent (13 of 16 contests). Districts 2 and 3 under this plan score 0.320 and 0.350, respectively, with zero wins.

The Regional Plan yields a marginally higher District 1 effectiveness score of 0.537, the strongest single effectiveness score across all three plans. Districts 2 and 3 score 0.294 and 0.350, both below threshold, with zero wins.

Notably, the similar effectiveness scores across all District 1 configurations based on 16 elections demonstrates that there are multiple plan configurations that can support a stable and functional opportunity district for Black voters in District 1. That is consistent with and reflects underlying electoral patterns in the areas included in District 1 under each of the plans.

At the same time, it is worth noting that the dataset here is necessarily made up of "exogenous" statewide contests. As described in my trial-phase analysis, this dataset includes a number of statewide contests where Black-preferred candidates were able to prevail in the counties comprising existing Supreme Court district 1—for example, Mike Espy's campaigns for U.S. Senate. The trial evidence, as described in my earlier reports and my testimony, showed that Black-preferred Black candidates were not as successful in endogenous and quasi-endogenous contests as in exogenous contests over the same period of time. Therefore, this is reason to think that District 1, while effective, would remain a fairly competitive district even in the proposed plans.

## VII. Conclusion

3

Based on my analysis of sixteen biracial statewide election contests and the application of well-established measures of electoral effectiveness, I have reached the following expert opinions to a reasonable degree of professional certainty:

First, **District 1 functions as an effective opportunity district for Black voters under all three proposed plans.** In each configuration, District 1 achieves an effectiveness score above the 0.50 majority threshold and a win rate above 60 percent, satisfying both benchmarks used to assess functional electoral opportunity.

Second, **Districts 2 and 3 do not function as effective opportunity districts for Black voters under any proposed plan.** Their effectiveness scores range from 0.291 to 0.354, substantially below the 0.50 threshold, and they produce zero electoral victories for Black-preferred candidates across all sixteen contests and all three plan configurations.

I reserve the right to amend or supplement my report in light of additional facts, testimony and/or materials that may come to light.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct according to the best of my knowledge, information, and belief.

Executed on April __15___, 2026

_____

DR. BYRON D'ANDRA OREY

4