**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

|  |  |
|---|---|
| DYAMONE WHITE; DERRICK SIMMONS; TY PINKINS; CONSTANCE OLIVIA SLAUGHTER HARVEY-BURWELL, <br><br> *Plaintiffs*, <br><br> vs. <br><br> STATE BOARD OF ELECTION COMMISSIONERS; TATE REEVES, *in his official capacity as Governor of Mississippi*; LYNN FITCH, *in her official capacity as Attorney General of Mississippi*; MICHAEL WATSON, *in his official capacity as Secretary of State of Mississippi,* <br><br> *Defendants.* | **CIVIL ACTION NO. 4:22-cv-00062-SA** |

**PLAINTIFFS' SUBMISSION REGARDING *CALLAIS***

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ...................................................................................................................... 3

    **I.**    THE COURT SHOULD ASSESS SECTION 2 LIABILITY UNDER THE UPDATED STANDARD IN *CALLAIS* BEFORE CONTINUING WITH ANY REMEDIAL PROCEEDINGS ........................................................................ 3

    **II.**   THE COURT SHOULD ALLOW SUPPLEMENTATION OF THE RECORD AND SET AN EXPEDITED SCHEDULE FOR ANY FURTHER PROCEEDINGS ................................................................................................... 4

CONCLUSION ................................................................................................................... 8

**INTRODUCTION**

In *Louisiana v. Callais*, the U.S. Supreme Court set forth an "updated *Gingles* framework" for Section 2 vote dilution cases. *Louisiana v. Callais*, 608 U.S. ____, Nos. 24-109 & 24-–110, 2026 WL 1153054, at \*17 (U.S. Apr. 29, 2026). Consistent with their position at last week's remedial hearing, and as set forth herein, Plaintiffs' evidence will satisfy the updated elements of the vote-dilution test, including through the provision of race-blind alternative maps. However, due to the change in the substantive legal standard for proving a Section 2 violation, and the need to ensure that any judgment in this case and any remedy based upon it is durable and lasting, Plaintiffs believe the Court should reconsider and then confirm its liability determination in light of *Callais* before proceeding with any remedy.

Consistent with that, the parties have filed a joint motion to vacate and remand in Defendants' appeal of the Court's August 19, 2025 merits ruling for further proceedings in light of *Callais*. *See* Joint Mot., *White v. State Bd. of Election Comm'rs*, No. 25-60506, Doc. 44 (5th Cir. May 6, 2026). Vacatur and remand in light of an intervening change in law is the normal procedure in the Fifth Circuit. If and when the motion is granted, the existing injunction will be lifted, allowing regularly scheduled 2026 Supreme Court elections to proceed. Moreover, jurisdiction over the merits will return to this Court, at which point the Court can consider proposals for a short schedule allowing for supplementation of the trial record with additional evidence relevant to the updated Section 2 standard, followed by the submission of revised Proposed Findings of Fact and Conclusions of Law and, if the Court desires, revised Post-Trial Briefs. In the first instance, Plaintiffs propose that the parties meet and confer within seven days after any remand order from the Fifth Circuit to try to fashion a joint proposal regarding further proceedings to supplement the trial record and the submission of updated post-trial materials.

1

**BACKGROUND**

On August 19, 2025, this Court found that the existing Mississippi Supreme Court districts violate Section 2 of the Voting Rights Act and enjoined further use of those districts. *White v. State Bd. of Election Comm'rs*, 795 F. Supp. 3d 794, 859–61 (N.D. Miss. 2025). Defendants filed a notice of appeal to the U.S. Court of Appeals for the Fifth Circuit on September 17, 2025. ECF No. 269. Shortly thereafter, Defendants moved to hold their appeal in abeyance, pending the resolution of *Louisiana v. Callais* and certain other appeals involving Section 2 and/or redistricting, and the Fifth Circuit granted that request. Stay Order, *White v. State Bd. of Election Comm'rs*, No. 25-60506, Doc. 27-2 (5th Cir. Sep. 29, 2025).

Meanwhile, this Court continued with the remedial phase of this litigation. *White v. State Bd. of Election Comm'rs*, No. 4:22-CV-62-SA, 2025 WL 3688160, at *1 n.1 (N.D. Miss. Dec. 19, 2025). On April 28, 2026 (and subsequently on April 30, 2026), the parties appeared for a remedial hearing before this Court. ECF No. 304. Plaintiffs presented testimony from Mr. William Cooper, a mapdrawer whom this Court previously qualified as an expert witness, proposing three remedial plans, including one that was drawn in a race-blind manner, without the use of any racial data. *See also* Cooper Remedial Decl., ECF No. 293-1.[1] At the hearing, Plaintiffs argued, among other things, that this Court should not assume that the U.S. Supreme Court would invalidate Section 2 of the Voting Rights Act and that Plaintiffs' proposed remedial plans, particularly the Race-Blind Plan, would satisfy a heightened legal standard if the Supreme Court were to adopt one.

One day after the April 28 hearing, the Supreme Court issued its ruling in *Callais*, and this Court ordered the parties to brief the impact of the *Callais* decision on the remedial proceedings in this case by May 6, 2026. ECF No. 298. In the Supreme Court's words, *Callais* sets forth an

---

[1] Plaintiffs do not yet have access to the transcript of the remedial hearing but can re-file this brief with transcript cites when the transcript is available if that would be helpful to the Court.

"updated *Gingles* framework." *Callais*, 2026 WL 1153054, at *17. Those updates consist of changes to the three *Gingles* preconditions, as well as the totality of the circumstances (often referred to as the Senate Factors) analysis. *Id.* at *15–16. Of particular relevance, the first *Gingles* precondition now requires a race-blind map, *id.* at *15, which Mr. Cooper provided at the remedial hearing.

Following *Callais*, the parties met and conferred regarding next steps and agreed to file in the Fifth Circuit merits appeal a joint motion to vacate and remand to this Court for further proceedings in light of *Callais*. That motion was filed earlier this evening.

**ARGUMENT**

**I.     THE COURT SHOULD ASSESS SECTION 2 LIABILITY UNDER THE UPDATED STANDARD IN *CALLAIS* BEFORE CONTINUING WITH REMEDIAL PROCEEDINGS**

In *Callais*, the Supreme Court found it "appropriate to update the *Gingles* framework and realign it with the text of § 2 and constitutional principles." 2026 WL 1153054, at *15. When there is an intervening change in the relevant law pending appeal, the Fifth Circuit's "normal" practice is to vacate and remand for further proceedings as appropriate, to enable the district court to reconsider its decision under the new legal standard and determine if the change in law requires further proceedings or otherwise has any effect on the disposition of the case. *See, e.g.*, *Utah v. Su*, 109 F.4th 313, 319–20 (5th Cir. 2024); *see also, e.g.*, *United States v. Rose*, 127 F.4th 619, 620 (5th Cir. 2025); *Hill v. Int'l Paper Co.*, 121 F.3d 168, 177 (5th Cir. 1997); *Vicknair v. Formosa Plastics Corp. La.*, 98 F.3d 837, 837 (5th Cir. 1996); *Jenkins v. McDermott, Inc.*, 742 F.2d 191, 192–93 (5th Cir. 1984). That practice rests on the fundamental premise "that appellate courts generally sit as courts 'of review, not first view.'" *Su*, 109 F.4th at 319–20 (citation omitted).

Accordingly, the parties have requested that the Fifth Circuit, consistent with its normal practice, vacate and remand this Court's August 2025 judgment. Vacatur and remand are

3

necessary because Defendants' appeal to the Fifth Circuit divests this Court of jurisdiction over the liability ruling for as long as the appeal is pending. *In re Fort Worth Chamber of Com.*, 100 F.4th 528, 536 (5th Cir. 2024) ("A notice of appeal from an appealable order divests the district court of jurisdiction over aspects of the case on appeal."). Vacatur and remand will allow this Court to apply the updated *Gingles* framework in the first instance, including by holding any further proceedings to supplement the trial record as may be necessary and by receiving updated post-trial submissions from the parties.

Because the Fifth Circuit may soon grant the joint motion and vacate the liability ruling underlying this Court's remedial proceedings, the Court should pause remedial proceedings pending the Fifth Circuit's ruling on the parties' joint motion and, if the motion is granted, pending any supplementation of the trial record and reconsideration of those aspects of the merits that are implicated by the *Callais* decision. Plaintiffs acknowledge that the requested vacatur of this Court's August 2025 judgment, if granted by the Fifth Circuit, would lift this Court's permanent injunction against the use of the 1987 Supreme Court Districts and enable the 2026 Supreme Court elections to continue using the 1987 district lines.

## II. THE COURT SHOULD ALLOW SUPPLEMENTATION OF THE RECORD AND SET AN EXPEDITED SCHEDULE FOR FURTHER PROCEEDINGS

Upon vacatur and remand for further proceedings, this Court should exercise its discretion to give the parties a limited opportunity to supplement the record with evidence and testimony relevant to the updated *Gingles* framework under *Callais*. *See United States v. Corp. Mgmt., Inc.*, 78 F.4th 727, 750 (5th Cir. 2023) (explaining district court's broad discretion to reopen discovery); *see also* Wright & Miller, 18B Fed. Prac. & Proc. Juris. § 4478.3 & n.39 (3d ed.) (noting that the "decision to admit new evidence on remand was within the district court's discretion" (citing *Carter Jones Lumber Co. v. LTV Steel Co.*, 237 F.3d 745, 751 (6th Cir. 2001))). Plaintiffs propose

that the parties meet and confer within seven days of the grant of the joint motion to vacate and remand to attempt to fashion a proposed schedule for any such supplementation of the record, as well as for the submission of updated Proposed Findings of Fact and Conclusions of Law and Post-Trial Briefs.

As explained below, Plaintiffs have already submitted evidence that satisfies *Callais'* updated framework, at trial and at the April 28 remedial hearing. Plaintiffs would seek to supplement the trial record with the evidence submitted at the April 28 remedial hearing, and potentially to supplement the record with some additional evidence and/or testimony—on a fairly expedited basis[2]—prior to the Court's consideration of Section 2 liability under the updated standard.

Under *Callais'* reformulation of the first *Gingles* precondition, Plaintiffs must show: (i) that "a community of minority voters [is] sufficiently numerous and compact to constitute a majority in a reasonably configured district"; (ii) that such a district can be created without "us[ing] race as a districting criterion"; and (iii) that the illustrative map "meet[]s all the State's legitimate districting objectives." *Callais*, 2026 WL 1153054, at *2. There is no dispute that Mr. Cooper's alternative plans—as presented at trial and at the remedial hearing—are reasonably configured. *See also White*, 795 F. Supp. 3d at 817. And in anticipation of *Callais'* new requirements, Mr. Cooper has already submitted and then testified on a race-blind plan, which does not rely on the use of any racial data or employ any racial target or criterion whatsoever. *See also* Cooper Remedial Decl. at 4, 8–10, ECF No. 293-1. And despite being race-blind, Mr. Cooper's proposed plan contains a majority-Black district, as required under the first *Gingles* precondition. *Id.* at 11; *see Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1, 22 (2024) (holding that mapdrawer

---

[2] Plaintiffs intend to seek special elections for November 2027.

did not impermissibly consider race because he "testified without contradiction that he considered the relevant racial data only *after* he had drawn the Enacted Map" and because "legislatures will . . . almost always be aware of racial demographics"). The race-blind plan, like Mr. Cooper's other remedial maps, also satisfies the 1987 Legislature's goal of reducing the population deviation between the districts. *See* Pls.' Remedial Br. at 21, ECF No. 293 at 26.

Next, *Callais* instructs that "[t]o satisfy the second and third preconditions—politically cohesive voting by the minority and racial-bloc voting by the majority—the plaintiffs must provide an analysis that controls for party affiliation. In other words, they must show that voters engage in racial bloc voting that cannot be explained by partisan affiliation." 2026 WL 1153054, at *15. Here again, the existing trial record supports that conclusion, especially because this case involves Supreme Court elections, which are non-partisan. This Court already "specifically f[ound] that race best explains the[] divergent voting patterns" in Mississippi, based on extensive review of the evidence in the existing trial record. *White*, 795 F. Supp. 3d at 837–44. Additional evidence could be added to further cement the point.

Finally, *Callais* instructs that the totality of the circumstances analysis should give greater weight to "'current data' and 'current political conditions' that shed light on current intentional discrimination." 2026 WL 1153054, at *16 (citation omitted). Of the various factors that are part of the analysis, the text of Section 2 specifically emphasizes one: "[t]he extent to which members of a protected class have been elected to office in the State or political subdivision." 52 U.S.C. § 10301(b). This factor, along with the existence of racially polarized voting, are "the two most important factors considered in the totality-of-circumstances inquiry." *Fairley v. Hattiesburg Miss.*, 662 F. App'x 291, 296 (5th Cir. 2016) (quoting *Clark v. Calhoun Cnty.*, 88 F.3d 1393, 1397

6

(5th Cir. 1996)); *accord White*, 795 F. Supp. 3d at 837 (quoting *Miss. State Conf. of the NAACP v. State Bd. of Election Comm'rs*, 739 F. Supp. 3d 383, 449 (S.D. Miss. 2024)).

At trial, Plaintiffs provided a wealth of "current data" on both of those factors and other "current political conditions" relevant to intentional discrimination. *See Callais*, 2026 WL 1153054, at *16. First, as this Court found, "[a]t a statewide level, the success of Black candidates in Mississippi's history is quite limited and, *in recent times*, non-existent," and the electoral success of Black candidates in Mississippi Supreme Court elections "remain[s] bleak." *White*, 795 F. Supp. 3d at 854 (emphasis added). *Id.* Second, as to racial polarization, even Defendants' own political scientist expert, Dr. Christopher Bonneau, confirmed that the State's current-day, dominant political party is inhospitable to Black candidates and voters. Bonneau Trial Tr. 837:15–38:20.

Other evidence credited by this Court similarly shows that political conditions today are not equal for Black voters and that there continues to be a political incentive for intentional discrimination. Such evidence includes "the continued utilization of racial appeals during elections in Mississippi." *White*, 795 F. Supp. 3d at 852–53. It also includes present-day racial disparities in "education access, financial status, and wealth" that result in "Black Mississippians participat[ing] in the political process at a rate lesser than White Mississippians," *id.* at 851, and current "elected officials' lack of responsiveness" to those particularized needs, *id.* at 855–56. It also includes the continued use, in the present day, of "voting practices and procedures that … enhance the opportunity to discriminate against or suppress the votes of Black Mississippians." *Id.* at 835–36.

The facts of this case establish a Section 2 violation notwithstanding the alterations to the substantive legal standard set forth in *Callais*. Plaintiffs will accordingly request the opportunity

to supplement the factual record, furnish the Court with revised Proposed Findings of Fact and Conclusions of Law, and demonstrate liability and the need for relief under the updated *Gingles* standard as set forth in *Callais*. Plaintiffs intend to seek a schedule for such supplementation and further proceedings that is sufficiently expedited to allow for timely relief before the November 2027 elections.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs request that the Court (i) pause remedial proceedings pending the Fifth Circuit's ruling on the parties' joint motion for vacatur and remand; (ii) order the parties to provide, within seven days of the Fifth Circuit decision on the motion, a joint status report and, if possible, a joint proposal for any proceedings to supplement the record and for the furnishing of revised post-trial submissions; and (iii) provide for an expedited schedule for any supplementation of the trial record and for the furnishing of revised post-trial submissions.

Respectfully submitted,

This the 6th day of May 2026.

/s/ *Ari J. Savitzky*

AMERICAN CIVIL LIBERTIES UNION
OF MISSISSIPPI FOUNDATION
Joshua Tom (Miss. Bar No. 105392)
101 South Congress Street
Jackson, MS 39201
(601) 354-3408
*JTom@aclu-ms.org*

SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood (Miss. Bar No. 106441)
Janet Gochman*
Noah Gimbel*
425 Lexington Avenue
New York, NY 100017
(212) 455-2000
*jyoungwood@stblaw.com*

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Ari J. Savitzky*
Ming Cheung*
Nina McKay*
Sophia Lin Lakin*
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2500
*asavitzky@aclu.org*
*mcheung@aclu.org*
*nmckay@aclu.org*
*slakin@aclu.org*

SOUTHERN POVERTY LAW CENTER
Bradley E. Heard*
Ahmed Soussi*
Sabrina Khan*
150 E Ponce de Leon Avenue, Suite 340
Decatur, GA 30030
(470) 521-6700
*bradley.heard@splcenter.org*
*ahmed.soussi@splcenter.org*
*sabrina.khan@splcenter.org*

* Admitted *pro hac vice*

*Attorneys for Plaintiffs*

9