IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

DYAMONE WHITE, et al.                                              PLAINTIFFS

v.                                                      CAUSE NO. 4:22-CV-62-SA

STATE BOARD OF ELECTION
COMMISSIONERS, et al.                                              DEFENDANTS

ORDER

On August 19, 2025, this Court entered an Order and Memorandum Opinion [264], wherein it concluded "the current Mississippi Supreme Court electoral map violates Section 2 of the Voting Rights Act." [264] at p. 104. The Court granted declaratory and injunctive relief in the Plaintiffs' favor. The Defendants timely appealed the Court's liability finding. *See* [269]. The Fifth Circuit granted the Defendants' request to stay the appeal "pending resolution in *SBEC v. Mississippi NAACP* (S. Ct. No. 25-234), *Louisiana v. Callais* (S. Ct. No. 24-109), *Nairne v. Louisiana* (CA5 No. 24-30115), and related cases[.]" *White, et al. v. State Board of Election Comm'rs, et. al.*, Fifth Cir. Cause No. 25-60506, [27], Ex. 2 at p. 1. In the interim, this Court pressed forward with the remedial phase of the litigation, which included convening an evidentiary hearing on April 28, 2026. *See* [301].

Much has happened since that time. The following day, the Supreme Court issued its decision in *Louisiana v. Callais*, 146 S. Ct. 1131, 2026 WL 1153054 (U.S. Apr. 29, 2026). In light of the Supreme Court's decision, the parties jointly requested the Fifth Circuit to vacate this Court's original liability finding and remand the case. The Fifth Circuit did so on May 11, 2026. *See* [308]. On June 2, 2026, the Supreme Court issued its per curiam decision in *Allen v. Milligan*, 146 S. Ct. 1377, 2026 WL 1552756 (U.S. June 2, 2026), wherein it applied *Callais* in resolving an appeal concerning Alabama's congressional map.

Now, this Court must determine how to proceed in the present litigation in light of the Fifth Circuit's remand and the Supreme Court's modifications to the governing standard for Section 2 claims. Via Order [309] entered on May 12, 2026, the Court sought input from the parties on that point, specifically directing them to "file a joint status report outlining, to the extent possible, a joint proposal for how the case should proceed." [309] at p. 1. The Court further permitted the parties to, if necessary, file "separate supplemental filings setting forth their respective positions on matters the parties are unable to agree upon or other matters the Court should take into account in considering how to proceed." *Id*.

The parties were unable to reach any sort of agreement on the manner in which the case should proceed from this point, and their respective Responses [313, 314] provide vastly different proposals in that regard. For instance, the Plaintiffs suggest that the Court simply incorporate into the trial record all evidence received at the April 28, 2026 hearing and direct the parties to submit supplemental proposed findings of fact and conclusions of law. Conversely, the Defendants contend that the Plaintiffs should be required to re-plead their claims and that discovery should subsequently be re-opened.

The Court will address those respective arguments but finds that an overview of the recent *Callais* and *Allen* decisions is necessary since they so critically impact the direction of this litigation.

Start with *Callais*. Following the 2020 census, Louisiana adopted a congressional map that contained only one (out of six) majority-minority district. *See generally Robinson v. Ardoin*, 605 F. Supp. 3d 759 (M.D. La. 2022), *vacated and remanded*, 86 F. 4th 574 (5th Cir. 2023). After that map was successfully challenged under Section 2 by a group of Black voters, Louisiana enacted a map that contained a second majority-minority district. *Callais v. Landry*, 732 F. Supp. 3d 574,

582 (W.D. La. 2024). That map was also challenged—this time by non-Black voters who claimed that the map was a racial gerrymander in violation of the Equal Protection Clause of the Fourteenth Amendment. *Id*. at 590. That challenge eventually made its way to the Supreme Court, and the Court ultimately resolved what it referred to as "tension between § 2 and the Constitution[.]" *Callais*, 146 S. Ct. at 1142. In doing so, the Court held that Louisiana's remedial map was an unconstitutional racial gerrymander. *Id*. at 1143.

In its decision, the Supreme Court explained that Section 2 "imposes liability only when the evidence supports a strong inference that the State intentionally drew its districts to afford minority voters less opportunity because of their race." *Id*. at 1157. The Court further held that its "interpretation of § 2 does not require abandonment of the *Gingles* framework. We need only *update* the framework so it aligns with the statutory text[.]" *Id*. (emphasis added).

As to the first *Gingles* precondition, the Supreme Court held that an illustrative map "must satisfy two conditions." *Id*. at 1159. Specifically, the Court directed that "in drawing illustrative maps, plaintiffs cannot use race as a districting criterion. . . [A]n illustrative map in which race was used has no value in proving a § 2 plaintiff's case." *Id*. Secondarily, "illustrative maps must meet all the State's legitimate districting objectives, including traditional districting criteria and the State's specified political goals. . . Only by meeting all the State's legitimate objectives can the illustrative maps help to 'disentangle race' from politics and other constitutionally permissible considerations." *Id*.

As to the second and third preconditions, the Court made clear that "plaintiffs must provide an analysis that controls for party affiliation. In other words, they must show that voters engage in racial bloc voting that cannot be explained by partisan affiliation." *Id*.

The Supreme Court also addressed the totality of the circumstances inquiry, explaining that the inquiry "must focus on evidence that has more than a remote bearing on what the Fifteenth Amendment prohibits: present-day intentional racial discrimination regarding voting." *Id*. at 1160. On this point, "[d]iscrimination that occurred some time ago, as well as present-day disparities that are characterized as the ongoing 'effects of societal discrimination,' are entitled to much less weight. Far more germane are 'current data' and 'current political conditions' that shed light on current intentional discrimination." *Id*. (citations omitted).

Last month, the Supreme Court applied the updated *Gingles* framework when it stayed a preliminary injunction imposed by a three-judge panel of the District Court for the Northern District of Alabama. *Allen*, 2026 WL 1552756. This Court does not find it necessary to delve into the underlying facts of *Allen*, but, suffice it to say, the three-judge panel in the Northern District of Alabama, in a post-*Callais* decision applying the updated framework, concluded that Alabama's congressional map violated Section 2 as well as the Fourteenth Amendment. *Singleton v. Allen*, --- F. Supp. 3d ---, 2026 WL 1469518 (N.D. Ala. May, 26, 2026). On appeal, the Supreme Court stayed the preliminary injunction, concluding that "[t]he State is likely to succeed on the merits as to both claims." *Allen*, 146 S. Ct. at 1381. In that decision, the Supreme Court held that "[u]nder *Callais*, the District Court was required to deny relief unless the plaintiffs' alternative map performed 'just as well' with respect to all of the State's constitutionally permissible districting criteria." *Id*. (quoting *Callais*, 146 S. Ct. at 1156). Further, the Supreme Court concluded that "the District Court found a violation even though the plaintiffs' alternative map would not perform just as well as to the State's constitutionally permissible criteria of keeping together the Gulf Coast community of interest and avoiding the parting of incumbents. The District Court also failed to

4

follow our instruction in *Callais* that the mere fact that voters of different races vote for different parties is not relevant to proving racially polarized voting patterns." *Id*. (citations omitted).

Against that backdrop, this Court reverts to the case *sub judice*. In doing so, the Court finds both parties' proposals as to how to proceed to have some merit and some flaws.

First, the Court rejects the Defendants' proposal that the Plaintiffs be required to file an amended pleading. As noted by the Plaintiffs, they are the masters of their own complaint. *See, e.g., Cody v. Allstate Fire and Cas. Ins. Co.*, 19 F. 4th 712, 715 (5th Cir. 2021). And here, their theory of the case is far from a secret. The Defendants cite no authority to indicate that amendment is necessary here, and the Court is unaware of any such authority.

Of more importance is the Defendants' request for discovery to be re-opened. The Plaintiffs contend that "to the extent that Defendants claim that *Callais* has changed the Section 2 standard to focus more on intentional discrimination, that is not a basis for reopening discovery." [313] at p. 7. The Court disagrees.

In *Callais* and subsequently in *Allen*, the Supreme Court made abundantly clear that Section 2 plaintiffs must show that their alternative maps meet the State's legitimate objectives in enacting the map. Here, the record is incomplete as to the Mississippi Legislature's objectives when enacting the Supreme Court electoral map. It is, in this Court's view, understandable that the Defendants (in a pre-*Callais* trial) did not initially expend considerable efforts in developing the record on that point, as its importance was simply not as clear as it now is. The Court finds it appropriate to provide the Defendants an opportunity to engage in discovery on that subject. To hold otherwise would hamstring the Defendants' ability to develop a defense that the Supreme Court has (now twice) indicated is of critical importance to the applicable analysis. Additionally,

without that information, this Court is also limited in its ability to analyze the facts of this case in a manner consistent with the Supreme Court's guidance.

Moreover, the Court feels compelled to point out concerns of its own. In particular, it appears that further development of the underlying facts is necessary, at a minimum, as to the first *Gingles* precondition and the totality of the circumstances inquiry.

As to the first precondition, prior to *Callais*, consideration of race in drawing an illustrative map was deemed appropriate. Indeed, in its original *Allen v. Milligan* decision in 2023, the Supreme Court held that "Section 2 itself *demands* consideration of race" but that "race may not be the predominant factor in drawing district lines unless there is a compelling reason." *Allen v. Milligan*, 599 U.S. 1, 31, 143 S. Ct. 1487, 216 L. Ed. 2d 60 (2023) (citations and quotation marks omitted; emphasis added). In its Order and Memorandum Opinion [264] imposing liability in this case, this Court specifically noted that William Cooper, the Plaintiffs' expert who testified at trial and drew the illustrative maps, "admittedly took race into account [but] did not cross the line between racial consciousness and impermissible racial predominance." [264] at p. 29. This gives the Court significant pause in light of *Callais*, which again specifically held that "an illustrative map in which race was used has *no value* in proving a § 2 plaintiff's case." *Callais*, 146 S. Ct. at 1159 (emphasis added). Additionally, this Court never made any finding as to whether any of the illustrative maps performed "just as well with respect to all of the State's constitutionally permissible districting criteria." *Allen*, 2026 WL 1552756 at *1 (citing *Callais*, 146 S. Ct. at 1156).[1]

---

[1] The Court notes that the Plaintiffs point to what they referred to as a "colorblind plan" which was introduced as a potential remedy at the hearing held on April 28, 2026. However, it was not submitted or considered in light of the updated *Gingles* framework as articulated in *Callais*.

The Court also emphasizes that, considering the totality of the circumstances inquiry, *Callais* made clear that a reviewing court must place greater emphasis on "current data" and "current political conditions" which "shed light on current intentional discrimination." *Callais*, 146 S. Ct. at 1160. Although there was extensive evidence presented at trial in this case regarding the Senate Factors, the Court finds it necessary to provide the parties another opportunity to present proof on the presence—or lack thereof—of "current intentional discrimination." *Id*. The Supreme Court has made clear such evidence is crucial.

Taking all of this into account, the Court finds it appropriate for both parties to be given an opportunity to conduct discovery so that the record in this case can be further developed to address the issues outlined in this Order. The Court, however, will not authorize the lengthy discovery period that the Defendants suggested in their Response [314] but will instead impose more expeditious deadlines. The Magistrate Judge will promptly hold a status conference with the parties to discuss those deadlines.

In reaching this conclusion, the Court is cognizant of the Plaintiffs' suggestion in their Response [313] that they intend to seek special elections in November 2027. Candidly, while aware of the Plaintiffs' desire in that regard, this Court is squarely focused on liability at this point in time and will concern itself with a remedy if/when appropriate. In other words, the Court will bear in mind that desire from the Plaintiffs, but it is simply not the predominant concern at this stage.

After the discovery period, the Court will hold an evidentiary hearing. During that hearing, which may in many ways look like a trial, the Court will provide the parties an opportunity to present proof to further develop the record in this case in light of *Callais*. To be clear, the Court will not disregard the evidence previously presented during the proceedings in this case. But it

does appear to this Court that extensive supplementation will be necessary in order for the issues to be fully and adequately developed so that a decision consistent with the Supreme Court's directives can be rendered.

The Magistrate Judge will set a status conference by separate Notice.

SO ORDERED, this the 7th day of July, 2026.

/s/ Sharion Aycock
SENIOR UNITED STATES DISTRICT JUDGE